UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESHARES, INC. d/b/a CARTA, INC.,

                                Plaintiff,

                -against-

JERRY O. TALTON, III,

                                Defendant.

22-CV-10987 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff eShares, Inc., doing business as Carta, Inc. ("Carta" or "Company" or "Plaintiff"), brings this action against Jerry O. Talton, III ("Talton" or "Defendant") alleging (1) breach of contract, (2) breach of fiduciary duty, (3) violation of the Defend Trade Secrets Act, (4) misappropriation of trade secrets under New York common law, (5) conversion and (6) faithless servant. Defendant now moves to dismiss certain claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike certain allegations pursuant to Federal Rule of Civil Procedure 12(f). For the reasons stated herein, Talton's motion to dismiss is GRANTED in part and DENIED in part and Talton's motion to strike is DENIED.

## BACKGROUND

The following facts are, unless otherwise noted, taken from the Second Amended Complaint and presumed to be true for the purposes of this motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).[1]

---

[1] Carta filed its First Amended Complaint on May 3, 2023 and Talton filed his motion to dismiss on June 21, 2023. *See* ECF Nos. 20, 23. On July 25, 2023, the parties asked the Court to allow Carta leave to file its Second Amended Complaint and consider Talton's motion to dismiss to apply to the Second Amended Complaint, which the Court granted. ECF No. 31. Accordingly, the Court considers the pending motion in light of Carta's Second Amended Complaint. *See*

## I.      Talton's Employment at Carta

Carta is a corporation that began by specializing in capitalization table management and valuation software and services and has expanded into public market equity management, venture capital fund management and broker-dealer business lines. ECF No. 29 ("Second Amended Complaint" or "SAC") ¶ 1. Among other operations, Carta digitizes paper stock certificates along with stock options, warrants and derivatives to help companies, investors and employees manage their equity, while creating a real-time picture of company ownership. *Id*.

Talton served as Carta's Director of Engineering, Data and Machine Learning from August 2018 until May 2020, when he became Carta's Vice President of Research and Development Strategy. *Id*. ¶ 3. Beginning in November 2020, Talton served as Carta's Chief Technology Officer ("CTO"). *Id*. As CTO, Talton was responsible for overseeing Carta's information technology infrastructure and ensuring the security of over $2.5 trillion in customer assets. *Id*. ¶ 4. Carta claims that the CTO is the top executive overseeing Carta's entire information-technology infrastructure, policies and technological measures. *Id*. ¶ 26.

On October 7, 2022, Talton submitted a letter to Carta's Board of Directors, alleging various problems with Carta's culture. *Id*. ¶ 28. On October 11, 2022, Talton met with Human Resources and Carta's General Counsel, during which Talton was informed that he was being placed on a paid administrative leave to facilitate an independent Board investigation related to his allegations, that his system access would be suspended and that he would be required to return his Carta-issued devices. *Id*. ¶¶ 28–29. Via an email on the same day, Carta confirmed that

---

*Pettaway v. Nat'l Recovery Solutions, LLC*, 955 F.3d 299, 303–04 (2d Cir. 2020) (explaining that "when a plaintiff properly amends her complaint after a defendant has filed a motion to dismiss that is still pending, the district court has the option of . . . evaluating the motion in light of the facts alleged in the amended complaint").

Talton was being placed on administrative leave and reminded Talton that he was required to adhere to all Carta policies, procedures and contractual obligations. *Id*. at ¶ 30. The email also stated that Talton's access to Carta's systems was suspended during Talton's administrative leave and that by 5:00 p.m., Carta would send a courier to retrieve Talton's Carta-issued devices. *Id*. ¶¶ 31–32. On December 23, 2022, Carta terminated Talton for cause. *Id*. ¶ 3.

## II.   Talton's Alleged Download of Carta Documents

Carta alleges that a few hours before Talton was placed on administrative leave, Talton bulk-downloaded over 100 highly confidential Carta documents from Google Drive to a Carta-issued laptop. *Id*. ¶ 33. Carta claims that approximately four minutes after receiving the invitation for the meeting with Human Resources and Carta's General Counsel, and approximately six minutes before being placed on administrative leave, Talton connected the Carta-issued laptop to a device called "sugarbeaver," using a remote desktop application, enabling Talton to export Carta's documents to sugarbeaver, a non-Carta device. *Id*. ¶¶ 34, 55. Carta argues that based on the "closeness in time" between the mass downloading of the documents, the notice of the calendar invite for the Human Resources meeting and the connection of sugarbeaver, "a strong inference can be drawn that Talton exported these and other highly confidential and proprietary documents containing Carta's trade secrets to that non-Carta device." *Id*. ¶ 55.

Subsequently, Carta retained a cybersecurity, digital forensics and cyber incident response company to forensically review Talton's four Carta-issued laptops. *Id*. ¶ 46. The review determined that Talton had "wiped" three of these laptops. *Id*. ¶ 48. On July 13, 2022, Talton deleted his Carta-assigned local user accounts on two of his Carta-issued laptops, and on October 7, 2022, Talton deleted his Carta-assigned local user account on a third laptop. *Id*. By deleting

the local user accounts, Talton effectively wiped logs of his user activity on those devices,
including his browser history, logs of files he accessed and the files that would have been in his
documents, downloads and mail folders. *Id.* ¶ 49. Talton also created new "temporary" user
accounts on all four laptops. *Id.* ¶ 48.

