IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- X

eShares, Inc. d/b/a Carta, Inc.,     :

          :

         *Plaintiff*,     :     Civil Action No.: 1:22-cv-10987

          :

     v.     :     Hon. Jessica G. L. Clarke

          :

Jerry O. Talton, III,     :

          :

         *Defendant*.     :     **ORAL ARGUMENT REQUESTED**

          :

-------------------------------------------------- X

-------------------------------------------------- X

Jerry O. Talton, III,     :

          :

        *Counterclaim Plaintiff*,     :

          :

     v.     :

          :

eShares, Inc. d/b/a/ Carta, Inc., and     :

Henry Ward,     :

        *Counterclaim Defendants*.     :

          :

          :

—————————————————— X

**ESHARES, INC. D/B/A CARTA, INC., AND HENRY WARD'S REPLY IN SUPPORT OF
THEIR MOTION TO DISMISS AND MOTION TO STRIKE JERRY O. TALTON III'S
<u>SECOND AMENDED COUNTERCLAIM</u>**

# TABLE OF CONTENTS

I.    TALTON'S TORT CLAIMS SHOULD BE DISMISSED ................................................ 1

    A.    The Litigation Privilege Precludes Any Claim Based On Republication Of The Complaint ................................................ 1

    B.    Talton Fails To Identify Any Actionable Statement ................................................ 3

        i.    The Complaint's Allegations Are Substantially True ................................................ 3

        ii.    The Medium Post's Remarks Were Not Made With Actual Malice ......... 4

        iii.    Talton Fails To Plead Special Damages ................................................ 6

    C.    Talton Fails To State A Claim For False Light, Publication Of Private Facts, Or IIED ................................................ 7

II.    TALTON'S BREACH OF CONTRACT AND IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIMS SHOULD BE DISMISSED ............... 9

III.    TALTON'S RETALIATION CLAIMS SHOULD BE DISMISSED ............................ 11

    A.    Talton's FEHA Claims Should Be Dismissed ................................................ 11

    B.    Talton's Post-Termination NYSHRL And NYCHRL Claims Should Be Dismissed ................................................ 14

    C.    Talton Fails To Plead A Prima Facie Case Of Retaliation ................................................ 14

        i.    Talton Fails To Plead That He Participated In A Protected Proceeding ................................................ 15

        ii.    Talton Fails To Plead Any Retaliatory, Adverse Employment Action ................................................ 17

        iii.    The January Testimony Did Not Cause The October Medium Post ....... 18

IV.    THE COURT SHOULD STRIKE MANY OF TALTON'S ALLEGATIONS ............. 19

CONCLUSION ................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ameristar Casino E. Chi., LLC v. UNITE HERE Loc. 1,*
2016 WL 7339199 (N.D. Ill. Dec. 19, 2016) ..........................................................7

*Anderson v. Vanden Dorpel,*
667 N.E.2d 1296 (Ill. 1996) ....................................................................................7

*Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.,*
215 F.3d 219 (2d Cir. 2000) ....................................................................................5

*Bittman v. Fox,*
2016 WL 2851566 (N.D. Ill. May 16, 2016) ...........................................................2

*Brennan v. Kadner,*
814 N.E.2d 951 (Ill. App. Ct. 2004) .......................................................................6

*Bryce Corp. v. XL Ins. Am., Inc.,*
2023 WL 9004039 (S.D.N.Y. Dec. 28, 2023) .........................................................1

*Campbell v. Arco Marine, Inc.,*
50 Cal. Rptr. 2d 626 (Cal. Ct. App. 1996) .......................................................12, 13

*Carr v. Vill. of Richmond,*
1996 WL 663921 (N.D. Ill. Nov. 15, 1996) ...........................................................9

*Creation Supply, Inc. v. Hahn,*
608 F. Supp. 3d 668 (N.D. Ill. 2022) ......................................................................2

*Doe v. HarperCollins Publishers, LLC,*
2018 WL 1174394 (N.D. Ill. Mar. 6, 2018) ...........................................................9

*Doctor's Data, Inc. v. Barrett,*
170 F. Supp. 3d 1087 (N.D. Ill. 2016) .............................................................1, 2, 3

*Dorman v. Daiber,*
2022 WL 10118571 (Ill. App. Ct. Oct. 17, 2022) ...................................................2

*Dubinsky v. United Airlines Master Exec. Council,*
708 N.E.2d 441 (Ill. App. Ct. 1999) .......................................................................2

*Duplan v. City of N.Y.,*
888 F.3d 612 (2d Cir. 2018) ..................................................................................18

*Esperson v. Cellco P'ship*,
2018 WL 11219944 (N.D. Ill. Jan. 26, 2018) ..............................................................6

*Ficaro v. Funkhouser, Vegosen, Liebman & Dunn, Ltd.*,
2009 WL 10688908 (Ill. App. Ct. July 31, 2009) ......................................................17

*Flentye v. Kathrein*,
485 F. Supp. 2d 903 (N.D. Ill. 2007) ..........................................................................9

*Gen. Elec. Co. v. APR Energy plc*,
2020 WL 2061423 (S.D.N.Y. Apr. 29, 2020) ............................................................20

*Gordon Surgical Grp., P.C. v. Empire HealthChoice HMO, Inc.*,
--- F. Supp. 3d ---, 2024 WL 1134682 (S.D.N.Y. Mar. 14, 2024) .............................16

*Grant v. Bethlehem Steel Corp.*,
622 F.2d 43 (2d Cir. 1980) .........................................................................................18

*Hagan v. City of N.Y.*,
39 F. Supp. 3d 481 (S.D.N.Y. 2014) ...................................................................15, 16

*Harris v. City of Santa Monica*,
294 P.3d 49 (Cal. 2013) ..............................................................................................14

*Hopewell v. Vitullo*,
701 N.E.2d 99 (Ill. App. Ct. 1998) ..............................................................................5

*Jaros v. Vill. of Downers Grove*,
180 N.E.3d 125 (Ill. App. Ct. 2020) .............................................................................2

*Kakuris v. Klein*,
410 N.E.2d 984 (Ill. App. Ct. 1980) .............................................................................6

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
2020 WL 8465433 (S.D.N.Y. Oct. 30, 2020) ............................................................19

