# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- X

eShares, Inc. d/b/a Carta, Inc.,                    :
                                                     :
                        *Plaintiff*,                :     Civil Action No.: 1:22-cv-10987
                                                     :
            v.                                        :     Hon. Jessica G. L. Clarke
                                                     :
Jerry O. Talton, III,                                :
                                                     :
                        *Defendant*.                :
                                                     :
---------------------------------------------------- X


---------------------------------------------------- X

Jerry O. Talton, III,                                :
                                                     :
                *Counterclaim Plaintiff*,           :
                                                     :
            v.                                        :
                                                     :
eShares, Inc. d/b/a/ Carta, Inc., and                :
Henry Ward,                                          :
                *Counterclaim Defendants*.           :
                                                     :
_____ X


**ESHARES, INC. D/B/A CARTA, INC., AND HENRY WARD'S MEMORANDUM OF
LAW IN SUPPORT OF THEIR MOTION TO DISMISS AND MOTION TO STRIKE**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

ARGUMENT ...................................................................................................... 4

I.      Talton's Tort Claims Should Be Dismissed.......................................... 5

    A.      The Litigation Privilege Bars Talton's Claims Against Carta Based On Carta's Complaints In This Lawsuit ...................................... 5

    B.      Talton's IIED Claims Duplicate His Defamation Claims And Should Be Dismissed ........................................................................ 7

    C.      Talton's Defamation Claims Fail As A Matter Of Law ........................... 8

        i.      Talton Fails To State A Claim For Defamation Based On Carta's Allegations In Its Complaints........................................... 8

    D.      Talton Fails To State A Claim For Defamation Based On Ward's Blog Post .......................................................................... 12

    E.      Talton's Implied Defamation Claim Fails As A Matter Of Law ............. 14

    F.      Talton Fails To State An IIED Claim Under New York Or Illinois Law ............................................................................... 16

    G.      Talton Fails To State An IIED Claim Based On Carta's Allegations In Its Complaints................................................................ 16

    H.      Talton Fails To State An IIED Claim Based On Ward's Blog Post ........ 18

    I.      Talton Fails To State A False Light Claim .............................................. 19

    J.      Talton Fails To State A Publication Of Private Facts Claim ................... 20

II.     Talton's Contract Claims Should Be Dismissed.................................... 22

    A.      Talton Fails To State A Claim For Breach Of Contract .......................... 22

    B.      Talton Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing................................... 24

III.    Talton's Retaliation Claims Should Be Dismissed................................ 26

    A.      Talton's Retaliation Claims Based On Alleged Participation In A Protected Proceeding Should Be Dismissed ........................... 28

    B.      Talton's Retaliation Claims Based On Alleged Opposition To Unlawful Employment Practices Should Be Dismissed........................ 32

    C.      Carta's Lawsuit Against Talton Is Not An Adverse Employment Action.................................................................................. 35

**TABLE OF CONTENTS**
(continued)

**Page**

|   |   |   |   |
|---|---|---|---|
| | D. | Talton's Retaliation Claims Arising Under California Law Should Be Dismissed | 36 |
| IV. | | Talton's Wrongful Discharge Claim Is Not Recognized Under New York Law And Should Be Dismissed | 39 |
| V. | | The Court Should Strike Many Of Talton's "Factual" Allegations | 41 |

CONCLUSION .......................................................................................................... 45

CERTIFICATE OF SERVICE ................................................................................. 47

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmed v. Gateway Grp. One*,
  2012 WL 2061601 (E.D.N.Y. June 7, 2012) ........................................................18

*Ameristar Casino E. Chi., LLC v. UNITE HERE Loc. 1*,
  2016 WL 7339199 (N.D. Ill. Dec. 19, 2016) .......................................................21

*Amidax Trad. Grp. v. S.W.I.F.T. SCRL*,
  671 F.3d 140 (2d Cir. 2011) ................................................................................38

*Andrews v. At World Props., LLC*,
  2023 WL 3939464 (Ill App. June 12, 2023) .....................................................9, 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .........................................................................................4, 19

*Atherton v. 21 E. 92nd St. Corp.*,
  149 A.D.2d 354, 539 N.Y.S.2d 933 (1st Dep't 1989) ..........................................16

*Bd. of Forensic Document Examiners, Inc. v. Am. Bar Ass'n*,
  287 F. Supp. 3d 726 (N.D. Ill. 2018) ....................................................................5

*Bedin v. Nw. Mem'l Hosp.*,
  187 N.E.3d 739 (Ill. App. Apr. 9, 2021) ...............................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .........................................................................................4, 19

*Bryce Corp. v. XL Ins. Am., Inc.*,
  2023 WL 9004039 (S.D.N.Y. Dec. 28, 2023) ...................................................5, 43

*Campbell v. Arco Marine, Inc.*,
  42 Cal. App. 4th 1850 (Cal. App. 1996) .....................................................36, 37, 38

*Cardwell v. Davis Polk & Wardwell LLP*,
  2020 WL 6274826 (S.D.N.Y. Oct. 24, 2020) .......................................................34

*Chen v. Amazon.com, Inc.*,
  2023 WL 7412219 (E.D.N.Y. Nov. 9, 2023) .........................................................14

*Chimarev v. TD Waterhouse Inv. Servs., Inc.*,
  280 F. Supp. 2d 208 (S.D.N.Y. 2003) .............................................................39, 40

*Clark Cnty. Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001)...................................................................................34, 35

*Cook v. Winfrey*,
    141 F.3d 322 (7th Cir. 1998) ....................................................................7

*Cygnus Opportunity Fund, LLC v. Wash. Prime Grp., LLC*,
    302 A.3d 430 (Del. Ch. 2023)...............................................................25, 26

*Davis-Bell v. Columbia Univ.*,
    851 F. Supp. 2d 650 (S.D.N.Y. 2012)........................................................33

*Dieckman v. Regency GP LP*,
    155 A.3d 358 (Del. 2017)..........................................................................26

*DiPietro v. GATX Corp.*,
    167 N.E.3d 247 (Ill. App. Ct. 2020) .........................................................18

*Dobryakov v. Brickhouse Food LLC*,
    2024 WL 218441 (S.D.N.Y. Jan. 19, 2024) .............................................27

*Doe v. Columbia Univ.*,
    831 F.3d 46 (2d Cir. 2016)........................................................................28

*Duarte v. Stryker Sales Corp.*,
    2016 WL 11743209 (C.D. Cal. May 9, 2016) ...................................39, 40

*Erisman v. Zaitsev*,
    2021 WL 6134034 (Del. Ch. Dec. 29, 2021) ..........................................23

*Figueroa v. City of New York*,
    2022 WL 799551 (S.D.N.Y. Mar. 16, 2022) ...........................................27

*Fincher v. Depository Tr. & Clearing Corp.*,
    604 F.3d 712 (2d Cir. 2010)......................................................................27

*Flaherty v. Dixon*,
    2023 WL 2051861 (S.D.N.Y. Feb. 16, 2023) .........................................17

*Gambale v. Deutsche Bank AG*,
    377 F.3d 133 (2d Cir. 2004)......................................................................21

*Gatto v. Lackawanna Cnty.*,
    2021 WL 4502261 (M.D. Pa. Sept. 30, 2021) ........................................42

*GC Am. Inc. v. Hood*,
    2022 WL 910556 (N.D. Ill. Mar. 29, 2022)...............................................6

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*,
   449 F.3d 377 (2d Cir. 2006)................................................................................40, 41

*Gruntz v. Cont'l Airlines, Inc.*,
   2008 WL 11336169 (C.D. Cal. Apr. 7, 2008) ..........................................................27

*Hagan v. City of New York*,
   39 F. Supp. 3d 481 (S.D.N.Y. 2014).........................................................................31

*HC2, Inc. v. Delaney*,
   510 F. Supp. 3d 86 (S.D.N.Y. 2020).....................................................................6, 15

*Hirsch v. Kairey*,
   2023 WL 5532732 (E.D.N.Y. Aug. 28, 2023).........................................................5, 6

*Hopewell v. Vitullo*,
   701 N.E.2d 99, 104 (Ill. App. Ct. 1998) ..............................................................13, 14

*Isbell v. City of New York*,
   316 F. Supp. 3d 571 (S.D.N.Y. 2018).........................................................................4

*Johnson v. Everyrealm, Inc.*,
   657 F. Supp. 3d 535 (S.D.N.Y. 2023).......................................................................38

*Johnson v. Johnson & Bell, Ltd.*,
   7 N.E.3d 52 (Ill. App. Ct. 2014) .................................................................................6

*Joseph v. Marco Polo Network, Inc.*,
   2010 WL 4513298 (S.D.N.Y. Nov. 10, 2010) ..........................................................34

*Kaye v. Trump*,
   58 A.D.3d 579 (1st Dep't 2009) ................................................................................17

*Kelly v. Albarino*,
   485 F.3d 664 (2d Cir. 2007)........................................................................................6

*Kilborn v. Amiridis*,
   2023 WL 2058061 (N.D. Ill. Feb. 15, 2023) ............................................................19

*Kirkland-Hudson v. Mount Vernon City Sch. Dist.*,
   2023 WL 2691622 (S.D.N.Y. Mar. 29, 2023) ..........................................................35

*Kraiem v. JonesTrading Institutional Servs. LLC*,
   571 F. Supp. 3d 53 (S.D.N.Y. 2021)....................................................................33, 35

*Krock v. Lipsay*,
   97 F.3d 640 (2d Cir. 1996).........................................................................................40

*Lampros v. Banco do Brasil, S.A.*,
  2012 WL 6021091 (S.D.N.Y. Dec. 4, 2012) ........................................................34

*Ludlow v. Nw. Univ.*,
  79 F. Supp. 3d 824 (N.D. Ill. 2015) ...........................................................12, 13

*Lynch Dev. Assocs., Inc. v. Johnson*,
  219 A.D.3d 1328 (2d Dep't 2023) .................................................................16

*Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*,
  1997 WL 525482 (S.D.N.Y. Aug. 22, 1997) ...................................................44

*McGrory v. Applied Signal Tech., Inc.*,
  152 Cal. Rptr. 3d 154 (Cal. App. 2013) ........................................................31

*Mestecky v. N.Y.C. Dep't of Educ.*,
  791 F. App'x 236 (2d Cir. 2019) ..................................................................27

*Metro. Theatre Corp. v. Warner Bros. Pictures*,
  12 F.R.D. 516 (S.D.N.Y. 1952) ...................................................................41

*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*,
  419 F. Supp. 3d 668 (S.D.N.Y. 2019) ...........................................................6

*Milazzo v. Connolly*,
  2017 WL 2466293 (Ill. App. Ct. June 6, 2017) ..........................................13, 19

*Miller v. Fairchild Indus., Inc.*,
  797 F.2d 727 (9th Cir. 1986) ......................................................................35

*Miller v. HCP & Co.*,
  2018 WL 656378 (Del. Ch. Feb. 1, 2018) ..................................................24, 25

*Moy v. Perez*,
  712 F. App'x 38 (2d Cir. 2017) ...................................................................29

*N. Alaska Salmon Co. v. Pillsbury*,
  162 P. 93 (Cal. 1916) ................................................................................37

*Neogenix Oncology, Inc. v. Gordon*,
  2015 WL 5774171 (E.D.N.Y. Sept. 29, 2015) .............................................4, 44

*Nemec v. Shrader*,
  991 A.2d 1120 (Del. 2010) .........................................................................25

*New York v. Egon Zehnder Int'l, Inc.*,
  2022 WL 4072853 (S.D.N.Y. Sept. 2, 2022) ...................................................4

*Nunes v. NBCUniversal Media, LLC*,
   643 F. Supp. 3d 403 (S.D.N.Y. 2022)........................................................................9

*O'Bradovich v. Village of Tuckahoe*,
   325 F. Supp. 2d 413 (S.D.N.Y. 2004)......................................................................17

*Orozco v. Orozco*,
   2023 WL 2895750 (N.D. Ill. Apr. 11, 2023) ............................................................20

*Orrington v. Humana Dental Ins. Co.*,
   2023 WL 2599929 (N.D. Ill. Mar. 22, 2023).............................................................17

*Otto v. Chi. Pub. Media, Inc.*,
   2023 WL 5202903 (Ill. App. Ct. Aug. 11, 2023).......................................................20

*Owens v. Circassia Pharms., Inc.*,
   2020 WL 10897905 (N.D. Tex. Apr. 16, 2020) ........................................................37

*Palin v. New York Times Co.*,
   940 F.3d 804 (2d Cir. 2019)......................................................................................8

*Parisi v. Wipro Ltd.*,
   2016 WL 6905987 (S.D.N.Y. Nov. 23, 2016) ..........................................................41

*Paupaw-Myrie v. Mount Vernon City Sch. Dist.*,
   653 F. Supp. 3d 80 (S.D.N.Y. 2023)..................................................................26, 27

*Pavilon v. Kaferly*,
   561 N.E.2d 1245 (Ill. 1990)................................................................................16, 17

*Pawlowski v. Kitchen Expressions Inc.*,
   2017 WL 10259773 (E.D.N.Y. Dec. 15, 2017) ........................................................36