    The review further determined that Talton, before his systems access was removed,
downloaded documents including (1) "pillar" updates, (2) documents regarding developments
within Carta's information security infrastructure, (3) product planning and development
initiatives (including materials on Carta's product lines), (4) financial reports, (5) business and
strategic planning, (6) personnel matters and (7) research and development. *Id.* ¶¶ 50–51. The
pillar updates and related materials include "issues the teams face, product road mapping over
the next quarter and beyond, and key business metrics with highly confidential, near real time,
revenue numbers and business strategies to respond to market conditions and reallocate capital in
R&D and other activities to increase revenue." *Id.* ¶ 51. Carta also alleges that the materials
Talton downloaded:

> [C]ontain proprietary methodologies that . . . include, but are not limited to,
> Carta's technological systems and processes for executing its business operations;
> identifying technological and product failures, proposed technological fixes, and
> after-action reports on technological testing; the specific investments in capital
> and resources Carta is making in research and development and product testing;
> user interface development documents; and extensive engineering updates on
> Carta's core products.

*Id.* ¶ 52. The Complaint also lists the file names of 17 of the documents that Talton allegedly
downloaded:

> Customer Success Engineering – April Updates; Quarterly Planning Guidance
> 2022 for Product.mp4; Data Products Q1-2022; R&D Ops 2022.01 Update;
> Platform Infrastructure Pillar Update – July 2022; Engineering Levels at Carta
> (2022); Eng Offsite Engineering Allocations; Equity Platform 2022.08 Pillar
> Update (POSTPONED); Monthly Meeting Action Items/Pillar Targets; Finance
> Automation 2022.04 Pillar Updates; Public & Tax Q1 Update; APIs & Dev
> Ecosystem Monthly Pillar Update; Engineering Compensation Analysis (Q1Y22);

Copy of Insights Team Monthly Recaps; Design ink 2022 Q2 update; R&D Org Changes (September 2022); and Carta as a Platform (Shared Slides).

*Id*. ¶ 53.

Carta claims that the alleged trade secrets "could provide a short-cut to free ride on substantial investment in market research" and "could provide a roadmap to Carta's competitions of paths to avoid that Carta, itself, discovered through time-consuming and costly trial and error." *Id*. ¶ 52.

### III. Carta Contracts, Policies and Procedures

Carta alleges that its confidential information and trade secrets are a critical business asset. *Id*. ¶ 17. Therefore, Carta invests heavily in its information security program and takes numerous steps to safeguard its confidential information and trade secrets. *Id*. In part, Carta requires its employees who will be granted access to confidential information to sign a confidentiality and proprietary rights agreement. *Id*. Talton entered into an "Employee Confidential Information and Invention Assignment Agreement," which states:

> At all times during and after my employment, I will hold in confidence and will not disclose, use, lecture upon, or publish any of Company's Confidential Information, except as such disclosure, use or publication may be required in connection with my work for Company, or unless an officer of Company expressly authorizes such disclosure . . . I hereby assign to Company any rights I may have or acquire in such Confidential Information and recognize that all Confidential Information shall be the sole and exclusive property of Company and its assigns.

ECF No. 29-1 ("CIIAA") § 1.1.[2] Confidential information is defined to include "(a) trade secrets, inventions, mask works, ideas, processes, formulas, software . . . data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques . . . [;]

---

[2] The Court will consider the CIIAA, Carta Data Classification & How to Handle Data Policy and Carta Device Policy in deciding the instant motion, as the documents were attached as exhibits to the Complaint by Carta and not objected to by Talton.

(e) information regarding personnel, employee lists, compensation, and employee skills; and (f) any other non-public information which a competitor of Company could use to the competitive disadvantage of Company . . . ." *Id*. § 1.2.

> By signing the CIIAA, Talton also agreed that the:

> Company will exclusively own all work product that is made by me (solely or jointly with others) within the scope of my employment, and I hereby irrevocably and unconditionally assign to Company all right, title and interest worldwide in and to such work product . . . I understand and agree that I have no right to publish on, submit for publishing, or use for any publication any work product protected by this Section, except as necessary to perform services for Company.

*Id*. § 2.7. Talton further agreed to "keep and maintain adequate and current records . . . of all Confidential Information developed by me and all Company Inventions made by me . . . which records will be available to and remain the sole property of Company at all times." *Id*. § 3.

> Upon the end of Talton's employment, Talton was required to return Carta's property to Carta:

> When I leave the employ of Company, I will deliver to Company any and all drawings, notes, memoranda, specifications, devices, formulas and documents, together with all copies thereof, and any other material containing or disclosing any Company Inventions, Third Party Information or Confidential Information of Company. I agree that I will not copy, delete, or alter any information contained upon my Company computer or Company equipment before I return it to Company. In addition, if I have used any personal computer, server, or e-mail system to receive, store, review, prepare or transmit any Company information, including but not limited to, Confidential Information, I agree to provide Company with a computer-useable copy of all such Confidential Information and then permanently delete and expunge such Confidential Information from those systems; and I agree to provide Company access to my system as reasonably requested to verify that the necessary copying and/or deletion is completed.