*Kraiem v. JonesTrading Institutional Servs. LLC.*,
492 F. Supp. 3d 184 (S.D.N.Y. 2020) ........................................................................14

*Litowitz v. Haddad*,
2020 WL 1820600 (N.D. Ill. Apr. 10, 2020) ................................................................2

*McGrory v. Applied Signal Tech., Inc.*,
152 Cal. Rptr. 3d 154 (Cal. Ct. App. 2013) ...............................................................16

*Milazzo v. Connolly*,
2017 WL 2466293 (Ill. App. Ct. June 6, 2017) .......................................................7, 8

*Otto v. Chi. Pub. Media, Inc.*,
    2023 WL 5202903 (Ill. App. Ct. Aug. 11, 2023)....................................................................7

*Parneros v. Barnes & Noble, Inc.*,
    332 F.R.D. 482 (S.D.N.Y. 2019) ...................................................................................19, 20

*Patane v. Clark*,
    508 F.3d 106 (2d Cir. 2007).........................................................................................18

*Quinn v. Jewel Food Stores, Inc.*,
    658 N.E.2d 1225 (Ill. App. Ct. 1995) ...........................................................................6

*Rivera v. Allstate Ins. Co.*,
    189 N.E.3d 982 (Ill. App. Ct. 2021) ............................................................................7

*Romero v. Allstate Ins. Co.*,
    3 F. Supp. 3d 313, 334 (E.D. Pa. 2014) .....................................................................16

*Rumsey v. Ne. Health, Inc.*,
    89 F. Supp. 3d 316 (N.D.N.Y. 2015) ........................................................................15

*Same Condition, LLC v. Codal, Inc.*,
    2024 WL 713504 (Ill. App. Ct. Feb. 21, 2024) ...........................................................7

*Sheehan v. AssuredPartners, Inc.*,
    2020 WL 2838575 (Del. Ch. May 29, 2020) ..........................................................10, 11

*Sheng v. M&TBank Corp.*,
    848 F.3d 78 (2d Cir. 2017)..........................................................................................12

*Sims v. Worldpac Inc.*,
    2013 WL 663277 (N.D. Cal. Feb. 22, 2013) ..............................................................12

*Stovall v. Align Tech., Inc.*,
    2020 WL 264402 (N.D. Cal. Jan. 17, 2020) ...............................................................12

*Taradash v. Adelet/Scott-Fetzer Co.*,
    628 N.E.2d 884 (Ill. App. Ct. 1993) ............................................................................7

*Tetrault v. Cap. Grp. Cos. Glob.*,
    2024 U.S. Dist. LEXIS 9622 (C.D. Cal. Jan. 17, 2024) ............................................12

*Trahanas v. Nw. Univ.*,
    2017 WL 2880879 (N.D. Ill. July 6, 2017)..................................................................5

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015)..........................................................................................14

**Other Authorities**

*Sheng v. M&TBank Corp.*,
    Civ. A. No. 12-1103, ECF No. 21 (Am. Compl.) (W.D.N.Y. July 26, 2013) .........................12

eShares, Inc. d/b/a Carta, Inc. ("Carta") and Henry Ward respectfully submit this reply in further support of their Motion to Dismiss and Motion to Strike Talton's SAC (the "Motion to Dismiss," the "Motion to Strike," and, jointly, the "Motion").[1] In his Memorandum of Law in Opposition to the Motion (the "Opposition" or "Opp."), Talton exposes his failure to state a claim as a matter of law and his willful inclusion in the SAC of "allegations [that] have no bearing on the issues in this case." *Bryce Corp. v. XL Ins. Am., Inc.*, 2023 WL 9004039, at *7 (S.D.N.Y. Dec. 28, 2023) (cleaned up). For the following reasons, and those fully set forth in the Motion, the SAC should be dismissed in its entirety and, in any event, paragraphs 5, 6, 17, 21, 47, 53-62, 83, 92-93, 95-96, 106, 110, 114, 147, and 152-66 should be struck from the SAC.

## I. Talton's Tort Claims Should Be Dismissed

Talton's Opposition concedes that his tort claims stem not from Carta filing its complaint in this action (the "Complaint"), but from Ward's purported "republication" of the Complaint through a hyperlink in the Medium Post.[2] Nevertheless, Talton's tort claims rely on six supposedly false statements, four of which are found *only* in the Complaint, and not quoted or identified in the Medium Post, and none of which are actionable in tort, whether styled as a claim for defamation, false light, publication of private facts, or IIED.

### A. The Litigation Privilege Precludes Any Claim Based On Republication Of The Complaint

Talton does not dispute that the litigation privilege applies to the allegations in the Complaint. Instead, Talton argues only that the litigation privilege does not protect Ward's purported republication of the Complaint through a hyperlink. The hyperlink, however, did not "fulfill the publication element of a defamation claim." *Doctor's Data, Inc. v. Barrett*, 170 F.

---

[1] All undefined capitalized terms have the meaning ascribed to them in the Motion. *See* ECF No. 97.
[2] Accordingly, to the extent Talton pled or attempted to plead a tort claim in the SAC relating to the filing of the Complaint, he has waived those claims.

Supp. 3d 1087, 1137 (N.D. Ill. 2016) (collecting cases); *see also Bittman v. Fox*, 2016 WL 2851566, at *6 (N.D. Ill. May 16, 2016) ("[D]isplaying a hyperlink is not the same as restating the alleg[edly] defamatory material.") (cleaned up).  Accordingly, the hyperlink did not republish the allegations contained within the Complaint as a matter of law.

Further, even if the hyperlink in the Medium Post could be construed as republication (it could not), it did not transform the Complaint into an extrajudicial statement; the Complaint remains a complaint, drafted by attorneys, containing absolutely privileged factual allegations asserted in good faith, despite the Medium Post's hyperlink.  *See, e.g.*, *Creation Supply, Inc. v. Hahn*, 608 F. Supp. 3d 668, 698 (N.D. Ill. 2022), *aff'd sub nom. Creation Supply, Inc. v. Cherrie*, 61 F.4th 511 (7th Cir. 2023) ("The attorney litigation privilege is, by its terms, absolute.").  Accordingly, the Complaint—and all its allegations—were not and will never be defamatory as a matter of law "[b]ecause a claim premised on the republication of a nonactionable statement cannot give rise to liability."  *Dubinsky v. United Airlines Master Exec. Council*, 708 N.E.2d 441, 454 (Ill. App. Ct. 1999); *see also Jaros v. Vill. of Downers Grove*, 180 N.E.3d 125, 134-35 (Ill. App. Ct. 2020) ("[S]ince the reported statement was not defamatory when it was published by Farley and the League, it was perforce not defamatory when it was republished by Hosé").