*People v. Austin*,
   155 N.E.3d 439 (Ill. 2019).......................................................................................20

*Pierre v. Gts Hldgs., Inc.*,
   2015 WL 7736552 (S.D.N.Y. Nov. 30, 2015)..........................................................41

*Portegys v. White*,
   2023 WL 4400001 (Ill. App. Ct. July 7, 2003)...........................................................5

*Price Waterhouse v. Hopkins*,
   490 U.S. 228 (1989).................................................................................................27

*Ramos v. Molina Healthcare, Inc.*,
   603 F. App'x 173 (4th Cir. 2015) .............................................................................37

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*,
  743 F.3d 11 (2d Cir. 2014)..................................................................................29

*Rose v. Hollinger Int'l, Inc.*,
  889 N.E.2d 644 (Ill. App. Ct. 2008) ...................................................................13

*Ross v. Blake*,
  578 U.S. 632 (2016)............................................................................................32

*Rumsey v. Ne. Health, Inc.*,
  89 F. Supp. 3d 316 (N.D.N.Y. 2015).................................................................31

*S.Y. v. Naples Hotel Co.*,
  476 F. Supp. 3d 1251 (M.D. Fla. 2020)............................................................42

*Sanders v. Madison Square Garden, L.P.*,
  2007 WL 2254698 (S.D.N.Y. Aug. 6, 2007).....................................................30

*Satanic Temple, Inc. v. Newsweek Magazine LLC*,
  661 F. Supp. 3d 159 (S.D.N.Y. 2023)...............................................................15

*Schanfield v. Sojitz Corp. of Am.*,
  663 F. Supp. 2d 305 (S.D.N.Y. 2009)...........................................................35, 36

*In re Sears Hldgs. Corp.*,
  628 B.R. 402 (S.D.N.Y. 2021) ...........................................................................16

*Shakima O. v. Westchester Cnty.*,
  2014 WL 521608 (S.D.N.Y. Feb. 10, 2014)......................................................44

*Shamin v. Siemens Indus., Inc.*,
  854 F. Supp. 2d 496 (N.D. Ill. 2012) ............................................................18, 19

*Smith v. Sch. Dist. of Phila.*,
  112 F. Supp. 2d 417 (E.D. Pa. 2000) .................................................................11

*Stepanov v. Dow Jones & Co., Inc.*,
  120 A.D.3d 28 (1st Dep't 2014) .........................................................................15

*Sulieman v. Igbara*,
  599 F. Supp 3d 113 (E.D.N.Y. 2022) ...................................................................3

*Sundar Energy, LLC v. Jackson*,
  305 A.3d 723 (Del. Ch. 2023).............................................................................22

*Tameny v. Atl. Richfield Co.*,
  610 P.2d 1330 (Cal. 1980) ............................................................................39, 40

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
    864 F.3d 236 (2d Cir. 2017)..................................................................9, 10

*Thomas v. Pearl*,
    998 F.2d 447 (7th Cir. 1993) ......................................................................11

*Thomas v. U.S. Foods, Inc.*,
    2012 WL 5634847 (C.D. Cal. Nov. 14, 2012)............................................39

*Thomson v. Odyssey House*,
    2015 WL 5561209 (E.D.N.Y. Sept. 21, 2015) ...........................................33

*Tidwell v. Cnty. of Kern*,
    2017 WL 68146 ...........................................................................................42

*Tipton v. Airport Terminal Servs., Inc.*,
    2019 WL 3035095 (C.D. Cal. Apr. 16, 2019) ............................................39

*Torre v. Charter Commc'ns, Inc.*,
    493 F. Supp. 3d 276 (S.D.N.Y. 2020).................................................33, 34

*Townsend v. Benjamin Enters., Inc.*,
    679 F.3d 41 (2d Cir. 2012)..........................................................................30

*Trahanas v. Nw. Univ.*,
    64 F.4th 842 (7th Cir. 2023) .............................................................. *passim*

*Turley v. ISG Lackawanna, Inc.*,
    774 F.3d 140 (2d Cir. 2014)...........................................................................7

*U.S. Commodity Futures Trading Comm'n v. LaMarco*,
    2023 WL 7283629 (E.D.N.Y. Nov. 3, 2023)................................................4

*United Mag. Co. v. Murdoch Mags. Distrib., Inc.*,
    146 F. Supp. 2d 385 (S.D.N.Y. 2001).........................................................40

*US Ecology, Inc. v. Allstate Power Vac, Inc.*,
    2018 WL 3025418 (Del. Ch. June 18, 2018)..............................................23

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
    901 A.2d 106 (Del. 2006) ...........................................................................23

*Williams v. Stuckly*,
    2023 WL 6213493 (Ill. App. Ct. Sept. 25, 2023) ......................................19

*Yarde v. Good Samaritan Hosp.*,
    360 F. Supp. 2d 552 (S.D.N.Y. 2005).........................................................35

*Zakrzewska v. New Sch.*,
928 N.E.2d 1035 (N.Y. 2010) ................................................................31

**Statutes**

42 U.S.C. §§ 2000e–3(a) ............................................................................30

Cal. Gov't Code § 12940 ..........................................................................32

N.Y. Exec. Law § 296 .............................................................................32

N.Y. Code § 8-107(7) .............................................................................32

N.Y.C. Admin. Code § 8-107 ....................................................................32

**Other Authorities**

Henry Ward, *What I Tell Employees About Negative Press*,
Medium (Oct. 20, 2023), https://bit.ly/48pEXgC ....................................21

Plaintiff/Counterclaim Defendant eShares, Inc. d/b/a Carta, Inc. ("Carta") and Third-Party

Defendant Henry Ward ("Ward") respectfully submit this memorandum of law in support of their

motion to dismiss Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Jerry O. Talton, III's

("Talton") Amended Counterclaim with prejudice for failure to state a claim under Federal Rule

of Civil Procedure 12(b)(6), and in support of their motion to strike under Federal Rule of Civil

Procedure 12(f).

## **INTRODUCTION**

Talton's rambling 78-page, 18-count Amended Counterclaim is a legally deficient attempt

by a vindictive former employee to rewrite history to disclaim any responsibility for his own

outrageous behavior and to instead smear his former employer and its CEO.  In his prolix Amended

Counterclaim, Talton paints himself as a crusader against all forms of supposed wrongdoing at

Carta, and targets Ward as the object of his fury.  At its essence, Talton alleges that he blew the

whistle on various misconduct and discrimination at Carta over the years, and that following his

submission of a letter to Carta's Board of Directors on October 7, 2022, raising concerns about

everything ranging from the treatment of women at Carta to Ward's management style, to

purported corporate malfeasance, he was retaliated against by being put on paid administrative

leave and later terminated for Cause.

In addition to asserting contract claims and a purported claim for wrongful discharge under

California law, as well as eight retaliation claims, Talton alleges that Carta and Ward defamed him

and/or painted him in a false light, including by filing a complaint against him shortly after his

termination, and that they intentionally inflicted emotional distress upon him.  In Talton's telling,

Carta's lawful efforts to recover its own confidential and proprietary information, including

surreptitious recordings made by Talton of attorney-client privileged conversations, as well as to

seek damages for Talton's multiple breaches of his contractual and fiduciary duties is "defamatory" and purported "retaliation."  As set forth below, because Carta was well-within its rights both to terminate Talton for Cause and to seek legal redress for his egregious misconduct, all of Talton's claims should be dismissed as a matter of law.

The Amended Counterclaim purports to assert three broad categories of claims: (1) tort claims sounding in defamation, false light, publication of private facts, and intentional infliction of emotional distress; (2) contract claims relating to Carta's stock plan and Talton's December 2022 termination for Cause; and (3) retaliation claims resulting from Talton's self-styled crusade to protect Carta from itself.  These claims fail for several reasons.  ***First***, most of Talton's tort claims (Counts 10–13 and 15–16) are based on factual allegations in Carta's pleadings, all of which are absolutely privileged.  Moreover, Carta's inclusion of Talton's ***own words*** (highly graphic sexual messages Talton sent and received and Talton's statements to junior Carta employees that he was "hopped up on drugs" and "high" at work) in a pleading is neither defamatory nor "extreme and outrageous," as a matter of law.[1]  ***Second***, Talton's contract claims (Counts 17–18) fail because Carta was entitled to terminate Talton, an at-will employee, for Cause, as is obvious from a six-page list of over a dozen ways Talton committed gross misconduct that was provided to Talton upon termination.  *See* ECF No. 29-5.  ***Third***, Talton's retaliation and wrongful discharge claims (Counts 1–9) fail because Carta took no adverse action against Talton because of his allegedly protected activities, and because Talton cannot state a claim under California law.

Carta also moves to strike several paragraphs (and portions thereof) of the Amended Counterclaim because Talton may not divulge confidential Carta information – including Carta's attorney-client privileged information – in his Amended Counterclaim.  Nor can he use his

---

[1] Count 14 (publication of private facts) should also be dismissed both because Talton fails to identify any "private" facts in Ward's October 2023 blog post, and because any such facts were already disclosed in Carta's public filings.

Amended Counterclaim as a vehicle to improperly air irrelevant, scandalous, and inflammatory allegations about third parties and events about which he has no first-hand knowledge—some of which is privileged and all of which should be stricken.

## BACKGROUND

On December 23, 2022, Carta fired Talton for Cause. Talton's termination was based on his breaches of the fiduciary and contractual duties he owed Carta, including his unauthorized use and disclosure of Carta's confidential and proprietary information, his surreptitious recording of attorney-client privileged conversations with Carta's General Counsel and other Carta executives and sharing of such information with one or more unauthorized third parties; his failure to fully cooperate with, and active obstruction of, Carta's reasonable investigatory and legal preservation requests; and his improper use of the same electronic systems and information security infrastructure that he, as Chief Technology Officer, was charged with protecting. *See* ECF No. 29-5.[2] On December 30, 2022, Carta sued Talton and asserted claims for breach of contract, breach of fiduciary duty, misappropriation of trade secrets under federal and state law, conversion, and faithless servant. ECF No. 54 ¶ 9; ECF No. 1.

In March 2023, Talton moved to dismiss the Complaint, and in May 2023 Carta filed its First Amended Complaint ("FAC"). In June 2023, Talton moved to dismiss the FAC, and that motion was fully briefed on August 16, 2023. On December 26, 2023, Talton served his Counterclaim on Carta, and on January 4, 2024, using his opportunity to amend as of right, served his Amended Counterclaim on Carta and Ward. On January 12, 2024, Talton publicly filed his

---

[2] "In determining the adequacy of [Talton's Amended Counterclaim]," the Court may consider Carta's Termination Letter as it is "incorporated in the [Amended Counterclaim] by reference," and a "document[] upon which the [Amended Counterclaim] relies and which [is] integral to the [Amended Counterclaim]." *Sulieman v. Igbara*, 599 F. Supp 3d 113, 120 (E.D.N.Y. 2022) (cleaned up).

redacted Amended Counterclaim. The parties have fully briefed Carta's proposed redactions to the Amended Counterclaim.

## ARGUMENT

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not "contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "This standard demands 'more than a sheer possibility that a defendant has acted unlawfully.'" *Isbell v. City of New York*, 316 F. Supp. 3d 571, 582 (S.D.N.Y. 2018) (quoting *Ashcroft*, 556 U.S. at 678). And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" at the pleading stage. *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." "Scandalous allegations are those which 'impugn the character' of the movant." *U.S. Commodity Futures Trading Comm'n v. LaMarco*, 2023 WL 7283629, at *3 (E.D.N.Y. Nov. 3, 2023) (cleaned up). Courts also routinely strike attorney-client privileged information an adverse party tries to include in a pleading because there is "no reason why [that] confidential information should remain accessible to the public." *Neogenix Oncology, Inc. v. Gordon*, 2015 WL 5774171, at *12 (E.D.N.Y. Sept. 29, 2015); *see also New York v. Egon Zehnder Int'l, Inc.*, 2022 WL 4072853, at *1 (S.D.N.Y. Sept. 2, 2022) ("a court may grant a motion to strike privileged material to prevent such material from being disclosed.").

To prevail on a motion to strike, the moving party must show that (1) "no evidence in support of the allegations would be admissible"; (2) "the allegations have no bearing on the issues in the case"; and (3) "to permit the allegations to stand would result in prejudice to the movant." *Bryce Corp. v. XL Ins. Am., Inc.*, 2023 WL 9004039, at *7 (S.D.N.Y. Dec. 28, 2023) (cleaned up). A motion to strike will be granted where "the matter asserted clearly has no bearing on the issue in dispute." *Id.* (cleaned up).

Application of these standards mandates dismissal of Talton's claims, and/or in the alternative, justifies striking from his pleading multiple paragraphs and portions thereof containing scandalous, irrelevant, and, in many instances, attorney-client privileged material.