*Id*. § 8.

> Finally, in relevant part, the CIIAA provides:

> I agree that it may be impossible to assess the damages caused by my violation of this Agreement or any of its terms. I agree that any threatened or actual violation of this Agreement or any of its terms will constitute immediate and irreparable injury to Company, and Company will have the right to enforce this Agreement

and any of its provisions by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that Company may have for a breach or threatened breach of this Agreement.

*Id.* § 9.1.

The Carta Data Classification & How to Handle Data Policy provides that for data classified as "Carta Restricted," including processes related to current, future and proposed products, "[u]nless necessary for client services, do not send this data anywhere outside of Carta, even encrypted." ECF No. 29-2 ("Data Policy") at 3–4. The Carta Device Policy provides that "[e]mployees are not permitted to download files containing confidential information such as Personally Identifiable Information ("PII") to a device provided by Carta, iCloud (using @carta.com) or any other similar storage device provided by the company without proper authorization." ECF No. 29-4 ("Device Policy") at 1.

## IV.  Other Alleged Wrongdoing by Talton

During fall 2022, Carta was engaged in mediation with a different former employee. *Id.* ¶ 36. On November 8, 2022, Carta's General Counsel, April Lindauer, was copied on an email from Talton to that former employee and her counsel. *Id.* The email from Talton stated "I think you should read the whole thing" and included a transcript of an audio recording between Talton and Lindauer from September 27, 2022. *Id.* Carta alleges that the conversation was a one-on-one workplace call to discuss attorney-client privileged Carta-related business. *Id.* Carta alleges, on information and belief, that Talton also shared information with another former Carta employee who was engaged in litigation against Carta, despite receiving attorney-client privileged updates about that employee's litigation. *Id.* ¶ 39. Carta further alleges on information and belief that Talton surreptitiously recorded at least two members of Carta's Board of Directors, Carta's founder and CEO and other Carta executives and employees. *Id.* ¶ 42.

On November 20, 2022, Talton's counsel sent a letter refusing to return the recordings or transcripts to Carta. *Id*. ¶ 40. Carta demanded that Talton return the recordings, transcripts and other Carta property on December 1, 9 and 13, 2022 and that Talton provide copies of the recordings and transcripts to Carta-authorized investigators. *Id*. ¶ 41. Talton refused. *Id*.

Carta also alleges that Talton engaged in inappropriate behavior by sending and receiving sexually explicit messages using his Carta devices, during work hours and during business travel on behalf of Carta. *Id*. ¶¶ 57–58. Carta alleges that this behavior violated Carta's policies and procedures. *Id*. ¶¶ 57, 59.

## DISCUSSION

The Court first analyzes Talton's motion to dismiss, denying the motion upon finding that Carta stated a claim under the Defend Trade Secrets Act, but granting the motion for failure to state a claim for misappropriation of trade secrets under New York common law, for conversion and for faithless servant. The Court next analyzes Talton's motion to strike, denying the motion for certain provisions because Talton failed to meet his burden and for other provisions as moot.

## I.    Motion to Dismiss Standard

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550

U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

### A.  Carta States a Claim Under the Defend Trade Secrets Act, But Not a Claim Under New York Common Law for Misappropriation of Trade Secrets

The Defend Trade Secrets Act ("DTSA") provides a private right of action for the misappropriation of trade secrets, if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce. 18 U.S.C. § 1836(b)(1). To state a claim for trade secret misappropriation under the DTSA, "a plaintiff must prove that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret." *Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 384 (S.D.N.Y. 2023) (internal citation and quotation marks omitted). "The elements for a misappropriation claim under New York law are fundamentally the same." *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020).

### 1.  Carta Alleges its Trade Secrets with Sufficient Specificity

Talton first argues that Carta does not adequately plead its trade secret misappropriation claims, with the exception of the pillar updates and the named documents in paragraph 53,[3] with the required specificity. ECF No. 24 ("Def. Mem.") at 6–8. The Second Circuit "has not squarely articulated the precise contours of the specificity requirement in the context of trade secrets." *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F.4th 792, 800 n.9 (2d

---

[3] Although Defendant refers to paragraph 54, the Court understands him to be referring to paragraph 53, which contains the specific file names of documents.

Cir.), *cert. denied*, 144 S. Ct. 352 (2023) (internal citation omitted). However, "[a]lthough there is no heightened pleading requirement on actions brought under the DTSA, district courts in this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated." *Iacovacci*, 437 F. Supp. 3d at 380 (cleaned up).