Further still, even if republishing a nonactionable statement could constitute defamation, Ward's republication of the Complaint through a hyperlink is protected by the common law privilege of "fair and accurate report of public records."  *Dorman v. Daiber*, 2022 WL 10118571, at *2 (Ill. App. Ct. Oct. 17, 2022).  Once the Complaint was filed on the Court's public docket, it became a matter of public record, the complete and accurate republication of which is absolutely privileged.  *See, e.g.*, *Litowitz v. Haddad*, 2020 WL 1820600, at *6 (N.D. Ill. Apr. 10, 2020).  The hyperlink contained in the Medium Post merely "identifie[d] the location" of the Complaint on the

public docket. *Doctor's Data,* 170 F. Supp. 3d at 1137. Accordingly, Ward's purported republication of the Complaint through a hyperlink is not actionable as defamation.

### B. Talton Fails To Identify Any Actionable Statement

Even if the litigation privilege somehow does not apply to the alleged republication of the Complaint in the Medium Post, the allegations in the Complaint were substantially true, and Ward's remarks stemmed from the Complaint itself.

#### i. *The Complaint's Allegations Are Substantially True*

As set forth in the Motion, Talton takes issue with four allegations in the Complaint: (1) Talton "sen[t] and receiv[ed] . . . offensive, discriminatory and harassing messages"; (2) Talton engaged in "sexually harassing behavior in violation of Carta's anti-discrimination and anti-harassment policies"; (3) Talton "sen[t] and receiv[ed] messages that are offensive, harassing, discriminatory and a violation of Carta's policies and procedures"; and (4) Talton "abuse[d] Carta's network and information systems" by "sending and receiving hundreds of messages in violation of Carta's policies and procedures." SAC ¶¶ 329, 332, 352, 356. But Talton concedes that "Carta had a policy prohibiting using Carta-issued devices for personal purposes," and that Carta owned and monitored "employee communications" and "personal files stored on Carta devices." Opp. at 10 n.6, 10. Talton only disputes whether (1) Carta "established that such policies were enforced or that any of the alleged wrongful conduct occurred on Carta-issued devices"; and (2) Carta's policies applied to Talton's sexually explicit text messages. *Id.*

However, whether Carta's policies were enforced is irrelevant to whether Carta alleged a substantially true statement in the Complaint that Talton violated Carta policies by sending and receiving sexually explicit messages. Moreover, Talton admits in the SAC that his "work computers contained a cache of some text messages from his personal Apple iMessage account linked to his personal cell phone number." SAC ¶ 14 n.1. Thus, there is no dispute that Carta's

allegations were substantially true and based on Talton's messages found on Carta's computers in violation of Carta's policies.

Talton also argues that his inappropriate conduct was not covered by Carta's anti-harassment and anti-discrimination policy because those rules "only apply to persons involved in Carta's operations." Opp. at 10. In so arguing, Talton cites, but does not quote, Carta's anti-harassment and anti-discrimination policy. But the policy is clear: Carta prohibits, without qualification, "[a]ll forms of harassment of, or **by**, employees, contractors, vendors, visitors, customers, and clients." *See* ECF No. 29-3 at 8 (emphasis added). The policy prohibits all forms of harassment, not just harassment targeted *at* Carta personnel. Talton's "cache" of sexually explicit text messages on his Carta-issued devices violated Carta's policies prohibiting employees' use of Carta devices for personal purposes and all kinds of "visual, verbal, or physical conduct of sexual nature." *Id.* Accordingly, the Complaint's allegations were substantially true and are not actionable as a matter of law.

### ii. The Medium Post's Remarks Were Not Made With Actual Malice

Aside from the Complaint's allegations, Talton asserts that the Medium Post contains four supposedly defamatory statements: (1) "[Talton] was inappropriate with women," (2) Talton "abused his position as CTO," (3) Talton is a "misogynist" and (4) Talton is a "racist." SAC ¶ 356. Talton makes clear in his Opposition that the SAC incorporated the Medium Post by reference and the Medium Post must, therefore, be read in context. Opp. at 5 n.3. As Talton explains, "[r]eading these statements in context in the Medium Post and the original Complaint to which the Medium Post hyperlinks, the Medium Post asserts that the Moving Parties are in 'possession of documents' indicating factual support for these statements." *Id.* at 10. In clarifying this position, Talton necessarily concedes that Ward did not act with actual malice in publishing the Medium Post, as required for a former employee to state a defamation claim against his former

employer.  *See Trahanas v. Nw. Univ.*, 2017 WL 2880879, at *8 (N.D. Ill. July 6, 2017) ("If the defamation claim arises from the employer-employee relationship, the plaintiff must plead actual malice under Illinois law.") (cleaned up).[3]

Talton misunderstands the meaning of "actual malice."  "Actual malice means 'the statement was made with knowledge of its falsity or in reckless disregard of whether it was true or false.'"  *Id.* (cleaned up).  It does not mean, as Talton pleads, that the statement was made with colloquial "malice," *i.e.*, meanness or ill will.  *See* SAC ¶ 366.  The relevant language in the Medium Post makes clear that Ward relied on the Complaint's allegations and "extensive documentation" in characterizing Talton as "a misogynist and a racist," "inappropriate with women," and "abus[ive] [of] his position as CTO."  *Id.* ¶ 356.  The framing of these remarks does not support a plausible inference that Ward knew his claims were false or that he recklessly disregarded the claims' truth or falsity.  *See Trahanas*, 2017 WL 2880879, at *8.  Instead, the Medium Post's text supports only an inference that Ward believed his remarks were truthful, based on the Complaint's good-faith allegations.