## I.    Talton's Tort Claims Should Be Dismissed

### A.    The Litigation Privilege Bars Talton's Claims Against Carta Based On Carta's Complaints In This Lawsuit

Talton's Amended Counterclaim purports to assert claims for defamation under New York and Illinois law (Counts 10, 11, and 12), IIED under New York and Illinois law (Counts 15 and 16), and false light under Illinois law (Count 13), based on factual allegations contained in Carta's Complaints. Illinois law does not apply here,[3] but even if it did, the law is clear in both New York and Illinois that factual allegations in court pleadings are absolutely privileged and cannot support a claim for defamation, IIED, or false light.[4]    *See Hirsch v. Kairey*, 2023 WL 5532732, at *4

---

[3] As a threshold matter, Talton can only state a claim for defamation under the laws of the state where he suffered harm. *See generally Bd. of Forensic Document Exam'rs, Inc. v. Am. Bar Ass'n*, 287 F. Supp. 3d 726, 732 (N.D. Ill. 2018), *aff'd*, 922 F.3d 827 (7th Cir. 2019) ("Typically in tort actions, the state with the most significant relationship is the place where the injury occurs. For defamation claims, an alleged victim's home state usually has the most significant relationship to the claim, because that is where a person will suffer the most damages arising from reputational harm.") (cleaned up). Talton purports to state a defamation claim under Illinois law, but he does not allege when he moved from New York to Illinois. *See* ECF No. 54 at 62 n.19; *id.* at ¶ 309. Insofar as Talton was not an Illinois citizen at the time of the alleged defamatory statements, he cannot state a claim for defamation under Illinois law.

[4] The litigation privilege is properly considered at the motion to dismiss stage. *See, e.g.*, *Portegys v. White*, 2023 WL 4400001, at *1 (Ill. App. Ct. July 7, 2023) (affirming dismissal of defamation claim based on litigation privilege);

(E.D.N.Y. Aug. 28, 2023) (applying New York law and concluding that "Hirsch's claims for defamation, IIED, and false light all fail for the same reason: The only factual content Hirsch alleges in support of each claim is protected by the 'litigation privilege' — the privilege that attaches to statements made in the course of judicial proceedings.") (cleaned up); *GC Am. Inc. v. Hood*, 2022 WL 910556, at *6 (N.D. Ill. Mar. 29, 2022) (Illinois's litigation privilege bars claims for defamation, IIED, and false light).[5]

The litigation privilege applies to all statements "made before, during, or after litigation" that "bear some relation to the subject in controversy." *Bedin v. Nw. Mem'l Hosp.*, 187 N.E.3d 739, 749 (Ill. App. Ct. 2021) (cleaned up); *accord Kelly v. Albarino*, 485 F.3d 664, 666 (2d Cir. 2007) ("The absolute privilege applicable to the statements of participants in judicial proceedings . . . is the broadest of possible privileges and any matter which, by any possibility, under any circumstances, at any stage of the proceeding may be or may become material or pertinent is protected by an absolute privilege[.]") (cleaned up)). Talton attempts to plead claims for defamation, IIED, and false light based on three allegations *in Carta's Complaints*: (1) "Talton sent and received offensive, discriminatory, misogynistic and harassing messages in violation of Carta's sexual harassment and anti-discrimination policies";[6] (2) Carta "published the Termination

---

HC2, Inc. v. Delaney, 510 F. Supp. 3d 86, 105–06 (S.D.N.Y. 2020) (dismissing IIED claim because statements at issue were protected by litigation privilege).

[5] Under both New York and Illinois law, the litigation privilege applies not only to attorneys but also to the litigants themselves. *See, e.g.*, *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 692 (S.D.N.Y. 2019) ("Under New York law, statements made by parties, attorneys, and witnesses in the course of a judicial or quasi-judicial proceeding are absolutely privileged, notwithstanding the motive with which they are made.") (cleaned up); *Johnson v. Johnson & Bell, Ltd.*, 7 N.E.3d 52, 56 (Ill. App. Ct. 2014) ("A private litigant enjoys the same privilege concerning a proceeding to which he is a party.").

[6] Although Carta amended its Complaint to remove its characterizations of Talton's highly graphic sexting, including that the sexting violated Carta's harassment and anti-discrimination policies, Carta's decision to withdraw those characterizations is *not* an admission of anything. At a minimum, Talton's sending and receiving of highly graphic sexual material on Carta-issued devices unquestionably violated Carta's Handbook, which, among other things, prohibits the use of Carta-issued devices for non-business purposes. *See* ECF No. 29-3 at 27 § F.

Letter which asserted that Talton was 'hopped up on drugs' and 'high' at work"; and (3) Carta "asserted that Talton has refused to return Carta documents."  ECF No. 54 at ¶ 264; *see also id.* at ¶¶ 276, 289, 291, 312, 313, 351, and 357.

The statements at issue do not just bear some relation to the subject of this litigation; each is directly relevant.  **First**, Carta's breach of fiduciary duty claim against Talton arises, in part, from (1) Talton's sending and receiving of sexually explicit messages on Carta devices, and (2) Talton's *own statement* that he was "hopped up on drugs" and "high" at work.  *See* ECF No. 29 at ¶ 75.  **Second**, Talton himself placed the Termination Letter, and his statements quoted therein, squarely at issue in Counts 17 and 18 of his Amended Counterclaim.  *See, e.g.*, ECF No. 54 at ¶ 382; *see also id.* at ¶¶ 8, 13, 114, 115 (quoting and citing the Termination Letter).  **Finally**, Talton's theft of Carta's documents (and refusal to return them despite numerous requests from both in-house and outside counsel) is central to almost every one of Carta's claims against Talton.

Accordingly, to the extent Counts 10, 11, 12, 13, 15, and 16 are based on statements made in Carta's pleadings in this lawsuit, those Counts should be dismissed for failure to state a claim.

**B.      Talton's IIED Claims Duplicate His Defamation Claims And Should Be Dismissed**

Talton's IIED claims (Counts 15 and 16) should be dismissed for another reason: they impermissibly duplicate his defamation claims.  Under New York law, an IIED claim must be dismissed "where the conduct complained of falls well within the ambit of other traditional tort liability."  *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 159 (2d Cir. 2014) (cleaned up).  Similarly, "[a] number of Illinois courts have dismissed claims of intentional infliction of emotional distress based upon defamation, on the ground[s] that the conduct was not extreme and outrageous."  *Cook v. Winfrey*, 141 F.3d 322, 331–32 (7th Cir. 1998) (collecting cases).

Talton's IIED claims mirror his defamation claims. *See* ECF No. 54 at ¶¶ 351, 357. Talton tries to cast his IIED allegations more broadly—he does not cite to the paragraphs of Carta's pleadings like he does in his defamation counts—but the substance is identical. Indeed, Talton himself concedes these IIED claims should be barred when he states that "Carta's outrageous, malicious, and reckless conduct includes, but is not limited to (1) ***making false and defamatory statements*** regarding Talton, his personal life, and his professional life." *Id.* at ¶ 351 (emphasis added). Moreover, Talton seeks damages for the same personal and economic injuries in both his defamation claims and his IIED claims. *See id.* at ¶¶ 273, 286, 307, 352, 360. This duplication of Talton's defamation claims dooms his IIED claims.

Accordingly, Counts 15 and 16 should be dismissed as impermissible attempts to state a claim for defamation by another name.

### C.    Talton's Defamation Claims Fail As A Matter Of Law

Talton's defamation claims under New York law (Count 10) and Illinois law (Count 12) should also be dismissed because he has failed to plead facts to state a claim for relief. To state a claim for defamation under either New York or Illinois law, a plaintiff must allege that the defendant published a false factual assertion about the plaintiff. *See generally Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (setting forth elements of defamation claim under New York law); *Trahanas v. Nw. Univ.*, 64 F.4th 842, 858 (7th Cir. 2023) (setting forth elements of defamation claim under Illinois law). Talton has failed to do so.

### i.    *Talton Fails To State A Claim For Defamation Based On Carta's Allegations In Its Complaints*

Talton has failed to state a claim for defamation based on any allegation contained in Carta's Complaint, FAC, or Second Amended Complaint ("SAC") because each statement is substantially true. Substantial truth is an absolute defense to defamation under New York and

Illinois law and one which this Court may address on a motion to dismiss. *See Andrews v. At World Props., LLC*, 2023 WL 3939464, at *4 (Ill App. June 12, 2023) ("[T]ruth is an absolute defense to defamation, and only the 'substantial truth' is required for this defense. . . . [T]he question is one of law, and the matter may be raised in a motion to dismiss.") (cleaned up); *Nunes v. NBCUniversal Media, LLC*, 643 F. Supp. 3d 403, 413 (S.D.N.Y. 2022) ("Whether a statement is substantially true is an issue of law properly decided on a motion to dismiss, provided that the Court limits its consideration to materials appropriately considered on such a motion.") (cleaned up). A statement is substantially true where "the 'gist' or [the] 'sting' of the allegedly defamatory material is true." *Andrews*, 2023 WL 3939464, at *4; *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 241-42 (2d Cir. 2017) ("[A] statement is substantially true and not actionable if the published statement could have produced no worse an effect on the mind of a reader than the truth pertinent to the allegation.") (cleaned up). "When a court interprets a publication in an action for defamation, 'the entire publication, as well as the circumstances of its issuance, must be considered in terms of its effect upon the ordinary reader.'" *Tannerite Sports, LLC*, 864 F.3d at 243 (cleaned up); *see also Trahanas*, 64 F.4th at 859.

Talton attempts to state a claim for defamation based on allegations made in the context of Carta's Complaint, FAC, and SAC: (1) "Talton sent and received offensive, discriminatory, misogynistic and harassing messages in violation of Carta's sexual harassment and anti-discrimination policies"; (2) Carta "published the Termination Letter which asserted that Talton was 'hopped up on drugs' and 'high' at work"; and (3) Carta "asserted that Talton has refused to return Carta documents." ECF No. 54 at ¶ 264; *see also id.* at ¶¶ 276, 289, 291, 312, 313, 351, and 357. All three statements are substantially true.

*First*, Talton does not dispute that he sent and received messages that include the following terms and phrases: "jungle n*****s" and "gross lesbians," "butterfaces," "rape," "pathetically obsessed pussy slave," and "women don't experience pain the way humans do." [7]  ECF No. 1 at ¶ 45.  Talton only challenges Carta's characterization of those messages in its Complaint as "offensive, discriminatory, misogynistic and harassing" and as violations of "Carta's sexual harassment and anti-discrimination policies[.]"  ECF No. 54 at ¶ 289.  The "sting" of Carta's characterization is a tempered assessment of the messages Talton sent and received.  *Andrews*, 2023 WL 3939464, at *4.  The characterization could have "produced no worse an effect on the mind of a reader" than the messages themselves.  *Tannerite Sports*, 864 F.3d at 241–42.  Talton's single conclusory statement that "Carta's statements are demonstrably false" does not change this result.  ECF No. 54 at ¶ 265.  A plaintiff "must identify ***how*** the defendant's statement was false to survive a motion to dismiss."  *Tannerite Sports*, 864 F.3d at 245 (emphasis added).  Talton cannot meet this burden (indeed, he does not even attempt to do so); accordingly, his defamation claim related to Carta's characterization of the messages he sent and received must be dismissed.

*Second*, the Termination Letter is substantially true and not defamatory because it quotes Talton's own words.  In Carta's Termination Letter, among six paragraphs describing Talton's misconduct and inappropriate behavior, Carta explained that:

> You repeatedly told junior employees that you were "hopped up on drugs" and "high" at work, while overseeing the Company's Information Security Officer and having access to Carta security systems, including those systems that secure billions of dollars of customer funds and Carta's customer information.  As the individual entrusted with the information security of $2.5 trillion in assets, you violated

---

[7] Talton has admitted that he sent messages to "sexual and romantic partners" that "were captured by Carta's systems." ECF No. 54 at ¶ 118.  And Talton admitted that Ward "published . . . portions of private, personal messages Talton sent to and received from consenting sexual and romantic partners."  *Id.* at ¶ 334.  Talton has had every opportunity to deny that Carta's quotation of the messages he sent and received is accurate.  His failure to do so undermines any argument that the messages themselves are defamatory.

> Carta's policies by showing up at work "high" and further compound[ing] th[at] violation by bragging about it.

ECF No. 1-4 at 4. Talton has failed to identify how this statement – a direct quotation of Talton's own words – is demonstrably false. At most, Talton alleges that he was "prescribed painkillers for several weeks of postoperative recovery." ECF No. 54 at ¶ 13. But Talton does not deny that he made the statements included in the Termination Letter, and nowhere does Talton allege any non-conclusory facts to show that the statements are false. *Id.* at ¶ 265. Talton's failure to identify ***how*** the statements were false means he has failed adequately to plead a defamation claim, and the claim should be dismissed.

Further, Carta's quotation of Talton's own words in his Termination Letter cannot be defamatory. "A party's accurate quoting of another's statement cannot defame the speaker's reputation since the speaker is himself responsible for whatever harm the words might cause." *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993); *see also Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 429 (E.D. Pa. 2000) ("Generally, a plaintiff can not be defamed by the use of his own words."). Talton decided to tell junior employees that he was "hopped up on drugs" and "high" at work. Any harm to Talton's reputation because Carta included those words in Talton's Termination Letter was caused by Talton himself and not by Carta's decision to include them as a basis for his termination. Accordingly, Carta's quotation of Talton's words in the Termination Letter does not give rise to a claim for defamation.