The Court finds that Carta has sufficiently described the alleged trade secrets at issue in this action in paragraphs 51–53 of the SAC (the "Contested Documents"). Carta describes the Contested Documents as containing "information regarding developments within Carta's information security infrastructure, product planning and development initiatives (including materials on Carta's product lines), financial reports, business and strategic planning, personnel matters, and research and development." SAC ¶ 51. Carta also states that the documents contain proprietary methodologies, including "Carta's technological systems and processes for executing its business operations; identifying technological and product failures, proposed technological fixes, and after-action reports on technological testing; the specific investments in capital and resources Carta is making in research and development and product testing; user interface development documents; and extensive engineering updates on Carta's core products." *Id*. ¶ 52. The SAC goes on to specifically identify some of the alleged trade secrets by computer file name. *Id*. ¶ 53.

Other courts in this district have found similar descriptions of alleged trade secrets to sufficiently state a claim. *See Medidata Sols., Inc., v. Veeva Sys. Inc.*, No. 17-CV-589 (LGS), 2018 WL 6173349, at *3 (S.D.N.Y. Nov. 26, 2018) (holding that complaint sufficiently identified the trade secrets at issue by specifying "numerous specific categories of information relating to its software, marketing and business plans"); *Tesla Wall Sys., LLC v. Related Companies, L.P.*,

No. 17-CV-5966 (JSR), 2017 WL 6507110, at *9 (S.D.N.Y. Dec. 18, 2017) (finding that plaintiff stated a claim where the complaint "plead[ed] numerous specific categories of information, such as 'technical data, internal pricing information, work product, research, engineering designs,' etc."); *Iacovacci*, 437 F. Supp. 3d at 380–81 (stating that types of documents and information that can constitute trade secrets include non-public sourcing information for clients, business-specific non-disclosure agreements and specifically identified documents). Indeed, descriptions with even less detail have been found to state a claim. *See Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 422 (S.D.N.Y. 2021) (finding trade secrets defined as "algorithms, proprietary formulas, patterns, methodology, technical information, processes, programs, codes and compilation of information used to develop, and which continue to underlie," plaintiff's products, sufficient to provide notice for the purported secret at issue).

Moreover, Carta has put Talton on notice of the materials he is alleged to have misappropriated by alleging the approximate volume of documents that Talton misappropriated, as well as the date on which he allegedly misappropriated the documents. *See Tesla Wall Sys., LLC*, 2017 WL 6507110, at *9 (holding that the complaint stated a DTSA claim when the allegations were "highly specific regarding defendants' course of conduct"). As Talton is the one who allegedly downloaded the materials, this is sufficient to "inform [him] of what [he is] alleged to have misappropriated." *Iacovacci*, 437 F. Supp. 3d at 380 (internal citation and quotation marks omitted). Providing any further information, as Plaintiff correctly points out, risks undermining their claim that these documents are non-public, trade secrets. *See TRB Acquisitions LLC v. Yedid,* No. 20-CV-0552 (JMF), 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021) (quoting *Island Intellectual Prop., LLC v. StoneCastle Asset Mgmt. LLC*, 463 F. Supp. 3d 490, 500 (S.D.N.Y. 2020)) ("Naturally, a DTSA plaintiff 'has no obligation to reveal its secrets in

the complaint simply to prove that they exist.'"). Thus, the Court finds that Carta has pleaded the alleged trade secrets with sufficient specificity and turns to an analysis of whether Carta has sufficiently alleged that Talton misappropriated the trade secrets.

### 2. Carta Adequately Alleges that Talton Misappropriated the Alleged Trade Secrets Under the Defend Trade Secrets Act

Talton next argues that Carta has not adequately pled that Talton misappropriated any alleged trade secrets. Def. Mem. at 7. The DTSA defines misappropriation as (1) the acquisition of a trade secret by a person who knew or had reason to know that the trade secret was acquired by improper means; or (2) the disclosure or use of a trade secret without express or implied consent by a person who acquired it through improper means. 18 U.S.C. § 1839(5). "Improper means" under the DTSA includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy and espionage through electronic or other means, but does not include reverse engineering, independent derivation or any other lawful means of acquisition. 18 U.S.C. § 1839(6). "The statute therefore contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *Better Holdco, Inc.*, 666 F. Supp. 3d, at 389 (internal citation and quotation marks omitted).

The parties in this case focus on acquisition, which the DTSA does not define, rather than disclosure or use. Here, Talton allegedly downloaded Carta documents to a non-Carta device in violation of Carta policy and shortly before he was scheduled to meet with human resources and placed on administrative leave. SAC ¶¶ 51–55. Plaintiff would have this Court find that merely transferring information containing trade secrets to a personal device is sufficient to plead a DTSA claim. *See* ECF No. 30 ("Pl. Opp.") at 6.[4] The DTSA, while a broad statute, is not so

---

[4] "Talton concedes that Carta pled that he downloaded Carta's trade secrets onto his Carta-issued laptop on October 11, 2022, and then transferred the trade secrets to his remote network . . . [t]hat concession should be the beginning and the end of the Court's misappropriation analysis."

sweeping. The language of the statute defines "improper means" with terms like theft, espionage and breach of a duty to maintain secrecy. Although the definition is not exclusive, these terms make clear that the conduct requires a level of impropriety that merely accessing or downloading documents onto a personal device does not implicate. It cannot be that every employee who simply accesses documents containing alleged proprietary information on a personal device, perhaps in violation of a company directive, has now violated federal law. And, the Court, consistent with the language of the statute and decisions of others in this district, declines to reach such a conclusion. *See Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 404–05 (S.D.N.Y. 2021) (dismissing the DTSA claim against a former employee when the complaint alleged the that defendant emailed himself certain company documents because employee "was authorized to acquire this information as part of his job, so he did not acquire it by improper means" and holding that "merely threatening to keep trade secrets, without threatening to use or disclose them, does not give rise to a DTSA claim"); *Free Country Ltd v. Drennen*, 235 F. Supp. 3d 559 (S.D.N.Y. 2016) (finding no DTSA violation where employee-defendants allegedly emailed information to a personal account and uploaded files to personal devices in violation of a confidentiality agreement without evidence that employees did so for an improper purpose).