In addition, the remarks in the Medium Post can only be construed as Ward's own opinions and impressions of the Complaint's allegations and his commentary on "a few bad press cycles." Opp. at 5.  As Talton concedes, "[t]he First Amendment prohibits defamation claims based on loose, figurative language," like the statements at issue in the Medium Post.  *Id.* at 9.  As in *Hopewell v. Vitullo*, "the tenor and context" of the Medium Post "plainly show" that the statements contained therein are nonactionable opinions.  701 N.E.2d 99, 104 (Ill. App. Ct. 1998).  Indeed,

---

[3] "[R]eply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party."  *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226-27 (2d Cir. 2000) (cleaned up).  The SAC only specifically quoted four discrete statements in the Medium Post (14 total words), yet Talton quotes new passages of the Medium Post in his Opposition, *see* Opp. at 5, 10, which he did not include in the SAC.  Carta and Ward must now respond to Talton's new characterization of the Medium Post.

Talton fails to cite any authority holding that broad accusations of inappropriate conduct, abuse of one's position, misogyny, and racism constitute actionable defamation. Rather, the caselaw weighs heavily against finding defamation in circumstances akin to those here. *See Brennan v. Kadner,* 814 N.E.2d 951, 955, 958-59 (Ill. App. Ct. 2004) (no actionable statement in newspaper column reporting that "the election board could refer [plaintiff's] case to the U.S. attorney's office, claiming that he used the U.S. mail in perpetrating a fraud"); *Quinn v. Jewel Food Stores, Inc.,* 658 N.E.2d 1225, 1228-29 (Ill. App. Ct. 1995) (no actionable statement in employee's personnel file claiming that employee was "very aggressive, to the point of being cocky" and "[a] con artist!! Watch out for the bullshit!"); *Kakuris v. Klein,* 410 N.E.2d 984, 986 (Ill. App. Ct. 1980) (no actionable statement in employer's claims to credit reporter that employee exhibited a "[l]ack of achievement in basic goals" and "did not have the qualifications needed to achieve the objectives of the profession."). Here too, Talton fails to state a defamation claim because he fails to identify any actionable statement as a matter of law.

### iii. *Talton Fails To Plead Special Damages*

Even if Talton had identified a purportedly actionable statement in the Medium Post, which he has not, he fails to state a defamation claim because he has not pled special damages. Talton concedes by omission that the terms "misogynist" and "racist" are not defamatory *per se*. Moreover, Ward's assertion that Talton was "inappropriate with women" is not defamatory *per se* because it simply does not assert that any sexual intercourse occurred. *Esperson v. Cellco P'ship*, 2018 WL 11219944, at *1 (N.D. Ill. Jan. 26, 2018) ("[F]or a statement to impute adultery or fornication, it must assert, at a minimum, that sexual intercourse occurred.") (cleaned up). To be sure, there are many ways to be inappropriate with women, well short of fornication and adultery.

As set forth in the Motion, Talton was required to—and did not—plead special damages to state a claim for defamation *per quod*. Talton asserts that his alleged inability to find employment,

his generalized anxiety and adjustment disorders, and his alleged "PTSD-induced night terrors" constitute special damages. They do not. A defamation *per quod* claim requires that the plaintiff have "actual damages of a *pecuniary nature*" because of a defamatory statement. *Same Condition, LLC v. Codal, Inc.*, 2024 WL 713504, at *5 (Ill. App. Ct. Feb. 21, 2024) (emphasis added) (cleaned up). Talton's general allegations of emotional distress and inability to find a new job are simply not enough. *See, e.g.*, *Rivera v. Allstate Ins. Co.*, 189 N.E.3d 982, 1000 (Ill. App. Ct. 2021) (holding allegations that prospective employers would not hire the plaintiffs were insufficient); *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1304 (Ill. 1996) (holding allegations that the plaintiff was damaged monetarily by losing gainful employment and wages and suffering great mental pain and anguish were insufficient); *Taradash v. Adelet/Scott-Fetzer Co.*, 628 N.E.2d 884, 888 (Ill. App. Ct. 1993) (holding allegations that customers refused to deal with the plaintiff, that he was hindered from selling his product lines, and that he suffered lost commissions and income were insufficient). Accordingly, Talton fails to state a defamation *per quod* claim because he fails to plead special damages.

### C. Talton Fails To State A Claim For False Light, Publication Of Private Facts, Or IIED

Because Talton fails to identify any actionable statement in the Medium Post—or the Complaint hyperlinked in the Medium Post—Talton fails to state any tort claim based on Carta or Ward's remarks. *See Otto v. Chi. Pub. Media, Inc.*, 2023 WL 5202903, at *4 (Ill. App. Ct. Aug. 11, 2023) ("[W]here the plaintiff has failed to state a cause of action for defamation *per se*, the false light count must fail as well."); *Ameristar Casino E. Chi., LLC v. UNITE HERE Loc. 1*, 2016 WL 7339199, at *6 (N.D. Ill. Dec. 19, 2016) ("There is no liability for disclosure of facts that are a matter of public record, and there is no liability for giving further publicity to what the plaintiff himself leaves open to the public eye.") (cleaned up); *Milazzo v. Connolly*, 2017 WL 2466293, at

\*7 (Ill. App. Ct. June 6, 2017) (affirming dismissal of IIED claim where, although "defendants' negative rants [in a blog post] were certainly offensive, rude, annoying and, we assume, unwarranted, the nature of the criticisms against [plaintiff] was a far cry from being so unendurable to a reasonable person and so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.") (cleaned up).

Talton concedes that his false light claim rises and falls with his defamation claim. *See* Opp. at 16. Because Talton's defamation claim fails as a matter of law, so too does his false light claim.

Talton's publication of private facts claim fails because Talton concedes that his "tort claims stem from Ward's publication of an October 20, 2023 Medium post" and the Medium Post only references matters set forth in Carta's *public* December 30, 2022 Complaint. Opp. at 5. Puzzlingly, Talton argues that the Medium Post's hyperlink to the Complaint "put[] Talton's private personal details into public view for the *first time*." *Id.* at 18 n.9 (emphasis added). It did not. The Complaint was filed ten months **before** the Medium Post was published and has been publicly available on this Court's docket ever since.[4] Thus, Talton fails to state a claim for publication of private facts.