***Finally***, Talton complains that Carta "asserted that Talton has refused to return Carta documents." ECF No. 54 at ¶ 264. Yet again, Talton fails to explain ***how*** that statement is false. To the contrary, he admits that he "acquired information in the course of his work" that he did not return. *Id.* at ¶¶ 11, 12 (alleging that, after Carta sued him, "the whole landscape concerning these materials changed and had to be re-examined in light of the litigation into which Carta had forced

11

Talton.  The Carta documents in his possession had to be treated as subject to normal discovery rules.").  Talton also admits that Lindauer (Carta's General Counsel) demanded on November 14, 2022, by email that he not disclose any Carta communications and return any confidential and proprietary information to Carta, and that in subsequent exchanges with Lindauer through his counsel, he disputed Carta's position (*id.* ¶¶ 111, 112); what is clear, however, is that he did not return any documents or recordings to Carta despite multiple demands that he do so.  Talton's assertion that he purportedly offered to return self-selected Carta-related documents and recordings to an external law firm representing Carta's Board of Directors in a Board-directed independent investigation is beside the point; Talton repeatedly refused Carta's demands for the immediate return of its documents and materials, and to this day has not returned them.  Carta's assertion in its Complaint that Talton refused to return documents is "substantially true" and Talton has failed to state a defamation claim based on that allegation.

For these reasons, Talton has failed adequately to plead the falsity of the three statements in Carta's Complaint, FAC, or SAC.  Accordingly, Talton has failed to state a claim for defamation in Counts 10 and 12 and those claims should be dismissed.

### D.    Talton Fails To State A Claim For Defamation Based On Ward's Blog Post

In Count 12, Talton also fails to state a claim for defamation based on the opinions Ward expressed in a blog post.  Specifically, Talton alleges that, in an October 20, 2023 blog post, Ward "falsely portrayed Talton as a workplace sexual harasser" and a "creator of a hostile work environment," and "falsely and maliciously asserted that Talton was inappropriate with women and abused his position as CTO."  ECF No. 54 ¶¶ at 132, 289, 291, 292.  However, nowhere does Talton allege with any specificity which statements in Ward's blog post he contends are defamatory.  Talton's failure to identify the defamatory statements at issue is fatal to his claim. *See Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 836 (N.D. Ill. 2015) (the "substance [of a challenged

statement] must be pleaded with sufficient precision and particularity so as to permit initial judicial review of its defamatory content.") (cleaned up).

Moreover, the characterizations on which Talton relies are opinions that cannot support a claim for defamation. *See Rose v. Hollinger Int'l, Inc.*, 889 N.E.2d 644, 647 (Ill. App. Ct. 2008) ("[S]tatements that are defamatory *per se* may enjoy constitutional protection as expressions of opinion.") (cleaned up). "The vaguer and more generalized the opinion, the more likely the opinion is non-actionable as a matter of law." *Trahanas*, 64 F.4th at 859 (cleaned up). For example, in *Hopewell v. Vitullo*, an Illinois appellate court concluded that an employer's statement that an employee was "fired because of incompetence" was a "nonactionable opinion" because "its broad scope renders it lacking the necessary detail for it to have a precise and readily understood meaning." 701 N.E.2d 99, 104 (Ill. App. Ct. 1998).

The court in *Hopewell* also concluded that "the veracity of the statement cannot be verified" because "[a]lthough the public might infer undisclosed and unassumed facts that support [the] opinion, the statement is so ambiguous and indefinite that any inferable fact flows from numerous possible facts that might conceivably support the conclusion that [the plaintiff] was 'incompetent.'" *Id.* Accordingly, the statement was non-actionable because it was "too broad, conclusory, and subjective to be objectively verifiable." *Id.*; *see also Trahanas*, 64 F.4th at 859 ("Because Schwulst's letter does not contain a verifiable factual statement about Trahanas, her defamation claim fails."); *Milazzo v. Connolly*, 2017 WL 2466293, at *5 (Ill. App. Ct. June 6, 2017) (affirming dismissal of defamation claims because defendants' statements that plaintiff "lied, rigged elections, caused lawsuits, incurred unnecessary debts, and violated the law" were "too broad and vague" and "lack[ed] any factual grounds to permit objective verification.").

The same is true here. Ward's opinions in his blog post are "too broad, conclusory, and subjective" to support a claim for defamation. *Hopewell*, 701 N.E.2d at 104. Absent a precise, verifiable statement, Talton has not alleged an actionable defamation claim under Illinois law, and his defamation claim should be dismissed.

### E.    Talton's Implied Defamation Claim Fails As A Matter Of Law

In Count 11, Talton asserts an implied defamation claim under New York law that should also be dismissed. "New York law recognizes claims for defamation by implication, which involves false suggestions, impressions and implications arising from otherwise truthful statements." *Chen v. Amazon.com, Inc.*, 2023 WL 7412219, at *5 (E.D.N.Y. Nov. 9, 2023) (cleaned up). "However, to state such a claim, the plaintiff must make a rigorous showing that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference." *Id.* (cleaned up). Talton fails to make the requisite "rigorous" showing.

Talton's implied defamation claim rests entirely on Carta's inclusion of the Termination Letter as an exhibit to its Complaint and recycles his defamation claim regarding Talton's own statements that he was "hopped up on drugs" and "high" at work. ECF No. 54 at ¶ 276. According to Talton, "Carta intended to affirmatively suggest or imply that Talton used drugs during the course of his employment at Carta and/or that Talton was unable to fulfill his professional obligations and responsibilities at Carta because he was using drugs," and that "Carta endorsed the implication that Talton used drugs during the course of his employment at Carta and/or that Talton was unable to fulfill his professional obligations and responsibilities at Carta because he was using drugs." *Id.* at ¶¶ 278, 279. Talton also alleges, in a conclusory manner, that the statement "is demonstrably false." *Id.* at ¶ 280.

"Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance." *Stepanov v. Dow Jones & Co., Inc.*, 120 A.D.3d 28, 37 (1st Dep't 2014) (cleaned up).  The test the court must apply is "an objective one that asks whether the plain language of the communication itself suggests that an inference was intended or endorsed." *Id.* "Generally, a claim for defamation by implication must be based on a misleading omission or false suggestion." *Satanic Temple, Inc. v. Newsweek Magazine LLC*, 661 F. Supp. 3d 159, 170 (S.D.N.Y. 2023) (cleaned up—collecting cases).

Talton has failed to allege any non-conclusory facts supporting an objective conclusion that Carta intended or endorsed a defamatory inference.  When read in context, the language of the Termination Letter as a whole (or, indeed, of Carta's Complaint as a whole) does not impart a defamatory inference and does not suggest Carta intended or endorsed that inference.  Instead, the Termination Letter (and Carta's Complaint) catalogues Talton's misconduct underlying the decision to terminate him for Cause.  And unlike a situation where a party allegedly makes a misleading omission or false suggestion, here Carta included the entire Termination Letter as an exhibit to its Complaint.  Anyone can read the entire letter, including Talton's own statements about being "hopped up on drugs" and "high" at work and understand the full context in which those assertions were made.

Without any factual allegations, let alone a rigorous showing, that Talton's Termination Letter (or Carta's Complaint) can reasonably be read both to impart a defamatory inference and to affirmatively suggest that Carta intended or endorsed such a defamatory inference, Talton has failed to state a claim for defamation by implication, and Count 11 should be dismissed.

### F.    Talton Fails To State An IIED Claim Under New York Or Illinois Law

Talton fails to state a claim for IIED under either New York or Illinois law (Counts 15 and 16, respectively) because the alleged conduct is neither extreme nor outrageous, essential elements of the claim.  See *Lynch Dev. Assocs., Inc. v. Johnson*, 219 A.D.3d 1328, 1330 (2d Dep't 2023) (setting forth IIED elements under New York law); *Trahanas*, 64 F.4th at 859 (setting forth IIED elements under Illinois law).  The standard for extreme and outrageous conduct is extremely high. *See Delaney*, 510 F. Supp. 3d at 104 ("Intentional infliction of emotional distress is a 'highly disfavored tort under New York law.'") (cleaned up); *In re Sears Hldgs. Corp.*, 628 B.R. 402, 410 (S.D.N.Y. 2021), *aff'd*, 2023 WL 3938982 (2d Cir. 2023) ("New York courts have been extremely reluctant to find extreme and outrageous conduct.") (collecting cases); *Lynch Dev. Assocs.*, 219 A.D.3d at 1330–31 ("Liability will be imposed only when the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.") (cleaned up); *Trahanas*, 64 F.4th at 859 ("Illinois sets a 'high bar' for intentional infliction of emotional distress claims.") (cleaned up).  Talton's allegations fail to satisfy this exacting standard.

### G.    Talton Fails To State An IIED Claim Based On Carta's Allegations In Its Complaints

Filing a meritorious lawsuit[8] is a far cry from the allegations that support a showing of extreme and outrageous conduct.  *See, e.g., Atherton v. 21 E. 92nd St. Corp.*, 149 A.D.2d 354 (1st Dep't 1989) (sustaining an IIED claim where plaintiff's landlord allowed pipes to freeze and burst and ceiling to collapse, causing plaintiff to live without heat in the winter; soot to cover the interior of apartment; and carbon monoxide fumes to injure plaintiff and her newborn child); *Pavilon v.*

---

[8] Talton did not move to dismiss Carta's breach of contract or breach of fiduciary duty claims.  *See* ECF Nos. 23, 24. These claims include many of the statements about which Talton complains.

*Kaferly*, 561 N.E.2d 1245, 1251–52 (Ill. 1990) (finding extreme and outrageous conduct where employer offered plaintiff money for sexual favors, fired her after she refused, and subsequently threatened to rape and kill her).

Even filing meritless complaints is not sufficient to state a claim for IIED. *See, e.g.*, *O'Bradovich v. Village of Tuckahoe*, 325 F. Supp. 2d 413, 435 (S.D.N.Y. 2004) (explaining that "the mere commencement of a civil action, ***even if alleged to be for the purposes of harassment*** or intimidation, is insufficient to support a claim of IIED.") (cleaned up—emphasis added); *Orrington v. Humana Dental Ins. Co.*, 2023 WL 2599929, at *9 (N.D. Ill. Mar. 22, 2023) ("Defendants' filing of a baseless complaint . . . would not, without more, be sufficiently extreme and outrageous conduct to state an IIED claim under Illinois law.") (cleaned up).  For example, a New York appellate court dismissed an IIED claim where the defendants allegedly "made rude remarks to and about [the plaintiff], commenced two baseless lawsuits and filed a criminal complaint against her, and frightened her and her daughter by attempting to instigate her arrest." *Kaye v. Trump*, 58 A.D.3d 579, 579 (1st Dep't 2009).  Although the court did not condone the conduct, it concluded that it was "not so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (cleaned up).  Furthermore, a recent Southern District of New York opinion surveyed New York IIED claims and noted that "[t]he New York Court of Appeals observed that, 'of the intentional infliction of emotional distress claims considered by this Court, *every one* has failed because the alleged conduct was not sufficiently outrageous.'" *Flaherty v. Dixon*, 2023 WL 2051861, at *7 (S.D.N.Y. Feb. 16, 2023) (cleaned up).

Notably, "[l]iability for emotional distress is even more constrained in the employment context." *Trahanas*, 64 F.4th at 860 (cleaned up); *see also Ahmed v. Gateway Grp. One*, 2012 WL 2061601, at *3 (E.D.N.Y. June 7, 2012) ("[I]n the rare instances where the New York courts have found the complaint sufficient to state a claim for intentional infliction of emotional distress in the employment context, the claims have been accompanied by allegations of sex discrimination, and more significantly, battery") (cleaned up). Talton makes no such allegations. And Talton cannot state an IIED claim based on "[t]he everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations" because, if he could, then "nearly every employee would have a cause of action" for IIED. *Trahanas*, 64 F.4th at 860 (cleaned up); *see also DiPietro v. GATX Corp.*, 167 N.E.3d 247, 260 (Ill. App. Ct. 2020) (explaining that "because employers must often take actions in the course of business that cause emotional distress, liability for a claim of intentional infliction of emotional distress in the employment context will only be found where the conduct is truly egregious.").

Because Talton has fallen well short of the high bar required for pleading outrageous conduct, Counts 15 and 16 should be dismissed.

### H.    Talton Fails To State An IIED Claim Based On Ward's Blog Post

Talton has also failed to state an IIED claim based on Ward's blog post. Even if the post was "offensive" for including recitations of Ward's opinions about Talton and repeating factual allegations in Carta's pleadings, mere offense is insufficient. In fact, "[i]n those cases where courts have found outrageous behavior, it is because defendants threatened to exercise their power to coerce plaintiffs into doing something they would not otherwise do." *Shamin v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 512 (N.D. Ill. 2012) (cleaned up). Talton does not allege that Ward threatened or coerced him into action or inaction. And even verbal abuse and insults are "not transformed into extreme and outrageous conduct simply by virtue of an employer-employee

relationship." *Id.* at 512–13 (cleaned up).  Ward's Medium post is precisely the "type of conduct [that] is not actionable." *Id.* at 513 (collecting cases where plaintiff was subjected to allegedly false accusations, threatened, and where defendants made public statements regarding plaintiffs); *see also Milazzo*, 2017 WL 2466293, at *7 (affirming dismissal of IIED claim where, although "defendants' negative rants [in a blog post] were certainly offensive, rude, annoying and, we assume, unwarranted, the nature of the criticisms against [plaintiff] was a far cry from being so unendurable to a reasonable person and so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.") (cleaned up).  Accordingly, Count 16 should be dismissed in its entirety for failure to state a claim.