Instead, the Court, based on a review of case law in the Southern District of New York, finds that transferring confidential information and trade secrets to a personal account can constitute acquisition by improper means under the DTSA when two elements are met: (1) the employee was directed not to share the information outside of employer-issued devices – whether, for example, through a policy or employment-related contract; and (2) the employee transferred the information outside of an employer-issued device for an improper or illegitimate purpose. *See Lodging Sols., LLC v. Miller*, No. 19-CV-10806 (AJN), 2020 WL 6875255, at *3

(S.D.N.Y. Nov. 23, 2020) (finding allegations that the defendant accessed trade secrets under "unusual circumstances," including accessing documents unrelated to his job duties but potentially of use to the plaintiff's competitors and deleting files from an external hard drive thereby preventing the plaintiff from determining what the defendant may have copied from the hard drive, sufficient to allege misappropriation under the DTSA's acquisition prong); *Onyx Renewable Partners L.P. v. Kao*, No. 22-CV-3720 (RA), 2023 WL 405019, at *4 (S.D.N.Y. Jan. 25, 2023) (holding that allegations that employee downloaded over 10,000 documents containing alleged trade secrets for no legitimate purpose sufficient to plead misappropriation); *ExpertConnect, L.L.C. v. Fowler*, No. 18-CV-4828 (LGS), 2019 WL 3004161, at *6 (S.D.N.Y. July 10, 2019) (finding that the complaint plausibly alleged that the defendants acquired trade secrets through improper means when one defendant downloaded a document unrelated to her role and another employee attempted to wipe her laptop to hide that she took documents in breach of a nondisclosure agreement); *DASH Regul. Techs., LLC v. Axiom Software Lab'ys Inc.*, No. 21-CV-8751 (JGK), 2023 WL 2586104, at *5 (S.D.N.Y. Mar. 21, 2023) (holding that the plaintiff sufficiently alleged claim against the defendant – the new employer of a former employee of the plaintiff – when that former employee sent trade secrets to his personal email upon leaving his employment with the plaintiff and where the allegations suggested the defendant used those trade secrets to poach the plaintiff's clients).

As to the first element, there is no contract prohibiting Talton from transferring information to a personal device. The only contract that Carta alleges is binding on Talton is the CIIAA, which prohibits Talton from "disclos[ing], us[ing], lectur[ing] upon, or publish[ing] any of Company's Confidential Information." However, Carta's Data Policy does forbid employees from sending or transferring restricted data outside of Carta. As such, Plaintiff has met this

prong. The Court also notes a tension with the CIAA: the CIIAA appears to specifically contemplate sending confidential information to personal devices. *See* CIIAA § 8 ("In addition, if I have used any personal computer, server, or e-mail system to receive, store, review, prepare or transmit any Company information, including but not limited to, Confidential Information . . . ."). The Court declines to reconcile these open questions of fact on a motion to dismiss.

In terms of the second element, the Complaint does not specifically allege that Talton downloaded this information for an improper purpose (and it is not certain discovery will show that there was one). However, Carta alleges that Talton downloaded documents a few minutes after receiving an invitation for a meeting with Human Resources and Carta's General Counsel to address a complaint Talton raised about the company's culture and a few minutes before he was ultimately placed on administrative leave. Carta also alleges that Talton has refused to return the alleged trade secrets. While a close call, these allegations are sufficient at this stage to suggest that the documents were downloaded for an improper or illegitimate purpose.

Accordingly, the Court finds that Carta sufficiently alleged that Talton misappropriated trade secrets under the DTSA. Talton's motion to dismiss the cause of action under the DTSA (Count III) is therefore denied.

### 3.    Carta Does Not Adequately Allege that Talton Misappropriated the Alleged Trade Secrets Under the New York Common Law

Under New York common law, "[a] plaintiff claiming misappropriation of a trade secret must prove: (1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." *Inspired Cap., LLC v. Conde Nast*, 803 F. App'x 436, 440 (2d Cir. 2020) (internal citation and quotation marks omitted); *E.J. Brooks Co. v. Cambridge Sec. Seals*, 105 N.E.3d 301, 310 (N.Y. 2018).