Finally, Talton fails to state an IIED claim because, as Talton concedes, the "bar for extreme and outrageous conduct is high in that the conduct must 'go beyond all possible bounds of decency and be regarded as intolerable in a civilized community.'" *Id.* at 11. Talton cites no case where a court found claims of inappropriate conduct, abuse of one's position, misogyny, and racism amount to extreme and outrageous conduct. Rather, Talton relies on distinguishable cases

---

[4] Moreover, Talton concedes that "personal files stored on Carta devices are owned by Carta" and Carta monitors employee communications on its devices. *Id.* at 10. Accordingly, Talton's sexually explicit messages on Carta-issued devices were never private.

with truly extreme and outrageous facts not present here. *See Carr v. Vill. of Richmond*, 1996 WL 663921, at *8 (N.D. Ill. Nov. 15, 1996) (finding a claim for IIED where plaintiff alleged that police officer "held her against the wall . . . slammed her against the trunk of the squad car, grabbed her by her pony tail and threw her into the squad car."); *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 920–22 (N.D. Ill. 2007) (finding a claim for IIED where defendants created a website with plaintiffs' name as the domain name, wrote on the website that plaintiff recorded the activities of tenants at night through their windows and possessed illegal video tapes, and posted a photo on the website of plaintiff's family gravestone with garbage at the base of it); *Doe v. HarperCollins Publishers, LLC*, 2018 WL 1174394, at *10–11 (N.D. Ill. Mar. 6, 2018) (finding an IIED claim where defendant published a book about the plaintiff aiming to discredit her proven claims of sexual harassment at the hands of a professor). Talton's IIED claim rests solely on words— allegations and remarks arising from the Complaint. Talton has not been subject to physical or sexual harassment, and his family gravestone has not been dishonored. In short, Talton has not, as a matter of law, been subject to extreme and outrageous conduct. Accordingly, Talton fails to state any tort claim and Counts 13, 14, 15, and 16 should be dismissed.

## II. Talton's Breach Of Contract And Implied Covenant Of Good Faith And Fair Dealing Claims Should Be Dismissed

Talton's breach of contract claim should be dismissed because he has failed to identify any contractual duty that Carta has breached. Talton argues that Carta adopts a "self-serving interpretation of the Stock Plan without consideration of Talton's reasonable competing interpretation," Opp. at 19, but Talton fails to articulate any competing interpretation in his Opposition. Indeed, Talton takes issue with Carta's interpretation of the Stock Plan as conferring on Carta's Board powers, not obligations, but then Talton quotes the Stock Plan as providing Carta's Board with exactly that—powers, not obligations. *See* Opp. at 19–20.

Talton also complains that Carta cites no authority for its interpretation of the Stock Plan, but Talton himself cites such a case. In *Sheehan v. AssuredPartners, Inc.*, plaintiffs alleged that defendant "ha[d] the duty to make any decision related to employment for purposes of the Equity Incentive Plan in good faith," pursuant to Sections 2 and 9(n) of the relevant plan, and that defendant breached that duty "by determining in bad faith that [plaintiffs] were terminated for cause." 2020 WL 2838575, at *14 (Del. Ch. May 29, 2020). Section 2 defined "Employment" and "termination of employment" and provided that "[a]ll determinations regarding employment and service (for purposes of administering the [Equity Incentive Plan] or any Award Agreement) shall be made by [defendant] in its sole discretion." *Id.* Section 9(n) stated that any reference to "a sole discretion scope of [defendant's] authority shall mean that such discretion shall be exercised in good faith." *Id.* However, the court found that "Section 2 and Section 9(n) alone [did] not establish that [defendant] ha[d] any right or obligation to make a determination regarding whether an employee was terminated with or without cause." *Id.* The court reasoned that "Section 2's requirement for [defendant] to make its determinations in its sole discretion only applie[d] where the Equity Incentive Plan . . . specified [defendant] ha[d] the ability to make such a determination." *Id.* Accordingly, the court dismissed plaintiffs' contract claim because they had failed to "identify any such contractual obligation or discretion applicable to [the] case." *Id.*

As in *Sheehan*, the Stock Plan does not provide Carta with "any right or obligation to make a determination regarding whether [Talton] was terminated with or without cause." *Id.* The Stock Plan requires only that Carta act in good faith with respect to its enumerated powers under the Stock Plan. Indeed, the Stock Plan does not require Carta to "make any determination about the merits of [Talton's] termination"; rather, it provides for immediate forfeiture of Talton's stock following a for Cause termination. *See* ECF No. 29-6 § 5(k); *see also Sheehan*, 2020 WL 2838575,

at *14.  Accordingly, Talton fails to identify a contractual obligation that Carta breached and therefore fails to state a breach of contract claim.

Similarly, Talton fails to allege that Carta breached any implied duty of good faith and fair dealing; his claim merely duplicates his foundering breach of contract claim to no avail. Accordingly, there is no "gap" to be filled in the Stock Plan with an implied covenant of good faith.

Finally, even if Talton alleges that the Stock Plan imposed either an express or implied duty on Carta to act in good faith when terminating employees for Cause, Talton fails to plead facts supporting a reasonable inference that Carta acted in bad faith in terminating him for Cause. To the contrary, Talton admits that he has "copies of tape recordings . . . of conversations with … Carta executives," including an attorney-client privileged conversation with Carta's general counsel.  SAC ¶¶ 110, 114, 116.  Talton himself has thus identified at least one good-faith basis (of many) for his termination for Cause.  Further, Talton cannot credibly dispute that he sent and/or received misogynist and racist remarks in sexting with various women and that those messages were stored on at least one Carta device.  Accordingly, Talton fails to allege that Carta breached any obligation of good faith, as set forth in the Stock Plan, and Counts 17 and 18 should be dismissed.

## III.    Talton's Retaliation Claims Should Be Dismissed

### A.    Talton's FEHA Claims Should Be Dismissed

Talton's FEHA claims fail because Talton cannot state a retaliation claim under both New York and California law stemming from his employment *in New York*, and the FEHA does not apply extraterritorially.  To start, Talton argues that he is permitted to plead identical claims under different state laws because "the Federal Rules permit pleading in the alternative."  Opp. at 24.

But Talton does not plead his FEHA, NYSHRL, and NYCHRL claims in the alternative. Instead, he seeks to recover on the same claim three times.