## I.    Talton Fails To State A False Light Claim

"A claim for false light requires a plaintiff to plead and prove that (1) the plaintiff was placed in a false light before the public as a result of the defendants' actions; (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and (3) the defendants acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for their truth or falsity." *Williams v. Stuckly*, 2023 WL 6213493, at *6 (Ill. App. Ct. Sept. 25, 2023).  Talton fails to state a claim for three independent reasons.

***First***, Talton alleges no facts, that, if taken as true, would support a finding of actual malice. *See* ECF No. 54 at ¶¶ 323, 327, 328.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also Kilborn v. Amiridis*, 2023 WL 2058061, at *11 (N.D. Ill. Feb. 15, 2023) (cleaned up) (explaining that "bare conclusory claim of malice, unaccompanied by allegations from which the required subjective element of malice might be inferred, is insufficient to survive a motion to dismiss.").  Read generously, Talton merely states his preferred

conclusion – that Carta and Ward acted with actual malice – but fails to allege any facts to support that conclusion.

**Second**, Illinois law is clear that "where the plaintiff has failed to state a cause of action for defamation *per se*, the false light count must fail as well." *Otto v. Chi. Pub. Media, Inc.*, 2023 WL 5202903, at *4 (Ill. App. Ct. Aug. 11, 2023). Here, Talton's false light claim repeats his complaints about Carta's pleadings in this litigation and Ward's Medium post. *See* ECF No. 54 at ¶¶ 312–17. This is not enough. *See Orozco v. Orozco*, 2023 WL 2895750, at *4 (N.D. Ill. Apr. 11, 2023) ("The false light allegations are based on the same conduct as the defamation claim . . . . Because these allegations mirror those underlying the unsuccessful defamation claim, Joseph hasn't alleged that Daniel placed him in a false light, which means that this claim fails too.").

**Third**, the statements at issue are either substantially true or matters of opinion. As discussed above, *see supra* § I.C.i, the substantial truth of the statements vitiates Talton's false light claim. Indeed, it is hard to understand how repeating Talton's own statements would ever be actionable as a false light claim. Accordingly, Talton has failed to state a claim for false light under Illinois law, and Count 13 should be dismissed.

## J.    Talton Fails To State A Publication Of Private Facts Claim

Talton also fails to state a claim for publication of private facts, which requires Talton to allege that (1) Carta and Ward gave publicity (2) to Talton's "private and not public life [] and that the matter made public was highly offensive" and (3) there was no legitimate public concern in the information disclosed. *People v. Austin*, 155 N.E.3d 439, 460 (Ill. 2019). Talton's publication of private facts claim rests solely on Ward's October 2023 blog post.

To start, Talton does not identify any specific private fact that Ward allegedly published in his blog post. Instead, Talton alleges that Ward published "portions of private, personal messages Talton sent to and received from consenting sexual and romantic partners from his personal iCloud

account[.]"  ECF No. 54 at ¶ 334.  Not only does he fail to identify with specificity any purported publication in Ward's blog post, but a careful review of the blog post demonstrates that no such publication has occurred.  *See* Henry Ward, *What I Tell Employees About Negative Press*, MEDIUM (Oct. 20, 2023), https://bit.ly/48pEXgC.  Because the blog post does not contain "portions of private, personal messages" as Talton pled in his Amended Counterclaim, or indeed any messages at all, Talton has failed to identify a "private fact" that Ward purportedly published.

More fundamentally, the "private facts" at issue were first included in Carta's Complaint, filed on December 30, 2022, and included in Carta's FAC and SAC.  These "private facts" regarding Talton's sending and receiving of highly graphic sexual messages were part of the public record in federal court filings for almost ten months by the time Ward posted his blog post in October 2023.  The public nature of these purported "private facts" fatally undermines Talton's claim, because under Illinois law "[t]here is no liability for disclosure of facts that are a matter of public record, and there is no liability for giving further publicity to what the plaintiff himself leaves open to the public eye."  *Ameristar Casino E. Chi., LLC v. UNITE HERE Loc. 1*, 2016 WL 7339199, at *6 (N.D. Ill. Dec. 19, 2016) (cleaned up).  As Talton himself noted in opposing Carta's redactions, "once the 'genie is out of the bottle,' the Court 'does not have the means to put the genie back.'"  ECF No. 68 at 2 (quoting *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004)).  Talton has never sought to seal Carta's pleadings, and as Talton explains in his Amended Counterclaim, "national and industry-wide publications such as TechCrunch, Business Insider and Fortune" republished Carta's allegations.  ECF No. 54 at ¶ 120.  Undoubtedly, by October 2023, when Ward published his blog post, the contents of an unsealed federal court filing were not "private facts" any longer.

Because Talton failed to allege that Ward's blog post included private facts about Talton, he has failed to state a claim for publication of private facts and Count 14 should be dismissed.

## II.    Talton's Contract Claims Should Be Dismissed

### A.    Talton Fails To State A Claim For Breach Of Contract

Talton, an at-will employee, desperately tries to transform a wrongful discharge claim (which New York law does not recognize) into a breach of contract claim. Because he cannot plead that Carta breached any contractual obligation it owed him, Count 17 should be dismissed for failure to state a claim.

Under Delaware law, "[t]he elements of a claim for breach of contract are (i) a contractual obligation, (ii) a breach of that obligation by the defendant, and (iii) a causally related injury that warrants a remedy, such as damages or in an appropriate case, specific performance." *Sundar Energy, LLC v. Jackson*, 305 A.3d 723, 746 (Del. Ch. 2023) (cleaned up). Talton identifies Carta's Amended and Restated Stock Plan (the "Stock Plan") as the contract at issue. *See* ECF No. 54 at ¶ 365. The Stock Plan is attached to the SAC as Exhibit F. *See* ECF No. 29-6. Carta's Board of Directors administers the Stock Plan. *Id.* at 1, § 2(a). The Stock Plan grants Carta's Board 11 enumerated powers, including the power "[t]o construe and interpret the Plan and Stock Awards granted under it," and "[t]o settle all controversies regarding the Plan and Stock Awards granted under it." *Id.* at 1–2, § 2(b)(ii), (iii).

Failing to identify any provision of the Stock Plan at issue,[9] Talton alleges in a conclusory manner that "[p]ursuant to the express and unambiguous terms of the Stock Plan, Carta and its Board had an obligation to act in good faith in making all determinations, interpretations, and constructions of the terms of the Stock Plan," and that "Carta materially breached the terms of the

---

[9] Talton appears to identify Section 2(b) in passing. *See* ECF No. 54 at ¶ 37. Section 2(b) discusses the powers Carta's Board possesses to oversee and interpret the Stock Plan. *See* ECF No. 29-6 at 1–2, § 2(b).

Stock Plan by unreasonably, unjustly, unfairly and in bad faith, terminating Talton for 'cause,' as defined by the Stock Plan and the 2021 Equity Plan, in retaliation for Talton's protected activities . . . ." ECF No. 54 at ¶¶ 367, 368.[10]  Talton also contends that "[n]one of the grounds identified in Carta's termination letter to Talton rose to gross misconduct, as Carta's rationale is purely pretext for retaliation," and that "Carta's justifications for Talton's termination are purely speculative and unsupported by documentary or other evidence." *Id.* at ¶¶ 369, 370.

Where, as here, a plaintiff fails to "identify an[] express contractual obligation that was breached[,]" he fails to state a breach of contract claim under Delaware law. *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 116 (Del. 2006); *see also Erisman v. Zaitsev*, 2021 WL 6134034, at *11 (Del. Ch. Dec. 29, 2021) (given "Plaintiffs' failure to identify in their pleading any provision of the LLC Agreement that Defendants allegedly breached, Defendants' argument that Plaintiffs have failed to well plead breach is persuasive."); *id.* at *8 n.84 (same); *see also US Ecology, Inc. v. Allstate Power Vac, Inc.*, 2018 WL 3025418, at *7 (Del. Ch. June 18, 2018), *aff'd* 202 A.3d 510 (Del. 2019) (dismissing breach of contract claim where Complaint "fail[ed] to identify any provision in the Purchase Agreement obligating Holdings to reimburse EQ Industrial for the Non-Covered Payments[.]").  Accordingly, the Court should dismiss Count 17.

Moreover, Count 17 is not really a contract claim.  Stripped of its contractual veneer, Count 17 is Talton's impermissible attempt to challenge Carta's for Cause termination.  The Stock Plan is clear that if a Stock Plan Participant's "Continuous Service is terminated for Cause, the Option or SAR ***will terminate immediately upon such Participant's termination of Continuous Service***, and the Participant will be prohibited from exercising his or her Option or SAR from and after the date of such termination of Continuous Service."  ECF No. 29-6 at 8, § 5(k) (emphasis added).

---

[10] The 2021 Equity Incentive Plan is attached to the SAC as Exhibit G.  *See* ECF No. 29-7.

Therefore, when Carta terminated Talton for Cause on December 22, 2022, the Stock Plan automatically prohibited Talton from exercising his Option or SAR.  Accordingly, the Stock Plan operated precisely as intended.

All that remains is Talton's gripe about Carta's decision to terminate him for Cause, a decision that Carta may make in its sole discretion.  *See id.* at 16–17, § 13(d).  At most, Talton alleges his desired conclusion – that Carta terminated him for Cause in retaliation for his protected activities – and that none of the 15 grounds in the Termination Letter "rose to gross misconduct." ECF No. 54 at ¶¶ 368–69.  But Talton does not allege any nonconclusory facts about Carta's decision to terminate him for Cause, why the 15 grounds in the Termination Letter are not gross misconduct, and how the decision does not fall within the broad scope of Carta's discretion to terminate him for Cause.  And even if he had, nothing about the decision implicated a breach of the Stock Plan.  Accordingly, Talton has failed to state a claim for breach of the Stock Plan and Count 17 should be dismissed.

### B.    Talton Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing

Finally, Talton fails to allege that Carta breached any implied covenant of good faith and fair dealing.  Delaware law is clear that:

> the implied covenant does not establish a free-floating requirement that a party act in some morally commendable sense.  Instead, good faith in the implied covenant context entails faithfulness to the scope, purpose, and terms of the parties' contract. Similarly, fair dealing here does not imply equitable behavior.  The term fair is something of a misnomer here; it simply means actions consonant with the terms of the parties' agreement and its purpose.  Put differently, any implied obligation must be consistent with the terms of the agreement as a whole.

*Miller v. HCP & Co.*, 2018 WL 656378, at *9 (Del. Ch. Feb. 1, 2018), *aff'd*, 194 A.3d 908 (Del. 2018) (cleaned up).

Talton's claim for breach of the implied covenant of good faith and fair dealing runs afoul of these principles: he cannot use the claim as a way to bootstrap an amorphous "free-floating requirement" that Carta "act in some morally commendable sense." *Id.* Indeed, he alleges that "[t]he covenant of good faith and fair dealing presumes that when parties enter a contract, they do not expect to be treated arbitrarily [and] unreasonably." ECF No. 54 at ¶ 378. Talton further alleges that he had a "reasonable expectation" that Carta "would act in good faith" and "would not act in an arbitrary or unreasonable manner" in "fulfilling its obligations under the Stock Plan" and in "determining whether an employee is terminated for 'cause.'" *Id.* at ¶¶ 379–81. Underscoring the impropriety of his implied covenant claim, Talton alleges that "Carta's conduct, including but not limited to, Carta's arbitrary and unreasonable termination of Talton for 'cause' constitutes a breach of the implied covenant of good faith and fair dealing, which resulted in damages to Talton." *Id.* at ¶ 382.

This is not a claim for breach of the implied covenant of good faith and fair dealing; instead, this is an attempt to assert a breach of contract claim, which Talton cannot bring for the reasons discussed above. Talton fundamentally argues that Carta breached the Stock Plan by acting in bad faith when it terminated him for Cause. But that argument is really a wrongful discharge argument, not a breach of contract claim.

Regardless, the implied covenant of good faith and fair dealing has no application here. "The implied covenant is 'not an equitable remedy for rebalancing economic interests after events that could have been anticipated, but were not, that later adversely affected one party to a contract.'" *Cygnus Opportunity Fund, LLC v. Wash. Prime Grp., LLC*, 302 A.3d 430, 457 (Del. Ch. 2023) (quoting *Nemec v. Shrader*, 991 A.2d, 1120 1128 (Del. 2010)). Thus, courts may not use an implied covenant to re-write the parties' agreement and should avoid implying a contractual

obligation "when the contract could easily have been drafted to expressly provide for it." *Id.* (cleaned up); *see also Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017) ("The implied covenant is inherent in all contracts and is used to infer contract terms to handle developments or contract[] gaps that the asserting party pleads neither party anticipated.") (cleaned up).