Carta has not alleged that Talton used the trade secrets, only that Talton acquired them, which is not sufficient to state a claim under New York common law. *See Lodging Solutions, LLC*, 2020 WL 6875255, at *3 (upholding DTSA claim while dismissing common law misappropriation claim, because common law requires that the defendant actually used or disseminated the information, not just improperly acquired it); *cf. ExpertConnect, L.L.C.*, 2019 WL 3004161, at *7 (holding that for substantially the same reasons the complaint sufficiently pled a DTSA claim, the complaint also sufficiently pled a common law misappropriation claim). Accordingly, the Court finds that Carta did not sufficiently allege that Talton misappropriated trade secrets under New York common law. Talton's motion to dismiss the cause of action under New York common law (Count IV) is therefore granted.

### B. Carta Fails to State a Claim for Conversion

Talton next moves to dismiss Carta's cause of action for conversion. Under New York law,[5] " conversion is the unauthorized assumption and excise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2007) (internal citation and quotation marks omitted). "This includes a denial or violation of the plaintiff's dominion, rights, or possession over her property" and that the defendant exclude the owner from exercising her rights over the goods." *Id.* at 404 (internal citations and quotation marks omitted).

Carta appears to allege two bases for its conversion claim. First, Carta alleges that Talton created Confidential Information when he recorded conversations with Carta's General Counsel,

---

[5] Carta states that New York law governs the conversion claim, which Talton does not dispute. SAC at 31 n.6; Def. Mem at 10. "[S]uch implied consent is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (quoting *Tehran–Berkeley Civ. & Env't Eng'rs v. Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir. 1989)) (cleaned up).

CEO, Board of Directors, executives and other employees. SAC ¶ 99. Second, Carta claims that the alleged theft of trade secrets creates a claim for conversion. Carta has adequately alleged the first element of the claim under both bases – that is, Carta's interest in the goods allegedly converted. Pursuant to the CIIAA, the recordings are Carta's "sole and exclusive property." *Id*. ¶ 100; *see* CIIAA §§ 1.1, 2.7. And the alleged trade secrets clearly belong to Carta, satisfying the first element for a claim of conversion.

With regard to the second element, Carta alleges that it repeatedly demanded that Talton turn over the recordings and alleged trade secrets, but that Talton refused, depriving Carta of access to and use of its Confidential Information and property. SAC ¶¶ 102–04. Regarding the alleged trade secrets, "pure copying" is not sufficient to state a claim of conversion. *Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 408, 414–15 (S.D.N.Y. 2018) (collecting cases). Carta also has not alleged that by Talton transferring the files to sugarbeaver, the files were altered or that Carta was excluded from using the files. Thus, Carta cannot sustain a claim with regard to the alleged trade secrets. Regarding the recordings, Carta alleged that Talton refused to turn them over to Carta or to Carta-authorized investigators. Carta does not allege that Carta otherwise had access to the recordings; thus, Carta has plausibly pleaded a claim for conversion regarding the recordings.

However, Carta's claim for conversion is duplicative of Plaintiff's breach of contract claim, warranting dismissal of Carta's claim for conversion. Under New York law, a claim for conversion "cannot be predicated on a mere breach of contract." *Rynasko v. New York Univ.*, 63 F.4th 186, 196 (2d Cir. 2023) (quoting *Jeffers v. Am. Univ. of Antigua*, 3 N.Y.S.3d 335, 339 (1st Dept 2015)). "However, the same conduct which constitutes a breach of a contractual obligation may also constitute the breach of a duty arising out of the contract relationship which is

independent of the contract itself." *Hamlet at Willow Creek Dev. Co., LLC v. Ne. Land Dev. Corp.*, 878 N.Y.S.2d 97, 117 (2d Dept 2009) (quoting *Dime Sav. Bank of New York, FSB v. Skrelja*, 642 N.Y.S.2d 84, 85 (N.Y. 1996)) (internal quotation marks omitted).

Carta's breach of contract claim is based on allegations that Talton (1) used and disclosed "confidential and/or attorney-client privileged Carta information he obtained through recordings [of] third parties;" (2) downloaded confidential information and trade secrets; and (3) refused "to return Carta's confidential information, trade secrets and other property." SAC ¶ 70. Carta's conversion claim is based on allegations that Talton created, took and refused to return Carta's Confidential Information. *Id*. ¶¶ 99–104. Carta argues that "[t]he focus of Carta's conversion claim includes a broader array of misdeeds" than the allegations supporting Carta's claim for breach of contract. Pl. Opp. at 10.

The allegations supporting Carta's claim for conversion are nearly all encompassed by the allegations supporting Carta's claim for breach of contract. The only unique allegation in support of the conversion claim – and, indeed, the only unique allegation that Carta points to – is that Talton created Confidential Information. That Talton retained and refused to turn over the recordings to Carta is encompassed in Carta's breach of contract claim. And the allegation that Talton created Confidential Information is, on its own, insufficient to state a claim for conversion. Moreover, Carta does not allege how the act of creating Confidential Information is either prohibited in any contract that Talton signed or a violation of an independent common law duty that Talton had. In contrast, the CIIAA explicitly contemplates that Confidential Information includes information created by employees. *See* CIIAA § 1.2 (including inventions, ideas and other works of authorship in the definition of Confidential Information). The Court

thus finds that Carta's claim for conversion is not independent of the claim for breach of contract.