Talton cites *Sheng v. M&TBank Corp.*, 848 F.3d 78 (2d Cir. 2017), as supposedly clear "Second Circuit precedent" that he may proceed to discovery on his identical retaliation claims under the FEHA, the NYSHRL, and the NYCHRL. Opp. at 24. In *Sheng*, however, the plaintiff, a California resident, alleged that her former employer discriminated against her by revoking her remote work status in California and requiring her to immediately commute to work in person in Buffalo, New York, after she announced her pregnancy. *See Sheng v. M&TBank Corp.*, Civ. A. No. 12-1103, ECF No. 21, at ¶¶ 9, 26 (W.D.N.Y. July 26, 2013). There, the nexus to both California and New York was clear. Further, the defendant did not move to dismiss the duplicative claims under the NYSHRL and the FEHA, so neither the district court nor the Second Circuit considered whether the plaintiff could state claims under both states' laws.

Talton also cites several cases in which California federal courts considered whether a nonresident plaintiff had stated a FEHA claim. *See* Opp. at 25 (citing *Sims v. Worldpac Inc.*, 2013 WL 663277, at *1 (N.D. Cal. Feb. 22, 2013); *Stovall v. Align Tech., Inc.*, 2020 WL 264402, at *2 (N.D. Cal. Jan. 17, 2020); *Tetrault v. Cap. Grp. Cos. Glob.*, 2024 U.S. Dist. LEXIS 9622 (C.D. Cal. Jan. 17, 2024)). But Talton cites no case where a court decided that the plaintiff could state the *same* claim under *both* the FEHA *and* any other comparable state law in the same action at the same time. Accordingly, Talton fails to rebut the commonsense conclusion that a plaintiff cannot seek triple recovery for the same harm under various state and local laws.

Talton also cannot overcome controlling authority that the FEHA does not apply extraterritorially. In his analysis of the FEHA's purported extraterritorial scope, Talton relies heavily on case law from "California federal courts," which he claims is "controlling California

law." Opp. at 25, 27. California federal courts, however, do not make controlling California law; California state courts do. In the Motion, Carta and Ward rely on controlling California law— *Campbell v. Arco Marine, Inc.*, 50 Cal. Rptr. 2d 626 (Cal. Ct. App. 1996)—which explicitly provides that "without clearer evidence of legislative intent to do so than is contained in the language of the FEHA," applying the FEHA extraterritorially to protect non-California residents injured outside of California "would raise serious constitutional concerns" under the federal Commerce Clause, the Due Process Clause, and the Full Faith and Credit Clause. *Id.* at 631-32. Talton cites no contrary California law.

Finally, Talton argues that his FEHA claims are "replete with allegations demonstrating a substantial connection to California." Opp. at 26. Yet, as fully set forth in the Motion, Talton's FEHA retaliation claims do *not* arise from any of his contacts with California, including his alleged employment in California from "February 2, 2019 to April 12, 2021," his management of California employees, and his "near-daily meetings with California-based employees." *Id.* Indeed, by Talton's own admission, none of his FEHA claims has any nexus whatsoever to California; rather, "each of [his] retaliation claims stem from conduct that occurred between September 2, 2022 and December 23, 2022, when Carta terminated [Talton]." Opp. at 38-39.[5] Thus, Talton's FEHA claims postdate his alleged employment in California by over a year. For these reasons, Talton's FEHA claims should be dismissed.[6]

---

[5] Talton's concession that his retaliation claims are based only on conduct during an 11-week period in 2022 should dramatically narrow the scope of discovery and of his 92-page pleading.

[6] Talton withdrew his purported "California Wrongful Discharge/Violation of Public Policy claim (Count 7)" in his Opposition. Opp. at 2 n.1.

**B.** **Talton's Post-Termination NYSHRL And NYCHRL Claims Should Be Dismissed**

Talton argues that he pleads post-termination NYSHRL and NYCHRL claims in Counts 10 and 12 because he filed an EEOC charge in California and Carta and/or Ward purportedly retaliated against him by publishing the Medium Post while Talton was residing in Illinois. This contention is illogical. As Talton concedes, under New York law "nonresidents of the city and state must plead and prove that the alleged discriminatory conduct had an impact within those respective boundaries" on the plaintiff. Opp. at 29; *see Kraiem v. JonesTrading Institutional Servs. LLC.*, 492 F. Supp. 3d 184, 199 (S.D.N.Y. 2020) (observing that "the impact of the employment action must be felt *by the plaintiff in* NYC" or, with respect to the NYSHRL, New York State) (cleaned up). Talton ignores this pleading requirement and instead emphasizes that he engaged in protected activity by filing an EEOC claim (in San Francisco) and that he previously worked for Carta in New York. Talton, however, has not pled and cannot plead that he suffered any alleged impact of the Medium Post in New York while residing in Illinois. Thus, Talton's post-termination NYSHRL and NYCHRL claims should be dismissed.

**C.** **Talton Fails To Plead A Prima Facie Case Of Retaliation**

Talton's retaliation claims should also be dismissed for failure to state a *prima facie* case of retaliation. As a threshold matter, Talton cites the wrong standard for Title VII retaliation. He asserts that "'[a]t the pleadings stage,' an employee alleging retaliation need only 'allege that the employer took adverse action against her at least in part for a discriminatory reason, and . . . may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Opp. at 3 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)). This is the standard for a Title VII **discrimination** claim—not a Title VII **retaliation** claim. *See also* Opp. at 30–31 (relying

on *Harris v. City of Santa Monica*, 294 P.3d 49, 61 (Cal. 2013) and quoting the discrimination standard—not the retaliation standard—for an FEHA claim). Indeed, *Vega* provides that "[u]nlike Title VII discrimination claims," to state a retaliation claim, "the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90. This Talton fails to do.