Talton has not asserted that there is a contractual term needed to handle developments or gaps in the Stock Plan that neither Carta nor Talton anticipated. Nor could he. The Stock Plan provides that "[t]he determination that a termination of the Participant's Continuous Service is either for Cause or without Cause will be made by the Company, in its sole discretion." ECF No. 29-6 at 16–17, § 13(d). Read most generously to Talton, this provision demonstrates that Carta, in its sole discretion, may determine whether Talton's termination was for Cause. There is simply no gap to fill in the Stock Plan. Accordingly, Talton has failed to state a claim for breach of the implied covenant of good faith and fair dealing and Count 18 should be dismissed.

## III.  Talton's Retaliation Claims Should Be Dismissed

Talton's claims for retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") (Counts 1 and 2), the California Fair Employment and Housing Act (the "FEHA") (Counts 3 and 4),[11] the New York State Human Rights Law (the "NYSHRL") (Counts 6 and 7), and the New York City Human Rights Law (the "NYCHRL") (Counts 8 and 9) should all be dismissed.

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: (1) "[he] was engaged in activity protected under anti-discrimination statutes;" (2) "Defendants were aware of Plaintiff's participation in the protected activity;" (3) "Defendants took adverse action against Plaintiff;" and (4) "there is a causal connection between Plaintiff's protected activity and the adverse action taken by Defendants." *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F.

---

[11] For the reasons below, Talton cannot state a claim for retaliation under both California law and New York law; Talton's California claims are subject to dismissal for that independent reason.

Supp. 3d 80, 101 (S.D.N.Y. 2023) (citing *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010)).  "Retaliation claims under Title VII . . . require a showing of but-for causation.  A plaintiff may establish the causal connection indirectly by showing that the protected activity was closely followed by the retaliation, or directly by showing evidence of retaliatory animus."  *Id.* at 101–02 (cleaned up).[12]

The NYSHRL, NYCHRL, and FEHA's pleading standards mirror that of Title VII. *Dobryakov v. Brickhouse Food LLC*, 2024 WL 218441, at *4 (S.D.N.Y. Jan. 19, 2024) (applying Title VII pleading standard to NYSHRL retaliation claim); *see also Gruntz v. Cont'l Airlines, Inc.*, 2008 WL 11336169, at *3 (C.D. Cal. Apr. 7, 2008) ("Lawsuits claiming retaliatory employment termination in violation of CFEHA are analogous to federal 'title VII' claims . . . , and are evaluated under federal law interpreting Title VII cases.") (cleaned up).  Although the standard for pleading retaliation under the NYCHRL may be more lenient than under Title VII, courts frequently dismiss NYCHRL retaliation claims for the same reasons they dismiss NYSHRL and Title VII retaliation claims.  *See Mestecky v. N.Y.C. Dep't of Educ.*, 791 F. App'x 236, 239 (2d Cir. 2019) ("NYCHRL's retaliation provision is broader than Title VII's . . . .  Nevertheless, we agree with the district court that [plaintiff's] NYCHRL claim fails for the same reasons as her Title VII and NYSHRL retaliation claims."); *Figueroa v. City of New York*, 2022 WL 799551, at *3 (S.D.N.Y. Mar. 16, 2022) (same).

Talton alleges that: (1) he engaged in protected activity by (a) testifying, assisting, and/or participating in an investigation, proceeding, or hearing under Title VII, the FEHA, the NYSHRL, and the NYCHRL, (Counts 1, 4, 7, and 9), and (b) opposing and reporting alleged discrimination

---

[12] Here, Talton does not plead direct evidence of retaliation and he must, therefore, plead sufficient facts to support a reasonable inference of retaliation through temporal proximity.  *See generally Price Waterhouse v. Hopkins*, 490 U.S. 228, 257 (1989) (O'Connor, J., concurring).

on the basis of sex (Counts 2, 3, 6, and 8); (2) Carta was aware of his protected activities; (3) Carta took adverse action against him by (a) "terminating [his] employment at Carta," (b) "designating [his] termination as 'for cause' to purposefully deprive him of vested and unvested stock options and RSUs, as well as COBRA medical coverage," (c) "internally misrepresenting the circumstances surrounding [his] termination[,]" (d) "initiating the instant lawsuit against [him]," and (e) "publicly making false and defamatory statements about [him]"; and (4) there is a causal connection between Talton's protected activities and these adverse actions. ECF No. 54 at ¶ 165. All eight claims should be dismissed.

### A.    Talton's Retaliation Claims Based On Alleged Participation In A Protected Proceeding Should Be Dismissed

Talton alleges that he testified, assisted, and/or participated in an investigation, proceeding or hearing under Title VII (Count 1), the FEHA (Count 4), the NYSHRL (Count 7), and the NYCHRL (Count 9). Talton alleges three instances of purported assistance in a protected proceeding: (1) "On January 23, 2023, Talton appeared under subpoena for a deposition in Emily Kramer's gender discrimination and retaliation lawsuit against Carta," ECF No. 54 at ¶ 140; (2) "On August 2, 2023, Talton was interviewed by an investigator from the Montana Bureau for Human Rights about [Heidi] Johnson's discrimination and retaliation claims against Carta," *id.* at ¶ 141; and (3) "On November 8, 2022, the morning of Johnson's mediation with Carta, Talton sent her an email containing a transcript of a September 27 conversation he had with Lindauer," *id.* at ¶ 110. None of these instances constitute protected assistance or participation in a proceeding to support Talton's retaliation claims.[13]

---

[13] Talton asserts that he participated in proceedings, "including, but not limited to, claims brought by Heidi Johnson and Emily Kramer," ECF No. 54 at ¶ 256, but he only alleges facts with respect to his alleged participation in the Johnson and Kramer proceedings. His claims are therefore necessarily limited to the facts alleged in the Amended Counterclaim. *See, e.g., Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016) ("On a motion under Rule 12(b)(6) to dismiss a complaint for failure to state a claim, the only facts to be considered are those alleged in the complaint[.]").

As a threshold matter, Talton cannot state a claim for retaliation based on either his alleged participation in the Kramer proceeding in January 2023 or his alleged participation in the Johnson proceeding in August 2023 because Carta's allegedly adverse actions against Talton happened *before* both dates. *Id.* at ¶¶ 140–41. The order matters—the protected activity must *precede* the adverse action, not vice versa. *See, e.g., Moy v. Perez*, 712 F. App'x 38, 40 (2d Cir. 2017) ("Like the district court, we conclude that, to the extent Moy characterizes the adverse promotion decision as a retaliatory adverse employment action, his claim fails because he does not allege prior participation in a protected activity.").

Talton alleges that Carta terminated him for Cause on December 23, 2022, and then sued him on December 30, 2022. ECF No. 54 at ¶¶ 8, 119. Talton did not participate in the Kramer proceeding until January 23, 2023—one month after his termination. *Id.* at ¶ 140. And Talton was not interviewed in the Johnson matter until more than seven months after his termination and this lawsuit. *Id.* ¶ 141. This timeline cannot support a retaliation claim. *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 25 (2d Cir. 2014) ("Title VII does not require that a causal connection exist between a protected activity and an adverse employment action that occurred *before* that activity."). Talton has therefore failed to state any claim for retaliation based on (1) his participation in the Kramer proceeding, and (2) his participation in the Johnson proceeding on August 2, 2023.

Talton's sole remaining allegation of participation in a proceeding—his November 8, 2022 email—cannot save his claims. On November 8, 2022, the morning of Johnson's mediation with Carta, Talton alleges he sent Johnson a transcript of a September 27, 2022 conversation he had with April Lindauer, Carta's General Counsel.[14] *Id.* He alleges that he sent the recording to

---

[14] Talton recorded this conversation without Lindauer's consent.

"[h]elp[] Johnson with [h]er [d]iscrimination and [r]etaliation [c]laims [a]gainst Carta." ECF No. 54 at VI. But this alleged assistance does not constitute participation in a protected proceeding because Talton does not allege that he made the recording or sent Johnson the email as part of any formal investigation by the Equal Employment Opportunity Commission ("EEOC") or corresponding state or local entity. *See Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 49 (2d Cir. 2012) ("Every Court of Appeals to have considered this issue squarely has held that participation in an internal employer investigation not connected with a formal EEOC proceeding does not qualify as protected activity under the participation clause.") (collecting cases).

Talton does not allege that Johnson had initiated an employment proceeding against Carta or filed a charge of discrimination with any administrative body at the time of his November 8, 2022 email. *See id.* (noting that participation in an investigation under Title VII means participation in an investigation "that 'occur[s] in conjunction with or after the filing of a formal charge with the EEOC'; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC'") (cleaned up). Rather, Talton's allegations only support the reasonable inference that Talton made a unilateral decision to record Lindauer without her knowledge or consent and send the recording to Johnson. Federal, state, and local employment laws neither authorize nor protect unauthorized investigations by self-appointed private investigators. *See Sanders v. Madison Square Garden, L.P.*, 2007 WL 2254698, at *18–19 (S.D.N.Y. Aug. 6, 2007), *withdrawn in part on reconsideration on other grounds,* 525 F. Supp. 2d 364, 367 (S.D.N.Y. 2007) (holding that "plaintiff's personal investigation into her sexual harassment charge does not constitute 'participation' under § 704(a) [of Title VII]").

Relevant authority firmly supports the application of this Title VII precedent to FEHA, NYSHRL, and NYCHRL retaliation claims. In fact, in *McGrory v. Applied Signal Tech., Inc.*, 152 Cal. Rptr. 3d 154, 167 (Cal. Ct. App. 2013), California's Court of Appeal did just that. There, the employee asserted a claim arising under FEHA § 12940(h), which makes it unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or *because the person has* filed a complaint, *testified, or assisted in any proceeding under this part.*" *Id.* at 166. (cleaned up).

In that case, the plaintiff assumed that his participation in his employer's internal investigation was "a 'proceeding under this part.'" *Id.* at 167. The court disagreed, noting that Title VII "contains a comparable provision" and "[f]ederal courts have determined that the activities protected by 42 United States Code, section 2000e–3(a), are limited to participation in official administrative proceedings by the Equal Employment Opportunity Commission and do not extend to private internal investigations by employers." *Id.* (cleaned up); *see also Rumsey v. Ne. Health, Inc.*, 89 F. Supp. 3d 316, 333 (N.D.N.Y. 2015), *aff'd*, 634 F. App'x 318 (2d Cir 2016) (discussing Title VII and NYSHRL claims and noting that participation in an internal investigation is only a protected activity when it occurs "in conjunction with or in response to an EEOC charge"); *Hagan v. City of New York*, 39 F. Supp. 3d 481, 501 (S.D.N.Y. 2014) (plaintiff's participation in "internal investigations does not fall under the 'participation' clause") (cleaned up); *see generally Zakrzewska v. New Sch.*, 928 N.E.2d 1035, 1039 (N.Y. 2010) ("[W]e have always strived to 'resolve federal and state employment discrimination claims consistently.'") (cleaned up). Accordingly, Talton's unauthorized recording of Carta's General Counsel, and distribution of that recording, does not constitute participation in a protected activity under Title VII, the FEHA, the NYSHRL, or the NYCHRL.

Talton's retaliation claims also fail because Johnson's proceeding did not arise under any state or local laws.  Talton alleges that Johnson asserted claims against Carta under the "Montana Human Rights Act (Title 49, Chapter 2, MCA) and Title VII of the Civil Rights Act of 1964." ECF No. 54 at ¶ 142.  The FEHA, the NYSHRL, and the NYCHRL only protect participation in proceedings that arise under those respective statutes.  *See* CAL. GOV'T CODE § 12940 (providing that it shall be unlawful for any employer to retaliate against an employee because she "testified[] or assisted in any proceeding *under this part*") (emphasis added); N.Y. EXEC. LAW § 296(7) (providing that it shall be unlawful for any employer to retaliate against an employee because she "testified or assisted in any proceeding *under this article*") (emphasis added); N.Y.C. ADMIN. CODE § 8-107(7) (providing that it shall be unlawful for any employer to retaliate against an employee because she "testified or assisted in any proceeding *under this chapter*," or "assisted the commission or the corporation counsel in an investigation *commenced pursuant to this title*") (emphases added).  The FEHA, the NYSHRL, and the NYCHRL do not protect Talton's alleged assistance in a yet-to-be filed charge of discrimination, which was later pursued under Montana law.  *See* ECF No. 54 at ¶¶ 110, 141.  The statutes' plain language defeats Talton's claims.  *See Ross v. Blake*, 578 U.S. 632, 638 (2016) ("Statutory interpretation . . . begins with the text.") (cleaned up).  For these reasons, Counts 1, 4, 7, and 9 should be dismissed because Talton has failed to allege that he participated or assisted in a protected proceeding under Title VII, the FEHA, the NYSHRL, or the NYCHRL.