Carta argues that it is permitted to assert its conversion claim in the alternative at the pleading stage. Pl. Opp. at 10. However, in the Eastern District of New York case that Carta cites for support, the court noted that courts have "refused to dismiss claims for conversion on the theory that pleading breach of contract bars pleading conversion as an alternative theory of recovery" when "a determination as to whether a valid contract exists has not been made or the validity of the contract is disputed." *Linares v. Richards*, No. 08-CV-3243 (RRM), 2009 WL 2386083, at *5 (E.D.N.Y. Aug. 3, 2009). Here, Defendant does not dispute that a valid contract exists and does not move to dismiss the breach of contract claim. Thus, pleading conversion as an alternative theory of recovery is inapplicable. Accordingly, Talton's motion to dismiss Carta's conversion claim (Count V) is granted.

### C. Carta Fails to State a Claim for Faithless Servant

Talton also moves to dismiss Carta's faithless servant claim. Delaware law applies to this claim, which neither party disputes, and Delaware law does not recognize a cause of action under the faithless servant doctrine. *See* SAC at 33 n.7; Def. Mem. at 13; *Enzo Life Scis., Inc. v. Adipogen Corp.*, 82 F. Supp. 3d 568, 606 (D. Del. 2015). Thus, the Court dismisses Carta's faithless servant claim.

Carta relies on *Pers. Touch Holding Corp. v. Glaubach* in bringing its faithless servant claim, but *Glaubach* does not save Carta's claim. No. CV-11199 (CB), 2019 WL 937180 (Del. Ch. Feb. 25, 2019)). In *Glaubach*, the plaintiff sued the defendant, its former employee, seeking disgorgement of three years of the defendant's compensation under the New York faithless servant doctrine. *Id.* at *1. The plaintiff was a Delaware corporation with its principal place of

business in New York. *Id*. In finding that the plaintiff did not engage in repeated acts of disloyalty such that the defendant failed to prove its faithless servant claim, the "court assume[d] without deciding that the [faithless servant] doctrine can be applied in this scenario." *Id*. at *27 n.312. The Delaware Chancery Court further noted that the "interplay between the faithless servant doctrine under New York law for an individual resident in New York who is an officer of a Delaware corporation and thus owes fiduciary obligations governed by Delaware law is not clear to the court." *Id*.

The Court in *Glaubach* made clear that it was not certain whether the faithless servant doctrine applied in a situation where, like here, the corporation plaintiff was organized under the laws of Delaware. *See id*.; *see also* SAC ¶ 14. Moreover, the complaint in *Glaubach* appeared to rely on New York law, rather than Delaware law. Supplemental and Amended Verified Complaint ¶ 203, *Pers. Touch Holding Corp. v. Glaubach*, No. CV-11199 (CB), 2017 WL 4225688 (Del. Ch. Sept. 18, 2017) ("Dr. Glaubach's employment agreement is governed by New York law, which has long recognized the 'faithless servant doctrine.'"). And Carta has not pointed to, nor has the Court found, any other Delaware case that applies the faithless servant doctrine. Accordingly, Talton's motion to dismiss Carta's faithless servant claim (Count VI) is granted.

## II.    Motion to Strike Standard

Federal Rule of Civil Procedure 12(f) allows a court to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). To prevail on a Rule 12(f) motion to strike, the moving party "must demonstrate that "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the

movant." *Winklevoss Cap. Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 721 (S.D.N.Y. 2019) (citing *In re Fannie Mae 2008 Sec. Litig.*, 891 F.Supp.2d 458, 471 (S.D.N.Y. 2012)).

"[O]rdinarily neither a district court nor an appellate court should decide to strike a portion of the complaint – on the grounds that the material could not possibly be relevant – on the sterile field of the pleadings alone." *Id.* at 721–22 (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)). As such, "[m]otions to strike under Rule 12(f) are generally disfavored and granted only if there is strong reason to do so." *Holland v. Chase Bank USA, N.A.*, 475 F. Supp. 3d 272, 275 (S.D.N.Y. 2020) (internal citation and quotation marks omitted); *see also Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012) (quoting *Lipsky*, 551 F.2d at 893) ("[I]t is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible.").

### A.  Paragraphs 57–59 and 75(c): Violations of Policies

Talton moves to strike paragraphs 57–59 and 75(c),[6] which in the First Amended Complaint allege that Talton sent and received messages in violation of Carta's anti-discrimination and anti-harassment policies and, therefore, in violation of Talton's fiduciary duties to Carta. Def. Mem. at 14 n.5. These allegations were removed in the SAC. As such, this motion, as Defendant concedes, is moot. *See* ECF No. 34 ("Def. Rep.") at 8.

### B.  Paragraphs 71 and 115: Monetary Damages for Breach of Contract

Talton next seeks to strike Carta's claim for monetary damages for breach of contract, in paragraphs 71 and 115 of the SAC. Def. Mem. at 17 n.7. The Court is required to apply state

---

[6] Talton refers to the First Amended Complaint when referring to specific paragraphs, but as already noted and pursuant to both parties' request, the Court is considering the Second Amended Complaint as the operative complaint. Thus, the Court's references to paragraphs are those of the Second Amended Complaint.

substantive law and federal procedural law to Carta's breach of contract claim. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Thus, the Court analyzes Carta's breach of contract claim under California law, and it is California law that governs whether monetary damages are available.[7] The Court's analysis of the adequacy of pleadings is conducted pursuant to the Federal Rules of Civil Procedure. *See Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986).