### i. Talton Fails To Plead That He Participated In A Protected Proceeding

Talton cannot state a claim for retaliation based on his alleged assistance to ███ in ███ mediation because that assistance—sending a Wrongful Recording of an attorney-client privileged conversation—was not a protected activity. Talton asserts that the Wrongful Recording constitutes a protected activity because the mediation itself was a protected activity and ███ conduct was protected. *See, e.g.*, Opp. 33 n.12 ("The Moving Parties do not and cannot contend that ███ pre-suit letter or ███ involvement in the Mediation fall outside the scope of protected conduct."); *id.* at 34 ("[T]he Mediation was a protected activity for purposes of Talton's retaliation claims."). But Talton's focus on the mediation is misplaced; the focus is on *Talton's* conduct not ███. Talton does not allege that any party to the mediation served him with a discovery request, called him to testify, requested his assistance, invited him (or permitted him) to attend the mediation, or requested that he produce the Wrongful Recording. Talton improperly recorded the attorney-client privileged conversation and sent the recording to ███ separate and apart from any formal mediation, to which he was not a party. That wrongful conduct—in breach of Talton's fiduciary duties—is simply not a protected activity, no matter how Talton attempts to spin it. Accordingly, Talton cannot state a retaliation claim based on his improper disclosure of the Wrongful Recording.

Talton also fails to state a retaliation claim based on the Paul, Weiss Investigation. Talton's Response fails to refute that an internal investigation is outside the scope of Title VII and

-15-

comparable state and local statutes. *See, e.g.*, *Rumsey v. Ne. Health, Inc.*, 89 F. Supp. 3d 316, 333 (N.D.N.Y. 2015), *aff'd*, 634 F. App'x 318 (2d Cir. 2016) (discussing Title VII and NYSHRL claims and noting that participation in an internal investigation is only a protected activity when it occurs "in conjunction with or in response to an EEOC charge"); *Hagan v. City of N.Y.*, 39 F. Supp. 3d 481, 501 (S.D.N.Y. 2014) ("[I]nternal investigations do[] not fall under the 'participation' clause") (cleaned up); *McGrory v. Applied Signal Tech., Inc.*, 152 Cal. Rptr. 3d 154, 167 (Cal. Ct. App. 2013) (noting that the FEHA does not protect participation in a "private internal investigations by employers"). The Paul, Weiss Investigation was an internal investigation, and Talton's involvement in it cannot support a retaliation claim as a matter of law.

Acknowledging these pleading deficiencies, and without leave of the Court, Talton attempts to replead his counterclaim for a third time in his Response by inventing a claim of "anticipatory retaliation." Talton cannot plead a new claim in response to a motion to dismiss. *See, e.g.*, *Gordon Surgical Grp., P.C. v. Empire HealthChoice HMO, Inc.*, --- F. Supp. 3d ---, 2024 WL 1134682, at *10 (S.D.N.Y. Mar. 14, 2024) ("It is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.") (cleaned up).[7] Accordingly, the Court should disregard this theory and dismiss Talton's retaliation claims insofar as they arise from the Wrongful Recording and the Paul, Weiss Investigation.

---

[7] Even if Talton plausibly asserted an anticipatory retaliation claim in the SAC, that claim fails. Talton cannot bring the Wrongful Recording and internal Paul, Weiss Investigation within the scope of Title VII and comparable state and local laws by reframing his allegations as ones for "anticipatory retaliation." To do so would rewrite the statutes. Moreover, there is nothing to connect the Wrongful Recording and the Paul, Weiss Investigation with unspecified future activities Talton might undertake "to assist ████, Emily Kramer, and others" with respect to their claims against Carta. Opp. at 36. Indeed, nothing in the SAC suggests that Carta and/or Ward had "reasonably specific fears" of Talton's future conduct, as is required for a claim of anticipatory retaliation. *Romero v. Allstate Ins. Co.*, 3 F. Supp. 3d 313, 334 (E.D. Pa. 2014), *aff'd sub nom. E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444 (3d Cir. 2015).

## ii.      *Talton Fails To Plead Any Retaliatory, Adverse Employment Action*

Talton does not dispute that "despite [his] reports of discrimination, sexism, and harassment at Carta between November 19, 2020 and August 2022, he received promotions and pay increases." Opp. at 38. Rather, Talton acknowledges that Carta had a "demonstrated" tolerance of his alleged "desire to cure" Carta of its supposedly "toxic culture." *Id.* Nevertheless, Talton asks the Court to find that Carta suddenly "retaliated" against him after Carta learned that Talton had wrongfully recorded an attorney-client privileged conversation with Carta's General Counsel and absconded with confidential and trade secret materials in contravention of his contractual and fiduciary duties and failed to return those materials despite Carta's repeated requests. This is not retaliation; it is a company protecting itself from a rogue employee. Accordingly, Talton fails to plausibly allege that Carta retaliated by terminating him for Cause.

Talton also does not dispute that he alleged only in a conclusory fashion that Carta "misrepresent[ed] the circumstances surrounding [his] placement on administrative leave and [his] termination." SAC ¶ 191. Instead, Talton attempts to characterize this conclusory allegation as including unspecified "factual content." Opp. at 39. But there can be no retaliation claim where Talton cannot specifically identify the adverse employment action, *i.e.*, the alleged misrepresentation. Accordingly, Talton fails to plausibly allege that Carta retaliated against him by misrepresenting the circumstances of his leave and termination in some unspecified manner.

Finally, Talton fails to state a retaliation claim based on Carta filing the Complaint. In contending that the Complaint was an adverse action, Talton seeks to circumvent the absolute litigation privilege and state a defamation claim by another name. However, Carta only included relevant factual allegations in each iteration of the Complaint, including Talton's text messages showing that he violated Carta's policies and abused his position as CTO and the termination letter

through which Talton was terminated for Cause.[8]  Title VII and its state and local analogs should

not be misconstrued to prevent employers from bringing breach of contract, breach of fiduciary

duty, and misappropriation of trade secrets claims against disloyal former employees.  For these

reasons, Talton fails to allege that Carta retaliated against him in Counts 1, 3, 4, 5, 8, 9, and 11.

### iii.      The January Testimony Did Not Cause The October Medium Post

Talton fails to state a *prima facie* case of "post-employment" retaliation in Counts 2 and 6

insofar as he alleges that his deposition testimony in Emily Kramer's lawsuit against Carta on

January 23, 2023 *caused* the Medium Post nearly nine months later.  *See* SAC ¶¶ 147, 180-81.

Talton asserts that his retaliation claims survive this nine-month lapse based on wholly inapposite

case law.  **First**, Talton cites two cases where the employer retaliated at the "first available

opportunity," despite the lapse in time.  *See Duplan v. City of N.Y.*, 888 F.3d 612, 625 (2d Cir.