### B.    Talton's Retaliation Claims Based On Alleged Opposition To Unlawful Employment Practices Should Be Dismissed

In Counts 2, 3, 6, and 8, Talton alleges that he opposed unlawful employment practices under Title VII (Count 2), the FEHA (Count 3), the NYSHRL (Count 6), and the NYCHRL (Count 8).  Talton fails to state a claim in any of these four Counts because he has not pled sufficient facts

to produce a reasonable inference of causation.  Under Title VII and the corresponding state and local laws, a plaintiff must show "that there was a causal connection between the protected activity and the employer's subsequent action." *Kraiem v. JonesTrading Institutional Servs. LLC*, 571 F. Supp. 3d 53, 60 (S.D.N.Y. 2021) (cleaned up).  "In the retaliation context, the allegations must support the conclusion that the adverse action 'would not have occurred in the absence of the retaliatory motive.'" *Thomson v. Odyssey House*, 2015 WL 5561209, at \*20 (E.D.N.Y. Sept. 21, 2015), *aff'd*, 652 F. App'x 44 (2d Cir. 2016); *see also Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 289 (S.D.N.Y. 2020) ("[T]o state a claim, a plaintiff must allege that 'retaliation was a "but-for" cause of the employer's adverse action[s].'") (cleaned up).

Here, Talton alleges that he began opposing alleged incidents of discrimination at Carta as early as November 19, 2020, when he messaged a human resources employee to express concerns about a male colleague.  ECF No. 54 at ¶ 76.  Less than a month later, on December 30, 2020, Talton alleges that Carta awarded him "218,157 'promotion stock options'" and "87,254 'tenure' stock options."  *Id.* at ¶ 43.  He further alleges that on October 26, 2021, he reported another male colleague to human resources.  *Id.* at ¶ 80.  Less than two months after that, on December 13, 2021, Carta increased Talton's base salary by over $200,000 and allowed him to receive $3,981,000 in Restricted Stock Units each year.  *Id.* at ¶ 44.  These facts do not support an inference of retaliation; rather, they show that Carta took no adverse action based on his statements.  *See Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 686 (S.D.N.Y. 2012) ("[T]he fact that she was promoted *after* she first engaged in protected activity fatally undermines her arguments.").

Indeed, no adverse action is alleged by Talton despite his allegations that he complained to human resources and other employees about Carta's culture at least 13 times in a two-year span before his termination.  *See, e.g.*, ECF No. 54 at ¶¶ 76, 80, 82, 84, 86, 88, 91, 93, 97, 99, 101, 110.

Although Talton's last alleged protected activity occurred on October 7, 2022—when Talton sent a letter to Carta's Board of Directors—the Court cannot reasonably infer that Talton's letter *caused* Carta to terminate him where Carta had allegedly received multiple complaints from him over the years and granted him nearly $4 million in stock. *Id.* ¶¶ 43–44. These intervening acts "defeat the inference of causation where temporal proximity might otherwise suffice to raise the inference." *Joseph v. Marco Polo Network, Inc.*, 2010 WL 4513298, at *18 (S.D.N.Y. Nov. 10, 2010); *see also Lampros v. Banco do Brasil, S.A.*, 2012 WL 6021091, at *11 (S.D.N.Y. Dec. 4, 2012), *aff'd*, 538 F. App'x 113 (2d Cir. 2013) (noting that "the undisputed existence of a material intervening event" may "severely diminish[ ] any inference that may be suggested by this temporal proximity").

Further, Talton himself identifies one (of many) non-retaliatory reasons for his termination: he improperly recorded an attorney-client privileged conversation with Carta's General Counsel on September 27, 2022, in violation of his fiduciary duties. *Id.* at ¶ 110. Carta learned of this recording on November 8, 2022. *Id.* Less than two months later, following a Board-run investigation, Carta terminated Talton for his unlawful conduct. *Id.* at ¶ 113. These allegations cannot support the reasonable inference that "retaliation was the 'but-for' cause of [Carta's] adverse action[s]." *Torre*, 493 F. Supp. 3d at 289 (cleaned up).[15]

Talton also fails to state a claim in Counts 2, 3, 6, and 8 insofar as he relies on conduct that occurred more than three months before the alleged adverse action on December 23, 2022. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie

---

[15] If a lesser standard of causation applies to the NYCHRL retaliation claim, or any of the other claims, Talton still fails to support a reasonable inference that retaliatory animus played any role in motivating Carta's treatment of him. *Cardwell v. Davis Polk & Wardwell LLP*, 2020 WL 6274826, at *20 n.16 (S.D.N.Y. Oct. 24, 2020) (discussing the different standards that may apply to a NYCHRL claim).

case uniformly hold that the temporal proximity must be 'very close[.]'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (cleaned up). Although the Second Circuit has "no firm outer limit to the temporal proximity required" to establish a causal relationship, federal courts have routinely held that a gap of more than three months is too long. *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 2023 WL 2691622, at *25 (S.D.N.Y. Mar. 29, 2023) (cleaned up); *see, e.g., Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) (noting in reference to Title VII and NYSHRL retaliation claims that "[t]hree months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation."); *Kraiem*, 571 F. Supp. 3d at 60 (discussing NYSHRL, NYCHRL, and Title VII retaliation claims together and observing that "courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference") (cleaned up); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731–32 (9th Cir. 1986) (finding sufficient evidence of causation in a Title VII and FEHA case where adverse employment action occurred less than two months after the protected activity). Thus, Talton cannot state a claim based on any activity occurring before September 23, 2022— three months before his termination. Accordingly, Counts 2, 3, 6, and 8 should be dismissed because Talton has failed to plead sufficient facts to support a plausible inference that his opposition to any unlawful employment practice caused any allegedly adverse actions. To the extent that the Court declines to dismiss Talton's retaliation claims altogether, those claims should be limited to Talton's alleged opposition to unlawful employment practices occurring after September 23, 2022.

### C.    Carta's Lawsuit Against Talton Is Not An Adverse Employment Action

Counts 1 through 9 should be dismissed for an independent reason: Carta's lawsuit against Talton is not, as a matter of law, an adverse employment action. The Southern District of New York addressed this issue squarely in *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305

(S.D.N.Y. 2009). There, the plaintiff alleged that the defendants had retaliated against him in violation of Title VII, the NYSHRL, and the NYCHRL by filing counterclaims against him in his lawsuit. *Id.* at 342. The court debunked that theory of liability, writing:

> While I can conceive of cases in which being sued would qualify as an adverse employment action, in this case the counterclaims have merit; I can see nothing in Title VII or any other anti-discrimination statute that should prevent an employer from bringing a legitimate claim against a current or former employee simply because that employee has complained about what the employee believes to be discriminatory behavior.

*Id.* "In other words, only if a counterclaim is baseless can it constitute retaliation under employment law." *Pawlowski v. Kitchen Expressions Inc.*, 2017 WL 10259773, at *5 (E.D.N.Y. Dec. 15, 2017) (citation omitted).

Here, Carta's claims have substantial merit; Carta has pled factual allegations to support its well-founded claims of breach of contract and breach of fiduciary duty arising from Talton's misuse of company property; his unauthorized recording of Carta's General Counsel, among others; and his misappropriation and retention of the company's trade secrets. Employment discrimination laws cannot conceivably prohibit an employer from bringing a meritorious breach of contract and breach of fiduciary duty action against its former employee, let alone an employee who has admitted to surreptitiously recording his employer's general counsel. *See* ECF No. 54 at ¶ 110. Such a practice would make Title VII both a sword and shield; in turn sanctioning lawless conduct by employees. Accordingly, Counts 1 through 9 should be dismissed because Carta's lawsuit is not an adverse employment action.

### D. Talton's Retaliation Claims Arising Under California Law Should Be Dismissed

Talton's FEHA retaliation claims (Counts 3 and 4) should be dismissed for the independent reason that the FEHA does not apply extraterritorially. The leading case on this issue, *Campbell v. Arco Marine, Inc.*, observed that "[t]he repeated statements that the law was enacted for the

benefit of the citizenry of [California,] is persuasive indication of the Legislature's intent concerning the applicability of the FEHA." 42 Cal. App. 4th 1850, 1860 (Cal. Ct. App. 1996). The court held that, "absent clearer evidence of legislative intent to do so than is contained in the language of the FEHA," applying the FEHA extraterritorially to protect non-California residents injured outside of California "would raise serious constitutional concerns" under the federal Commerce Clause, the Due Process Clause, and the Full Faith and Credit Clause. *Id.* at 1858–59; *see also N. Alaska Salmon Co. v. Pillsbury,* 162 P. 93, 94 (Cal. 1916) ("Although a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries, the presumption is that it did not intend to give its statutes any extraterritorial effect.").

Following *Campbell*, federal courts have repeatedly dismissed FEHA claims by non-California residents where the alleged injury occurred outside of California. *See, e.g., Owens v. Circassia Pharms., Inc.*, 2020 WL 10897905, at *2 (N.D. Tex. Apr. 16, 2020) ("[C]ourts have applied a presumption against applying FEHA and § 1102.5 of the California Labor Code extraterritorially."). For example, in *Ramos v. Molina Healthcare, Inc.*, 603 F. App'x 173, 177 (4th Cir. 2015), the United States Court of Appeals for the Fourth Circuit affirmed a district court's dismissal of plaintiff's claims under the FEHA because the plaintiff "did not indicate whether he lived or worked in California during his employment with [defendant] when the allegedly discriminatory, retaliatory, and otherwise wrongful conduct occurred" and the FEHA has "not been construed by California courts as applying extraterritorially." *Id.* at 177–78 (citing *Campbell*, 42 Cal. App. 4th at 1860).

Here, Talton alleges that he "was a citizen and resident of the State of New York during his employment with Carta from August 14, 2018, to December 23, 2022." ECF No. 54 at ¶ 23. He further alleges that at all relevant times, he "worked remotely from his New York residence and out of Carta's New York office." *Id.* at ¶ 114 n.11. Talton's FEHA claims are based on (1) his alleged (but legally debunked) participation in protected proceedings, which he does not allege occurred in California, and (2) his alleged opposition to unlawful practices, which he does not allege occurred in California. Talton alleges that "[o]n December 23, 2022, Carta terminated Talton via correspondence . . . from Carta's San Francisco headquarters to Talton's New York residence." *Id.* at ¶ 114. But the Termination Letter, which Talton cites in the Amended Counterclaim, shows that the letter was sent from a human resources officer in Salt Lake City, Utah to Talton's residence in New York. *See* ECF No. 29-5 at 1, 6.[16] Finally, Talton alleges that "[u]pon information and belief, the unlawful decision to terminate Talton's employment was made by Ward in California." ECF No. 54 at ¶ 114.

That sole allegation cannot save the FEHA claim from dismissal. "To determine the location of the discriminatory acts, a court is to look at the location(s) where the conduct had an impact, which may not necessarily be the place in which it occurred." *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 556 (S.D.N.Y. 2023) (cleaned up). "In other words, 'it is the site of impact, not the place of origination, that determines where discriminatory acts occur.'" *Id.* Here, the site of impact is where Talton lived and worked: New York. Moreover, Talton cannot seek to benefit from both California employment laws and New York employment laws for the same alleged conduct, and Title VII clearly occupies the field—and preempts—the application of a

---

[16] The Termination Letter defeats Talton's conclusory allegation about the location of the human resources team. *See Amidax Trad. Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) ("[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true.").

state's employment laws beyond its boundaries.  Accordingly, there is no basis to apply the FEHA

extraterritorially and Talton's FEHA claims (Counts 3 and 4) should be dismissed.

## IV.    Talton's Wrongful Discharge Claim Is Not Recognized Under New York Law And Should Be Dismissed

In Count 5, Talton "asserts a claim for termination in violation of public policy, sometimes

referred to as a *Tameny* claim." *Thomas v. U.S. Foods, Inc.*, 2012 WL 5634847, at *2 (C.D. Cal.

Nov. 14, 2012) (citing *Tameny v. Atl. Richfield Co.,* 610 P.2d 1330 (Cal. 1980)).  "In *Tameny v.*

*Atlantic Richfield Co.*, the California Supreme Court carved out an exception to the at-will

[employment] rule by recognizing a tort cause of action for wrongful terminations that violate

public policy." *Duarte v. Stryker Sales Corp.*, 2016 WL 11743209, at *4 (C.D. Cal. May 9, 2016)

(cleaned up).  "To state a valid *Tameny* claim, the plaintiff must prove: (1) an employer-employee

relationship; (2) plaintiff was terminated; (3) that plaintiff's termination was substantially

motivated by a violation of public policy; and (4) the termination caused plaintiff harm." *Tipton*

*v. Airport Terminal Servs., Inc.*, 2019 WL 3035095, at *5 (C.D. Cal. Apr. 16, 2019) (cleaned up).

"[I]n California, *Tameny* claims supplement FEHA claims alleging an improper

termination due to race, age, disability, or retaliation, and may be asserted in conjunction with such

claims." *Duarte*, 2016 WL 11743209, at *6 (cleaned up).  Because Talton cannot state an FEHA

retaliation claim, he cannot state an accompanying *Tameny* claim.

Moreover, New York law bars Talton's *Tameny* claim through a conflict of laws analysis.