"Rule 12(f) authorizes the court to strike from the pleadings a request for relief if the allegations and claims asserted would not support that form of relief." *Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, No. 22-CV-9766 (LJL), 2023 WL 4211035, at *20 (S.D.N.Y. June 27, 2023). "Where a demand for damages is not recoverable as a matter of law . . . it may be stricken." *Clarex Ltd. v. Natixis Sec. Am. LLC*, No. 12-CV-7908 (PAE), 2013 WL 2631043, at *9 (S.D.N.Y. June 11, 2013), *on reconsideration in part sub nom. Clarex Ltd. v. Natixis Sec. Americas LLC*, No. 12-CV-7908 (PAE), 2013 WL 3892898 (S.D.N.Y. July 29, 2013) (internal citation omitted). Under California law, damages are available as a remedy for breach of contract. *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011) (stating that damages are one element of a cause of action for breach of contract). Because Talton has not shown that monetary damages are unavailable as a matter of law, and Carta has alleged that it suffered monetary damages as a result of Talton's breaches of the CIIAA, Talton's motion to strike the claim for monetary damages for breach of contract is denied. *See Royal Park Invs. SA/NV v. HSBC Bank USA, Nat. Ass'n*, 109 F. Supp. 3d 587, 614 (S.D.N.Y. 2015) (denying motion to strike consequential damages when provisions precluded recovery of such damages

---

[7] The parties agree that California law governs Carta's breach of contract claim. *See* Compl. at 24 n.4; Def. Mem. at 17 n.9.

because the court could not conclude as a matter of law that the alleged losses qualified as consequential damages); *Feldman-Boland v. Stanley*, No. 15-CV-6698 (WHP), 2016 WL 3826285, at *6 (S.D.N.Y. July 13, 2016) (denying motion to strike claims for emotional distress damages because such damages may be recoverable under the first statute at issue and denying motion to strike claims for "special damages" under the second statute at issue because "such damages are not prohibited as a matter of law").

### C.  Paragraphs 86 and 115: Monetary Claims for Misappropriation (DTSA)

Talton also seeks to strike Carta's claim for damages under the DTSA. Def. Mem. at 19. The DTSA allows for damages for (1) "actual loss caused by the misappropriation of the trade secret" and (2) "any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss." 18 U.S.C. § 1836(3)(B)(i). In lieu of damages measured by any other methods, the DTSA also allows for damages "measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret." 18 U.S.C. § 1836(3)(B)(ii). Carta alleges that "Talton's actions have caused and will continue to cause damage to Carta . . . the nature and extent of which may not be able to be proven with certainty, irreparably injuring Carta and leaving it without an adequate remedy at law." SAC ¶ 85. As with damages for breach of contract, the Court will only strike alleged damages to the extent that they are unavailable as a matter of law. The DTSA provides for damages as a remedy. Accordingly, Talton's motion to strike the claim for damages under the DTSA is denied.

### D.  Paragraphs 113 and 116: Disgorgement Under the Faithless Servant Doctrine

The Court is dismissing Carta's faithless servant claim; thus Talton's motion to strike the claim for disgorgement under the faithless servant doctrine is denied as moot. For clarity, the

remedy of disgorgement is not stricken as a potential remedy for the breach of fiduciary duty claim.

### E.  Paragraph 118: Attorneys' Fees

Finally, Talton moves to strike Carta's claim for attorneys' fees. Attorneys' fees are not ordinarily recoverable in the absence of a statute or contract providing for them, but "courts retain the equitable power to make awards in addition to regular statutory costs, including a reasonable attorneys' fees." *Frio Energy Partners, LLC*, 2023 WL 4211035, at *20 (quoting *OneWest Bank N.A. v. Lehman Bros. Holding Inc.*, 2015 WL 1808947, at *3 (S.D.N.Y. Apr. 20, 2015)) (internal quotation marks omitted). As Talton notes, Carta has not alleged any contractual provision on which it could recover attorneys' fees. Moreover, the Court is dismissing the DTSA claim, the only statutory claim asserted in this action. However, "[c]ourts in this circuit have denied a defendant's motion to strike or to dismiss claims for attorney's fees even though the likelihood that plaintiff will be able to recover attorney's fees is small, because dismissal of such claims at the pleading stage would be premature." *Id.* (quoting *OneWest Bank N.A*, 2015 WL 1808947, at *3). The Court thus denies Talton's motion to strike Carta's claim for attorneys' fees.

### CONCLUSION

For the foregoing reasons, Talton's motion to dismiss is GRANTED in part and DENIED in part and Talton's motion to strike is DENIED. The Clerk of Court is directed to terminate ECF No. 23.

Dated:  March 29, 2024
        New York, New York

                                        SO ORDERED.

                                        JESSICA G. L. CLARKE
                                        United States District Judge

24