2018); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980).  The same is not true

here.  Ward could have posted a blog at any time after Talton's deposition testimony in January

2023; but nothing happened until October 2023.  This distinction dooms Talton's claims.

**Second**, Talton cites one case where the court disregarded a potential one-year delay

between the protected activity and the alleged retaliatory act because the plaintiff alleged that "she

specifically overheard" her superiors "conspiring to drive her out of her job."  *Patane v. Clark*,

508 F.3d 106, 116–17 (2d Cir. 2007).  There is no such allegation here.  Because the Medium Post

was not published at the "first available opportunity" and Talton does not allege any direct

---

[8] Talton's focus on the Termination Letter is misplaced.  First, the Termination Letter was attached as an exhibit to Carta's Complaint and is thus protected by the absolute litigation privilege. *See, e.g.*, *Ficaro v. Funkhouser, Vegosen, Liebman & Dunn, Ltd.*, 2009 WL 10688908, at *7–8 (Ill. App. Ct. July 31, 2009) (confirming that filings in judicial proceedings are protected by the litigation privilege).  Second, the Termination Letter is central to Carta's breach of fiduciary duty and breach of contract claims against Talton, neither of which Talton moved to dismiss.  For example, Carta alleges that the Termination Letter required Talton to preserve and return all documents and information related to Carta, and that Talton breached (and continues to breach) Section 8 of the CIIAA by failing to comply with Carta's requests. *See* ECF No. 1, ¶¶ 48, 51, 52.  Thus, Carta's inclusion of the Termination Letter as a protected attachment to its Complaint directly related to several of its causes of action and was not retaliatory. *Cf.* Opp. at 40–42.

evidence of retaliation, the nine-month delay between alleged protected activity and alleged retaliation defeats Talton's claims. Accordingly, Talton fails to state a claim in Counts 2 and 6 insofar as he relies on the January Testimony.

## IV. The Court Should Strike Many Of Talton's Allegations

Talton argues in a conclusory fashion that the allegations Carta and Ward seek to strike from the SAC are, in Talton's opinion, "entirely relevant to Talton's claims." Opp. at 44. However, paragraphs 17, 21, 53-62, 83, 92-93, 106, and 152-66 add nothing of substance to Talton's claims. Rather, the allegations paint a self-serving and vindictive caricature of Ward, analogize Talton to "roadkill" with reference to a 19th-century philosopher, and offer needless detail about the lives of other Carta employees and executives not pertinent to the limited issues of law and fact in this case. Specifically, Talton argues that the paragraphs Carta and Ward seek to strike are relevant as to "Carta's culture" and "Ward's control, management style, and behavior." Opp. at 44. But Talton has not asserted a hostile work environment claim against Carta or Ward. Paragraphs 17, 21, 53-62, 83, 92-93, 106, and 152-66 of the SAC are therefore irrelevant to Talton's claims and should be struck.

Talton also disputes that paragraphs 5, 6, 17, 47, 56, 83, 92-93, 95-96, 110, 114, 147, 158, 162-63, and 165 of the SAC reflect Carta's confidential and attorney-client privileged communications. Talton argues that Carta and Ward "ask the Court to take an extreme step" in applying the attorney-client privilege to "conversations that do not involve an attorney." Opp. at 45. The attorney-client privilege, however, clearly "protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation," even where no attorney is present. *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 8465433, at *2 (S.D.N.Y. Oct. 30, 2020) (cleaned up); *see also* ECF No. 98, at ¶ 6.

Further, Talton argues that Ward supposedly waived any attorney-client privilege related to the Paul, Weiss Investigation by "disclosing the outcome" of the investigation. Opp. at 45. However, the privilege associated with the Paul, Weiss Investigation belongs to Carta's Board— not Ward—and neither Carta nor its Board has waived any such privilege—let alone made a deliberate choice to do so. *See, e.g., Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 505 (S.D.N.Y. 2019) ("[T]he issue of waiver in the case of the testimony of a corporation's agent is whether the <u>corporation</u> has acted deliberately in disclosing privileged information, not whether the witness acted deliberately."). Even if Ward could have waived the privilege, his passing reference to the "outcome of the Paul Weiss Investigation" did not waive privilege over the *entire* investigation, including Talton's detailed allegations regarding his report to the Board's outside counsel and their responses. *See, e.g., Gen. Elec. Co. v. APR Energy plc*, 2020 WL 2061423, at *10 (S.D.N.Y. Apr. 29, 2020) (observing that the attorney-client privilege was not waived by news outlets' reports about the litigation).

For these reasons, and those fully set forth in the Motion to Strike, as well as Carta's briefing in support of its motion to seal the SAC, *see* ECF No. 90, paragraphs 5, 6, 17, 21, 47, 53-62, 83, 92-93, 95-96, 106, 110, 114, 147, and 152-66 should be struck from Talton's pleading.[9]

## <u>CONCLUSION</u>

Talton has both failed meaningfully to refute any basis for dismissal set forth in the Motion to Dismiss or to show why Carta's Motion to Strike the identified paragraphs in the SAC should not be granted. For the reasons above, and the reasons in Carta and Ward's Motion, Carta and Ward respectfully request that the Court grant their Motion to Dismiss and Motion to Strike in their entirety.

---

[9] Carta and Ward withdraw their request to strike paragraphs 107, 145-146, and 148, which were inadvertently included in the Motion to Strike, but request that the Court strike the remaining paragraphs identified above.

Dated: New York, New York
July 19, 2024

DECHERT LLP


By: */s/ Nicolle L. Jacoby*

Andrew J. Levander
Nicolle L. Jacoby
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
andrew.levander@dechert.com
nicolle.jacoby@dechert.com
Telephone:     (212) 698-3500
Facsimile:      (212) 698-3599

Christopher J. Merken
Julia M. Curley (admitted *Pro Hac Vice*)
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
christopher.merken@dechert.com
julia.curley@dechert.com
Telephone:     (215) 994-4000
Facsimile:      (215) 994-2222

**Attorneys for eShares, Inc. d/b/a Carta, Inc. and Henry Ward**

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on July 19, 2024, I had the foregoing document electronically filed using the

CM/ECF system, and that the same was served on all counsel of record via CM/ECF.


*<u>/s/ Nicolle L. Jacoby</u>*
Nicolle L. Jacoby