California courts recognize a tort claim for wrongful discharge in violation of public policy, *i.e.*, a

*Tameny* claim; New York courts do not.  *Compare Duarte*, 2016 WL 11743209, at *4, *with*

*Chimarev v. TD Waterhouse Inv. Servs., Inc.*, 280 F. Supp. 2d 208, 226 (S.D.N.Y. 2003), *aff'd*, 99

F. App'x 259 (2d Cir. 2004) ("New York does not recognize the tort of wrongful discharge . . .

[and] there is no exception for firings that violate public policy."). Accordingly, there is an actual conflict between the laws of New York and the laws of California.

Where a conflict of laws exists, "[a] federal court exercising diversity jurisdiction must apply the choice of law analysis of the forum state." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006) (cleaned up). "Here, the forum state is New York, as the action was properly venued in the United States District Court for the Southern District of New York." *Id.* Accordingly, New York's choice of law rules apply. *Id.* "The New York Court of Appeals has held that the relevant analytical approach to choice of law in tort actions in New York is the [i]nterest analysis." *Id.* at 384 (cleaned up). The "interest analysis" requires that "[t]he law of the jurisdiction having the greatest interest in the litigation will be applied and . . . the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Id.* Where, as here, "conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Id.* (cleaned up); *see also Krock v. Lipsay,* 97 F.3d 640, 645 (2d Cir. 1996) ("Where the parties are domiciled in different states, the locus of the tort will almost always be determinative in cases involving conduct–regulating laws[.]").

Under New York Law, a tort occurs at the place of injury. *See United Mag. Co. v. Murdoch Mags. Distrib., Inc.*, 146 F. Supp. 2d 385, 413 (S.D.N.Y. 2001), *aff'd,* 279 F. App'x 14 (2d Cir. 2008) ("Where the defendants' conduct occurred in one place and the plaintiffs' injuries were suffered in another, the tort is considered to have occurred where the plaintiffs suffered injury."). It is undisputed that Talton suffered his alleged injuries in New York, where he lived and worked. ECF No. 54 at ¶¶ 114 n.11, 223. New York, therefore, has the greatest interest in protecting

employees in its state.  *See GlobalNet Financial.Com, Inc.*, 449 F.3d at 382; *see also Pierre v. Gts Hldgs., Inc.*, 2015 WL 7736552, at *3 (S.D.N.Y. Nov. 30, 2015) (finding that the location of employment is the locus of an employment-related tort "[s]o if [plaintiff] worked in New York, New York's laws apply"); *Parisi v. Wipro Ltd.*, 2016 WL 6905987, at *7 (S.D.N.Y. Nov. 23, 2016) ("New York . . . has a substantial interest in protecting employees who live and work in New York.") (cleaned up).

New York's interest in protecting employees within its jurisdiction is clearly displayed by New York's state and local laws, *i.e.*, the NYSHRL and the NYCHRL, under which Talton seeks other relief in his Amended Counterclaim.  Talton cannot seek to benefit from New York's state and local statutory scheme for claims of retaliation while simultaneously attempting to state a *Tameny* claim rejected under New York law.  Talton's *Tameny* claim (Count 5) is therefore subject to dismissal because New York law applies to Talton's employment claims and New York law does not recognize a common law cause of action for wrongful discharge.

The *Tameny* claim also should be dismissed for the reasons set forth more fully above, including that Talton has failed to allege that he participated in any protected proceeding or that his protected activities caused his termination.  Accordingly, Count 5 should be dismissed.

## V.    The Court Should Strike Many Of Talton's "Factual" Allegations

Talton's Amended Counterclaim is replete with "characterizations, lectures, dissertations, unnecessary evidence and flights of literary fancy[.]"  *Metro. Theatre Corp. v. Warner Bros. Pictures*, 12 F.R.D. 516, 517–18 (S.D.N.Y. 1952) (striking paragraphs in complaint that are "prolix, verbose and redundant" and that "contain[ ] many conclusory allegations.").  The Court need not look further than paragraph 17, where Talton alleges that "unusual is standard for Henry Ward, who combines the ego and volatility of an Elon Musk, the effortless dissembling of a George Santos, and the vindictiveness of Don Corleone."  ECF No. 54 at ¶ 17.  This paragraph, and dozens

more, are wholly unrelated to Talton's tort, contract, and retaliation claims against Carta and Ward and are precisely the sorts of "allegations" courts apply Rule 12(f) to remedy. Moreover, Talton includes numerous highly confidential facts reflecting Carta's attorney-client privileged information. Carta has *not* waived its privilege, and Talton is *not* permitted to disclose that information in his Amended Counterclaim. Consistent with Rule 12(f), the Court should strike the paragraphs containing Carta's attorney-client privileged information identified below.

Courts also routinely strike allegations where the factual allegations are unrelated to the claims asserted in the pleading. *See, e.g.*, *Gatto v. Lackawanna Cnty.*, 2021 WL 4502261, at *11 (M.D. Pa. Sept. 30, 2021) (striking allegations where the plaintiff did not "allege how these [facts] may be related to any of the . . . claims contained in the complaint."); *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1259 (M.D. Fla. 2020) (striking allegations because they were irrelevant to claims asserted); *Tidwell v. Cnty. of Kern*, 2017 WL 68146, at *2–3 (E.D. Cal. Jan. 5, 2017) (striking inflammatory paragraphs of complaint where there was "no indication" they would "bear on any issue raised in this case."). Talton's factual allegations in paragraphs 17, 21, 53–62, 92, 105, 107, and 145–58 must be stricken because they are wholly unrelated to his tort, contract, and retaliation claims.

➢ **Paragraph 17**. As discussed above, the entirety of Paragraph 17 – a work of "literary fancy" compares Ward to Elon Musk, George Santos, and Don Corleone, and asserts that Ward "shows contempt for tiresome restraints like law and regulation." The entirety of Paragraph 17 is irrelevant to Talton's claims against Carta and Ward.

➢ **Paragraph 21**. In paragraph 21 Talton alleges that he "was thus turned from high-flyer to roadkill, a path well-known to whistleblowers, sadly proving Emerson's adage that 'if you strike the king you must kill him.'" Talton does not attempt to hide his literary fancy here. But Paragraph 21 has no bearing on his claims against Carta and Ward.

➢ **Paragraphs 53–62.** Paragraphs 53 to 62 comprise Talton's gripes with Ward. But those gripes do not form the basis of Talton's claims against Ward (defamation, false light, publication of private facts, and IIED). Thus, Talton's assertion that Carta's "politics were akin to a royal court, with everything flowing from the king's favor that was given and withdrawn unpredictably" and that "[d]ouble standards – one for Ward, another for everyone else – were rampant" are simply unconnected to the claims Talton asserts. ECF No. 54 at ¶¶ 55, 59.

42

- ➢ **Paragraph 92**.  Paragraph 92, which is currently entirely redacted, should be stricken both because it has no relation to any of Talton's claims and because it gratuitously attempts to embarrass Ward.
- ➢ **Paragraph 105**.  Paragraph 105 is entirely unrelated to Talton's claims against Carta or Ward.
- ➢ **Paragraph 107**.  Paragraph 107, which contains Talton's self-serving readout of his interview with Paul, Weiss as part of its Board-directed investigation, is entirely unrelated to the issues in this case and discloses attorney-client privileged information.
- ➢ **Paragraphs 145–50.**  Paragraphs 145 to 150 purport to reflect Emily Kramer's dissatisfaction with Carta.  Yet again, Talton attempts to co-opt an unrelated party's grievances to buttress his vengeance campaign against Carta and Ward.  Worse still, Talton simply infuses his subjective feelings about Kramer.  *See, e.g.*, ECF No. 54 at ¶ 146 (describing Kramer, in Talton's view, as "a straight shooter, creative and energetic, not prone to flattering."); *id.* at ¶ 148 (describing Kramer as "not pliant, spoke her mind when she had something to say, and Ward disliked her presumption of equality.").  These "facts" are wholly unrelated to any of Talton's claims against Carta or Ward.
- ➢ **Paragraphs 151–53.**  Paragraphs 151 to 153 involve Suzanne Elovic's investigation regarding alleged complaints of harassment.  But Talton does not allege he was involved in the investigation or that Elovic's investigation in any way relates to his claims against Carta and Ward.
- ➢ **Paragraphs 154–58.**  Paragraphs 154 to 158 must be stricken because, as Talton concedes, these are alleged "other examples of discrimination and retaliation."  ECF No. 54 at 41.  Put another way, these are rumors of other alleged misconduct at Carta about which Talton has no first-hand knowledge and which do not form the basis of any of his claims against Carta.

The above paragraphs all comfortably satisfy the rigorous test for motions to strike under Rule 12(f).  *First*, "no evidence in support of the allegations would be admissible." *Bryce Corp.*, 2023 WL 9004039, at *7.  Any evidence Talton may offer to support the allegations in these complaints would be excluded under FED. R. EVID. 401 (because the evidence has zero "tendency to make a fact more or less probable" and "the fact[s are] of [no] consequence in determining" Talton's claims against Carta and Ward) or FED. R. EVID. 403 (because even if the facts are relevant, their "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, [or] wasting time").

*Second*, as explained above, none of Talton's subjective feelings about Ward or Carta, or discussions of unrelated allegations of purported wrongdoing, have any "bearing on the issues in the case." *Bryce Corp.*, 2023 WL 9004039, at *7.  Talton alleges tort claims, contract claims, and

retaliation claims, none of which include elements relating to Ward's personality or management style or other, unrelated allegations of purported wrongdoing.

**Finally**, both Carta and Ward would suffer prejudice if these allegations were allowed to remain in Talton's Amended Counterclaim. Talton's exhaustive *ad hominem* attacks on Ward and second- and third-hand complaints about alleged Carta issues with which he was not personally involved are solely intended to embarrass, harass, or otherwise harm Carta and Ward's reputation.

Additionally, Paragraphs 5, 6, 17, 47, 56, 82, 87, 91, 92, 94, 95, 107, 108, 140, 151, 152, 155, and 157 must be stricken because they contain highly confidential information protected by Carta's attorney-client privilege. As discussed more thoroughly in Carta's briefing in support of its motion to seal the Amended Counterclaim, *see* ECF No. 57 at 4–6; ECF No. 72 at 2–4, and in the attached declaration of April Lindauer, Carta's General Counsel, the information in these paragraphs is attorney-client privileged. And courts in the Second Circuit have often stricken such attorney-client privileged information from under Rule 12(f). *See, e.g.*, *Gordon*, 2015 WL 5774171, at *12; *see also Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*, 1997 WL 525482, at *6 (S.D.N.Y. Aug. 22, 1997) (striking portions of testimony because it reflected attorney-client privileged information); *Shakima O. v. Westchester Cnty.*, 2014 WL 521608, at *5– 6 (S.D.N.Y. Feb. 10, 2014) (striking portions of complaint relying on attorney-client privileged correspondence).

For these reasons, Paragraphs 5, 6, 17, 21, 47, 53–62, 82, 87, 91–92, 94–95, 105, 107–08, 140, and 145–58 should be stricken from Talton's Amended Counterclaim.

## CONCLUSION

Talton's "throw spaghetti at the wall and see what sticks" approach to pleading his Amended Counterclaim resulted in overlapping, duplicative, and ill-conceived claims which fail to state a claim as a matter of law. Talton's tort claims—premised on Carta's filings in this lawsuit—are largely barred by the litigation privilege. Those that conceivably are not covered by the privilege fail to state a claim because the statements at issue are substantially true and do not rise to the level of "extreme and outrageous" conduct required under New York and Illinois law. Talton's contract claims fail because they are an improper attempt to bootstrap a wrongful discharge claim into a contract claim where Carta has not breached the Stock Plan, and because Talton does not allege any provision of the Stock Plan that Carta allegedly breached. Finally, Talton's retaliation claims fail as a matter of law because they were temporally interrupted by pay raises, additional equity grants, and positive performance reviews and because much of the alleged protected activity occurred long *after* Carta terminated Talton for Cause in December 2022. For the reasons above, Talton's Amended Counterclaim should be dismissed with prejudice for failure to state a claim.

Moreover, Talton's quest to achieve retribution by attempting to publicly name and shame non-parties, and irresponsibly to lob incendiary assertions at Ward, Lindauer, and Carta, should not be countenanced. The Court should strike the offensive, irrelevant, scandalous and/or attorney-client privilege laden paragraphs identified above.

45

Dated: New York, New York
      March 1, 2024

DECHERT LLP

By:     */s/ Nicolle L. Jacoby*

Andrew J. Levander
Nicolle L. Jacoby
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
andrew.levander@dechert.com
nicolle.jacoby@dechert.com
Telephone:    (212) 698-3500
Facsimile:    (212) 698-3599

Christopher J. Merken
Julia M. Curley (admitted *Pro Hac Vice*)
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
christopher.merken@dechert.com
julia.curley@dechert.com
Telephone:    (215) 994-4000
Facsimile:    (215) 994-2222

***Attorneys for eShares, Inc. d/b/a Carta, Inc. and Henry Ward***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 1, 2024, I had the foregoing document electronically filed using the

CM/ECF system, and that the same was served on all counsel of record via CM/ECF.


<u>*/s/ Nicolle L. Jacoby*</u>
Nicolle L. Jacoby