# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------- X

eShares, Inc. d/b/a Carta, Inc.,                                   :
                                                                                 :
                                    *Plaintiff*,                         :        Civil Action No.: 1:22-cv-10987
                                                                                 :
                        v.                                                   :        Hon. Jessica G. L. Clarke
                                                                                 :
Jerry O. Talton, III,                                                    :
                                                                                 :
                                    *Defendant*.                        :        **ORAL ARGUMENT REQUESTED**
                                                                                 :
--------------------------------------------------- X


--------------------------------------------------- X
                                                                                 :
Jerry O. Talton, III,                                                    :
                                                                                 :
                        *Counterclaim Plaintiff*,                 :
                                                                                 :
                        v.                                                   :
                                                                                 :
eShares, Inc. d/b/a/ Carta, Inc., and                          :
Henry Ward,                                                               :
                        *Counterclaim Defendants*.            :
                                                                                 :
--------------------------------------------------- X


**ESHARES, INC. D/B/A CARTA, INC., AND HENRY WARD'S MEMORANDUM OF
LAW IN SUPPORT OF THEIR MOTION TO DISMISS AND MOTION TO STRIKE
<u>JERRY O. TALTON III'S SECOND AMENDED COUNTERCLAIM</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................ 4

ARGUMENT .................................................................................................... 5

I.      TALTON'S TORT CLAIMS SHOULD BE DISMISSED .................................. 6

      A.    THE LITIGATION PRIVILEGE BARS TALTON'S CLAIMS AGAINST CARTA BASED ON CARTA'S COMPLAINTS IN THIS LAWSUIT .................................................................... 6

      B.    TALTON'S DEFAMATION CLAIM FAILS AS A MATTER OF LAW ................................................................................. 8

            i.    Talton Fails To State A Defamation Claim Under New York Law Based On Carta's Allegations In Its Complaint .......... 8

            ii.    Talton Fails To State A Defamation Claim Based On Ward's Blog Post Because The Blog Post Reflects Ward's Constitutionally Protected Opinions ............................................. 11

      C.    TALTON FAILS TO STATE AN IIED CLAIM .................................... 14

            i.    Talton Fails To State An IIED Claim Under New York Law Based On Carta's Allegations In Its Complaints ................. 14

            ii.    Talton Fails To State An IIED Claim Under Illinois Law Based On Ward's Blog Post ........................................ 16

            iii.    Talton's IIED Claim Impermissibly Duplicates His Defamation Claim ........................................................ 18

      D.    TALTON FAILS TO STATE A FALSE LIGHT CLAIM ..................... 18

      E.    TALTON FAILS TO STATE A PUBLICATION OF PRIVATE FACTS CLAIM ....................................................... 19

II.     TALTON'S CONTRACT CLAIMS SHOULD BE DISMISSED ..................... 21

      A.    TALTON FAILS TO STATE A BREACH OF CONTRACT CLAIM ................................................................. 21

      B.    TALTON FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ......................................................... 23

III.    TALTON'S RETALIATION CLAIMS SHOULD BE DISMISSED ................ 25

      A.    TALTON'S FEHA CLAIMS SHOULD BE DISMISSED ................... 26

      B.    TALTON'S POST-TERMINATION NYSHRL AND NYCHRL CLAIMS SHOULD BE DISMISSED .................................... 29

# TABLE OF CONTENTS
(continued)

Page

C.    THE RETALIATION CLAIMS SHOULD BE DISMISSED FOR
FAILING TO ALLEGE A *PRIMA FACIE* CASE OF
RETALIATION ................................................................................ 31

i.    Counts 1, 3, 4, 5, 8, 9, And 11 Fail To State A Prima Facie
Case ........................................................................................ 32

a)    Talton Did Not Participate In A Protected
Proceeding ....................................................................... 32

b)    Talton Fails To Plead Any Retaliatory, Adverse
Employment Action ........................................................ 34

c)    Talton's Termination For Cause Was Not
Retaliatory ....................................................................... 34

d)    Talton Has Not Plausibly Alleged That Carta
Misrepresented The Terms of Talton's
Administrative Leave Or Termination ............................ 36

e)    This Meritorious Lawsuit Is Not Retaliatory .................. 36

ii.    Counts 2 And 6 Fail To State A Prima Facie Case .................... 38

IV.    TALTON'S WRONGFUL DISCHARGE CLAIM IS NOT
RECOGNIZED UNDER NEW YORK LAW AND SHOULD BE
DISMISSED ......................................................................................... 39

V.    THE COURT SHOULD STRIKE MANY OF TALTON'S "FACTUAL"
ALLEGATIONS .................................................................................... 40

CONCLUSION ............................................................................................................ 43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmed v. Gateway Grp. One*,
    2012 WL 2061601 (E.D.N.Y. June 7, 2012) ........................................................16

*Ameristar Casino E. Chi., LLC v. UNITE HERE Loc. 1*,
    2016 WL 7339199 (N.D. Ill. Dec. 19, 2016) .......................................................20

*Amidax Trad. Grp. v. S.W.I.F.T. SCRL*,
    671 F.3d 140 (2d Cir. 2011).................................................................................31

*Andrews v. At World Props., LLC*,
    2023 WL 3939464 (Ill App. June 12, 2023) ......................................................8, 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................5, 29, 30

*Atherton v. 21 E. 92nd St. Corp.*,
    149 A.D.2d 354 (1st Dep't 1989) ....................................................................14, 15

*Bedin v. Nw. Mem'l Hosp.*,
    187 N.E. 3d 739 (Ill. App. Ct. 2021) .....................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................5

*Bryce Corp. v. XL Ins. Am., Inc.*,
    2023 WL 9004039 (S.D.N.Y. Dec. 28, 2023) ...........................................5, 42, 43

*Chimarev v. TD Waterhouse Inv. Servs., Inc.*,
    280 F. Supp. 2d 208 (S.D.N.Y. 2003)...................................................................40

*Clark Cnty. Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001)..............................................................................................38

*Cook v. Winfrey*,
    141 F.3d 322 (7th Cir. 1998) ................................................................................18

*Cygnus Opportunity Fund, LLC v. Wash. Prime Grp., LLC*,
    302 A.3d 430 (Del. Ch. 2023)...............................................................................25

*Davis-Bell v. Columbia Univ.*,
    851 F. Supp. 2d 650 (S.D.N.Y. 2012) ...................................................................35

*Dieckman v. Regency GP LP*,
   155 A.3d 358 (Del. 2017) ......................................................................25

*DiPietro v. GATX Corp.*,
   167 N.E.3d 247 (Ill. App. Ct. 2020) ......................................................16

*Dobryakov v. Brickhouse Food LLC*,
   2024 WL 218441 (S.D.N.Y. Jan. 19, 2024) ...........................................31

*Doe #1 v. Syracuse Univ.*,
   468 F. Supp. 3d 489 (N.D.N.Y. 2020) ....................................................13

*Duarte v. Stryker Sales Corp.*,
   2016 WL 11743209 (C.D. Cal. May 9, 2016) .................................39, 40

*E.E.O.C. v. Waffle House, Inc.*,
   534 U.S. 279 (2002)................................................................................26

*Evanger's Cat and Dog Food Co., Inc. v. Thixton*,
   412 F. Supp. 3d 889 (N.D. Ill. 2019) ..............................................12, 13

*Flaherty v. Dixon*,
   2023 WL 2051861 (S.D.N.Y. Feb. 16, 2023) ..................................15, 16

*Gatto v. Lackawanna Cnty.*,
   2021 WL 4502261 (M.D. Pa. Sept. 30, 2021) ........................................41

*GC Am. Inc. v. Hood*,
   2022 WL 910556 (N.D. Ill. Mar. 29, 2022)..........................................6, 7

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*,
   449 F.3d 377 (2d Cir. 2006)....................................................................40

*Gonsalves v. Infosys Techs., LTD.*,
   2010 WL 1845146 (N.D. Cal. May 6, 2010) ...................................30, 31

*Gruntz v. Cont'l Airlines, Inc.*,
   2008 WL 11336169 (C.D. Cal. Apr. 7, 2008) ........................................31

*Hagan v. City of N.Y.*,
   39 F. Supp. 3d 481 (S.D.N.Y. 2014)......................................................33

*HASelect Med. Receivables Litig. Fin. Fund Int'l SP v. Clark*,
   2024 WL 1328839 (N.D. Ill. Mar. 28, 2024)...................................11, 12

*Hatmaker v. Mem'l Med. Ctr.*,
   619 F.3d 741 (7th Cir. 2010) ..................................................................33

*HC2, Inc. v. Delaney*,
   510 F. Supp. 3d 86 (S.D.N.Y. 2020)....................................................................................7

*Henry v. NYC Health & Hosp. Corp.*,
   18 F.Supp.3d 396 (S.D.N.Y.2014) ...................................................................................37

*Hirsch v. Kairey*,
   2023 WL 5532732 (E.D.N.Y. Aug. 28, 2023).....................................................................7

*Hopewell v. Vitullo*,
   701 N.E.2d 99 (Ill. App. Ct. 1998) ...................................................................................12

*Jaeger v. N. Babylon Union Free Sch. Dist.*,
   191 F. Supp. 3d 215 (E.D.N.Y. 2016) ..............................................................................36

*Jones v. Heartland Healthcare Ctr.*,
   2017 WL 4570306 (C.D. Ill. July 5, 2017)........................................................................13

*Joseph v. Marco Polo Network, Inc.*,
   2010 WL 4513298 (S.D.N.Y. Nov. 10, 2010) ...................................................................35

*Kaye v. Trump*,
   58 A.D.3d 579 (1st Dep't 2009) .......................................................................................15

*Kelly v. Albarino*,
   485 F.3d 664 (2d Cir. 2007)................................................................................................7

*Kirkland-Hudson v. Mount Vernon City Sch. Dist.*,
   2023 WL 2691622 (S.D.N.Y. Mar. 29, 2023) ..................................................................38

*Kraiem v. JonesTrading Institutional Servs. LLC*,
   492 F. Supp. 3d 184 (S.D.N.Y. 2020)...............................................................................34

*Kraiem v. JonesTrading Institutional Servs. LLC*,
   571 F. Supp. 3d 53 (S.D.N.Y. 2021).................................................................................34

*Lampros v. Banco do Brasil, S.A.*,
   2012 WL 6021091 (S.D.N.Y. Dec. 4, 2012) ....................................................................36

*Lane-Weber v. Plainedge Union Free Sch. Dist.*,
   213 A.D.2d 515 (2d Dep't 1995) ......................................................................................40

*Levy Fam. Invs., LLC v. Oars + Alps LLC*,
   2022 WL 245543 (Del. Ch. Jan. 27, 2022).......................................................................23

*Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*,
   1997 WL 525482 (S.D.N.Y. Aug. 22, 1997).....................................................................43

*Masson v. New Yorker Mag., Inc.*,
  501 U.S. 496 (1991)...................................................................................................9

*McDowell v. J.B. Hunt Transport, Inc.*,
  2004 WL 1878334 (N.D. Ill. Aug. 10, 2004) .........................................................18

*McGrory v. Applied Signal Tech., Inc.*,
  152 Cal. Rptr. 3d 154 (Cal. Ct. App. 2013) .....................................................32, 33

*Mestecky v. N.Y.C. Dep't of Educ.*,
  791 F. App'x 236 (2d Cir. 2019) .....................................................................31, 32

*Metro. Theatre Corp. v. Warner Bros. Pictures*,
  12 F.R.D. 516 (S.D.N.Y. 1952) ...............................................................................41

*MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic, LLC*,
  2024 WL 1719347 (N.D. Ill. Apr. 22, 2024) .........................................................13

*MG Premium Ltd. v. Does*,
  2023 WL 3432163 (C.D. Cal. Apr. 10, 2023) ...........................................................6

*Milazzo v. Connolly*,
  2017 WL 2466293 (Ill. App. Ct. June 6, 2017) .................................12, 13, 17, 18

*Miller v. Fairchild Indus., Inc.*,
  797 F.2d 727 (9th Cir. 1986) ...................................................................................39

*Miller v. HCP & Co.*,
  2018 WL 656378 (Del. Ch. Feb. 1, 2018) ...............................................................24

*Nemec v. Shrader*,
  991 A.2d 1120 (Del. 2010) .......................................................................................25

*Neogenix Oncology, Inc. v. Gordon*,
  2015 WL 5774171 (E.D.N.Y. Sept. 29, 2015) .....................................................5, 43

*New York v. Egon Zehnder Int'l, Inc.*,
  2022 WL 4072853 (S.D.N.Y. Sept. 2, 2022)..............................................................6

*Nunes v. NBCUniversal Media, LLC*,
  643 F. Supp. 3d 403 (S.D.N.Y. 2022).........................................................................8

*O'Bradovich v. Village of Tuckahoe*,
  325 F. Supp. 2d 413 (S.D.N.Y. 2004)......................................................................15

*Orozco v. Orozco*,
  2023 WL 2895750 (N.D. Ill. Apr. 11, 2023) .........................................................19

*Orrington v. Humana Dental Ins. Co.*,
   2023 WL 2599929 (N.D. Ill. Mar. 22, 2023) ........................................................15

*Otto v. Chi. Pub. Media, Inc.*,
   2023 WL 5202903 (Ill. App. Ct. Aug. 11, 2023) ..................................................19

*Palin v. New York Times Co.*,
   940 F.3d 804 (2d Cir. 2019) ................................................................................8

*Paupaw-Myrie v. Mount Vernon City Sch. Dist.*,
   653 F. Supp. 3d 80 (S.D.N.Y. 2023) ...................................................................31

*Pavilon v. Kaferly*,
   561 N.E.2d 1245 (Ill. App. Ct. 1990) .................................................................15

*Pawlowski v. Kitchen Expressions Inc.*,
   2017 WL 10259773 (E.D.N.Y. Dec. 15, 2017) ...................................................37

*People v. Austin*,
   155 N.E.3d 439 (Ill. 2019) .................................................................................19

*Portegys v. White*,
   2023 WL 4400001 (Ill. App. Ct. July 7, 2023) ....................................................7

*Ramler v. Birkenhauer*,
   684 S.W.3d 708 (Ky. Ct. App. 2024) .................................................................13

*Rose v. Hollinger Int'l, Inc.*,
   889 N.E.2d 644 (Ill. App. Ct. 2008) ...................................................................12

*Rumsey v. Ne. Health, Inc.*,
   89 F. Supp. 3d 316 (N.D.N.Y. 2015) ............................................................32, 33

*S.Y. v. Naples Hotel Co.*,
   476 F. Supp. 3d 1251 (M.D. Fla. 2020) ..............................................................41

*Sanders v. Madison Square Garden, L.P.*,
   2007 WL 2254698 (S.D.N.Y. Aug. 6, 2007) ......................................................33

*Schanfield v. Sojitz Corporation of America*,
   663 F. Supp. 2d 305 (S.D.N.Y. 2009) .................................................................37

*Shakima O. v. Westchester Cnty.*,
   2014 WL 521608 (S.D.N.Y. Feb. 10, 2014) ...................................................43, 44

*Shamin v. Siemens Indus., Inc.*,
   854 F. Supp. 2d 496 (N.D. Ill. 2012) ..................................................................17

*Stevens v. Tillman*,
    855 F.2d 394 (7th Cir. 1988) ........................................................13

*Sulieman v. Igbara*,
    599 F. Supp 3d 113 (E.D.N.Y. 2022) ...........................................2

*Sunder Energy, LLC v. Jackson*,
    305 A.3d 723 (Del. Ch. 2023)........................................................21

*Syeed v. Bloomberg L.P.*,
    568 F. Supp. 3d 314 (S.D.N.Y. 2021)..........................................29

*Tameny v. Atl. Richfield Co.*,
    610 P.2d 1330 (Cal. 1980) ......................................................39, 40

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
    864 F.3d 236 (2d Cir. 2017)........................................................8, 9

*Thomas v. U.S. Foods, Inc.*,
    2012 WL 5634847 (C.D. Cal. Nov. 14, 2012)..............................39

*Thomson v. Odyssey House*,
    2015 WL 5561209 (E.D.N.Y. Sept. 21, 2015) ............................34

*Tidwell v. Cnty. of Kern*,
    2017 WL 68146 (E.D. Cal. Jan. 5, 2017) ...............................41, 42

*Tipton v. Airport Terminal Servs., Inc.*,
    2019 WL 3035095 (C.D. Cal. Apr. 16, 2019) .............................39

*Torre v. Charter Commc'ns, Inc.*,
    493 F. Supp. 3d 276 (S.D.N.Y. 2020)................................34, 35, 36

*Townsend v. Benjamin Enters., Inc.*,
    679 F.3d 41 (2d Cir. 2012)............................................................32

*Trahanas v. Nw. Univ.*,
    64 F.4th 842 (7th Cir. 2023) ...............................................8, 12, 14, 15

*Turley v. ISG Lackawanna, Inc.*,
    774 F.3d 140 (2d Cir. 2014)..........................................................18

*U.S. Commodity Futures Trading Comm'n v. LaMarco*,
    2023 WL 7283629 (E.D.N.Y. Nov. 3, 2023)................................5

*United Mag. Co. v. Murdoch Mags. Distrib., Inc.*,
    146 F. Supp. 2d 385 (S.D.N.Y. 2001).........................................40

*Williams v. Lazer*,
    495 P.3d 93 (Nev. 2021) ...................................................................................13

*Williams v. Stuckly*,
    2023 WL 6213493 (Ill. App. Ct. Sept. 25, 2023) ...................................................19

**Statutes**

Cal. Code Regs. tit. 2, § 11008(d)(1)(C)..............................................................30

Cal. Gov't Code § 12940 ................................................................................33

N.Y. Exec. Law § 296(7) ...............................................................................33

N.Y. Exec. Law § 298-a ................................................................................27

N.Y.C. Admin. Code § 2–201 .............................................................................27

N.Y.C. Admin. Code § 8-107(7) ..........................................................................33

**Rules**

Federal Rule of Civil Procedure 9(g) ....................................................................14

Federal Rule of Civil Procedure 12(b)(6) .............................................................1, 5

Federal Rule of Civil Procedure 12(f) ...........................................................1, 5, 40, 42

Federal Rule of Evidence 401 ...........................................................................43

Federal Rule of Evidence 403...........................................................................43

**Other Authorities**

Henry Ward, *What I Tell Employees About Negative Press*, Medium (Oct. 20,
    2023), https://bit.ly/48pEXgC...........................................................................2, 11

eShares, Inc. d/b/a Carta, Inc. ("Carta") and Henry Ward respectfully submit this memorandum of law in support of their motion to dismiss Jerry O. Talton, III's Second Amended Counterclaim (the "SAC") with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and their motion to strike under Federal Rule of Civil Procedure 12(f).

## PRELIMINARY STATEMENT

Talton's rambling 92-page, 18-count SAC is the third legally deficient attempt by a vindictive former employee to rewrite history to disclaim any responsibility for his own outrageous behavior and to instead smear his former employer and its CEO. After Carta terminated Talton's employment for Cause and brought this lawsuit, Talton asserted numerous counterclaims—which he has now twice amended—painting himself as a crusader against all forms of supposed wrongdoing at Carta and training his sights on Ward, Carta's CEO, as the target of his fury. At its essence, Talton alleges that he blew the whistle on various misconduct and discrimination at Carta over the years, and that following his submission of a letter to Carta's Board of Directors on October 7, 2022, raising concerns about everything ranging from the treatment of women at Carta to Ward's management style to purported corporate malfeasance, he was retaliated against by being put on paid administrative leave and later terminated for Cause. In response to Carta's motion to dismiss and to strike his First Amended Counterclaim ("Talton's FAC"), rather than remedy his defective pleading, Talton doubles down on it—including by attempting to expand his retaliation claims against Carta and Ward by invoking multiple different states' laws (New York, California, and Illinois) to seek recovery for the same alleged harm, depending on what best suits his litigation position. As discussed below, the Court should reject Talton's gamesmanship and dismiss the SAC as a matter of law.

1

In addition to asserting contract claims and a purported claim for wrongful discharge under California law, as well as a dozen retaliation claims (simultaneously under Title VII, California, and New York city and state law), Talton alleges that Carta and Ward intentionally inflicted emotional distress, defamed him, and/or painted him in a false light, including by suing him after terminating him and through Ward's publication of a Medium blog post (the "Medium Post")[1] made almost a year after Carta filed its initial complaint. In Talton's telling, Carta's lawful efforts to recover its confidential and proprietary information, including surreptitious recordings Talton made of attorney-client privileged conversations, as well as to seek damages for Talton's extensive breaches of his contractual and fiduciary duties, is "defamatory" and purported "retaliation." Because Carta was within its rights both to terminate Talton for Cause and to seek legal redress for his egregious misconduct, and because nothing Carta or Ward did following Talton's termination constituted "retaliation" under applicable law, Talton's claims should be dismissed.

The SAC purports to assert three broad categories of claims: (1) tort claims sounding in defamation, false light, publication of private facts, and intentional infliction of emotional distress (IIED); (2) contract claims relating to Carta's stock plan and Talton's termination for Cause; and (3) retaliation claims—both before and after his employment with Carta terminated—resulting from Talton's self-styled crusade to protect Carta from itself. These claims fail. *First*, Talton's tort claims (Counts 13–16) are based in part on factual allegations in Carta's pleadings, all of which

---

[1] Henry Ward, *What I Tell Employees About Negative Press*, MEDIUM (Oct. 20, 2023), https://bit.ly/48pEXgC. The Court may properly consider the Medium Post at the motion to dismiss stage because it is "incorporated in the [SAC] by reference," and a "document[] upon which the [SAC] relies and which [is] integral to the [SAC]." *Sulieman v. Igbara*, 599 F. Supp 3d 113, 120 (E.D.N.Y. 2022) (cleaned up).

are absolutely privileged.[2]  Moreover, to the extent those claims rest on opinions contained in the Medium Post, those opinions cannot give rise to a claim for defamation.  ***Second***, Talton's contract claims (Counts 17–18) fail because Carta was entitled to terminate Talton, an at-will employee, for Cause, as is obvious from a six-page list of over a dozen ways Talton committed gross misconduct that was provided to Talton upon termination.  *See* ECF No. 29-5.  ***Third***, notwithstanding Talton's convoluted efforts to expand his alleged retaliation and wrongful discharge claims under Title VII, the NYCHRL, the NYSHRL and the FEHA (Counts 1–12), those claims fail to comply with statutory requirements for state and local relief and ignore the clear non-retaliatory bases for Talton's termination, including that he stole Carta documents and wrongfully recorded conversations with Carta executives and Board members, as well as attorney-client privileged conversations with Carta's General Counsel.

Carta again moves to strike several of the SAC's paragraphs (and portions thereof) because Talton may not divulge confidential Carta information—including Carta's attorney-client privileged information—in the SAC.  Nor can he use his SAC as a vehicle to improperly air irrelevant, scandalous, and inflammatory allegations about third parties and events about which he has no first-hand knowledge—some of which is privileged and all of which should be stricken.

---

[2] Count 15 (publication of private facts) should also be dismissed both because Talton fails to identify any "private" facts in Ward's October 2023 blog post, and because any such facts were already disclosed ten months earlier in Carta's public filings.

**BACKGROUND**

On December 23, 2022, Carta fired Talton for Cause because he breached fiduciary and contractual duties he owed Carta by, among other things, using and disclosing Carta's confidential and proprietary information in an unauthorized manner; surreptitiously recording attorney-client privileged conversations with Carta's General Counsel April Lindauer and other Carta executives and sharing that information with one or more unauthorized third parties, including a female former executive engaged in a mediation with Carta over her alleged employment-related claims; failing to cooperate with, and actively obstructing, Carta's reasonable investigatory and legal preservation requests; and improperly abusing the same electronic systems and information security infrastructure that he as Chief Technology Officer ("CTO") was charged with protecting. *See* ECF No. 29-5.[3]  On December 30, 2022, Carta commenced this action against Talton asserting six claims, including breach of contract, breach of fiduciary duty, and misappropriation of trade secrets.  ECF No. 1.

Carta filed its First Amended Complaint ("Carta's FAC") in May 2023.  In June 2023, Talton moved to dismiss some of Carta's claims, and in March 2024 the Court issued an opinion granting in part and denying in part his motion.  ECF No. 82.  Accordingly, Carta's claims for breach of contract, breach of fiduciary duty, and DTSA violations proceed in this action.

After Carta moved to dismiss the Talton FAC, ECF No. 73, Talton served his SAC, renewing his attack on Carta and Ward and attempting to repackage and expand his defective

---

[3] The Court may consider Carta's Termination Letter at the motion to dismiss stage.  *See supra* note 1.

claims under multiple states' laws.[4]  None of Talton's tactical maneuvering changes the fact that his SAC fails to state a claim as a matter of law.

## **ARGUMENT**

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not "contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" at the pleading stage.  *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  "Scandalous allegations are those which 'impugn the character' of the movant."  *U.S. Commodity Futures Trading Comm'n v. LaMarco*, 2023 WL 7283629, at *3 (E.D.N.Y. Nov. 3, 2023) (cleaned up).  To prevail on a motion to strike, the moving party must show that (1) "no evidence in support of the allegations would be admissible"; (2) "the allegations have no bearing on the issues in the case"; and (3) "to permit the allegations to stand would result in prejudice to the movant."  *Bryce Corp. v. XL Ins. Am., Inc.*, 2023 WL 9004039, at *7 (S.D.N.Y. Dec. 28, 2023) (cleaned up).  Courts routinely strike attorney-client privileged information an adverse party tries to include in a pleading because there is "no reason why [that] confidential information should remain accessible to the public."  *Neogenix Oncology, Inc. v. Gordon*, 2015 WL 5774171, at *12 (E.D.N.Y. Sept. 29, 2015); *see also New*

---

[4] On April 19, 2024, Talton filed his redacted SAC.  The parties have fully briefed Carta's proposed redactions to the SAC.  *See* ECF Nos. 90, 91, 95.

*York v. Egon Zehnder Int'l, Inc.*, 2022 WL 4072853, at *1 (S.D.N.Y. Sept. 2, 2022) ("a court may grant a motion to strike privileged material to prevent such material from being disclosed.").

Application of these standards mandates dismissal of Talton's claims and striking from his pleading multiple paragraphs and portions thereof containing scandalous, irrelevant, and, in many instances, attorney-client privileged material.

## I.    Talton's Tort Claims Should Be Dismissed

### A.    The Litigation Privilege Bars Talton's Claims Against Carta Based On Carta's Complaints In This Lawsuit

The SAC attempts to allege defamation, false light, publication of private facts, and IIED claims under Illinois law (Counts 13–16), based on Carta's Complaint, first filed in December 2022, and on the Medium Post published almost ten months later, which contained a link to Carta's Complaint (on the public docket). To the extent Counts 13-16 are based on Carta's Complaint, Talton cannot state a claim under Illinois law insofar as, by his own admission, he was a resident of New York, not Illinois, when the Complaint was filed. SAC ¶ 328.[5] Regardless, because factual allegations in Court pleadings are absolutely privileged regardless of which state's law applies, Talton's claims for defamation, IIED and false light must be dismissed. *GC Am. Inc. v. Hood*, 2022 WL 910556, at *6 (N.D. Ill. Mar. 29, 2022) (Illinois' litigation privilege bars claims for

---

[5] Talton alternatively suggests California law applies, notwithstanding that he was not a California resident when any of the allegedly defamatory statements were made and suffered no alleged harm there. However, even if California law *did* apply, the litigation privilege would mandate dismissal of his claims based on Carta's Complaint. *See, e.g.*, *MG Premium Ltd. v. Does*, 2023 WL 3432163, at *2 (C.D. Cal. Apr. 10, 2023) ("[C]ommunications with some relation to judicial proceedings are absolutely immune from tort liability by the litigation privilege. The litigation privilege bars all tort causes of action except a claim of malicious prosecution.") (cleaned up).

defamation, IIED, and false light). *See also Hirsch v. Kairey*, 2023 WL 5532732, at *4 (E.D.N.Y. Aug. 28, 2023) (same under New York law).[6]

The litigation privilege applies to all statements "made before, during, or after litigation" that "bear some relation to the subject in controversy." *Bedin v. Nw. Mem'l Hosp.*, 187 N.E. 3d 739, 749 (Ill. App. Ct. 2021) (cleaned up); *accord Kelly v. Albarino*, 485 F.3d 664, 666 (2d Cir. 2007). Talton focuses on four allegations in the original Complaint: (1) Talton "sen[t] and receiv[ed] . . . offensive, discriminatory and harassing messages"; (2) Talton engaged in "sexually harassing behavior in violation of Carta's anti-discrimination and anti-harassment policies";[7] (3) Talton "sen[t] and receiv[ed] messages that are offensive, harassing, discriminatory and a violation of Carta's policies and procedures"; and (4) Talton "abuse[d] Carta's network and information systems" by "sending and receiving hundreds of messages in violation of Carta's policies and procedures." SAC ¶¶ 329, 332, 352, 356. Talton does not (and cannot) dispute that the challenged statements are contained in Carta's pleadings. Indeed, he quotes repeatedly from the Complaint. Further, the purportedly defamatory statements are directly relevant to Carta's breach of fiduciary duty claim, which Talton did not move to dismiss. Carta's breach of fiduciary duty claim against Talton arises, in part, from Talton's sending and receiving of sexually explicit messages on Carta devices and circumventing Carta policies, which prohibit the use of Carta-issued devices for non-

---

[6] The litigation privilege is properly considered on a motion to dismiss. *See, e.g.*, *Portegys v. White*, 2023 WL 4400001, at *1 (Ill. App. Ct. July 7, 2023); *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 105–06 (S.D.N.Y. 2020).

[7] Although Carta amended its Complaint to remove its characterizations of Talton's highly graphic sexting, including that the sexting violated Carta's harassment and anti-discrimination policies, Carta's decision to withdraw those characterizations is *not* an admission of anything. At a minimum, Talton's sending and receiving of highly graphic sexual material on Carta-issued devices violated Carta's Handbook, which prohibits the use of Carta-issued devices for non-business purposes. *See* ECF No. 29-3 § VII.F.

business purposes. *See* ECF No. 29 ¶ 75. Accordingly, Carta's factual characterizations of Talton's misconduct cannot be defamatory as a matter of law. To the extent Counts 13–16 are based on statements in Carta's pleadings, those Counts should be dismissed for failure to state a claim.

## B. Talton's Defamation Claim Fails As A Matter Of Law

Talton's defamation claim (Count 13) should also be dismissed because he fails to plead facts to state a claim for relief. To state a claim for defamation, a plaintiff must allege that the defendant published a false factual assertion about the plaintiff. *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (setting forth elements of defamation claim under NY law); *Trahanas v. Nw. Univ.*, 64 F.4th 842, 858 (7th Cir. 2023) (setting forth elements of defamation claim under IL law). This Talton fails to do.

### i. Talton Fails To State A Defamation Claim Under New York Law Based On Carta's Allegations In Its Complaint

Talton fails to state a defamation claim under New York law based on the four statements set forth in Carta's Complaint (*see* SAC ¶¶ 329, 332, 352, 356) because each statement is substantially true.[8] Substantial truth is an absolute defense to defamation, and one which this Court may address on a motion to dismiss. *Nunes v. NBCUniversal Media, LLC*, 643 F. Supp. 3d 403, 413 (S.D.N.Y. 2022). "[A] statement is substantially true and not actionable if the published statement could have produced no worse an effect on the mind of a reader than the truth pertinent to the allegation." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 241–42 (2d Cir. 2017) (cleaned up); *Andrews v. At World Props., LLC*, 2023 WL 3939464, at *4 (Ill App. June

---

[8] New York law, not Illinois law, applies to Talton's defamation claim to the extent the claim rests on Carta filing its Complaint. Carta filed its Complaint on December 30, 2022. *See* ECF No. 1. Talton was a New York resident until March 5, 2023. *See* SAC ¶¶ 23, 328. Thus, there was no nexus between Talton and Illinois on December 30, 2022 when Carta filed its Complaint, and New York law must apply.

12, 2023) ("[T]ruth is an absolute defense to defamation, and only the 'substantial truth' is required for this defense. . . . [T]he question is one of law, and the matter may be raised in a motion to dismiss.") (cleaned up).[9]  A statement is substantially true where "the 'gist' or [the] 'sting' of the allegedly defamatory material is true." *Andrews*, 2023 WL 3939464, at *4; *see also Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991) ("Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified.") (cleaned up). "When a court interprets a publication in an action for defamation, the entire publication, as well as the circumstances of its issuance, must be considered in terms of its effect upon the ordinary reader." *Tannerite Sports*, 864 F.3d at 243 (cleaned up).

*First*, Talton does not dispute that he sent messages to, and received messages from "sexual and romantic partners" that "were captured by Carta's systems."  SAC ¶124.  Talton only challenges Carta's *characterization* of those messages in its Complaint as "offensive, discriminatory, and harassing" and as violations of Carta's "anti-discrimination and anti-harassment policies."  SAC ¶¶ 329, 332.  The characterization "would [not] have a different effect on the mind of the reader from that which the pleaded truth would have produced."  *Masson*, 501 U.S. at 517 (cleaned up); *Tannerite Sports*, 864 F.3d at 241–42.  And Talton's messages themselves justify the "substance, the gist, the sting" of Carta's characterizations.  *Masson*, 501 U.S. at 517 (cleaned up).

*Second*, Talton fails to identify how Carta's statements were false.  None of the reasons offered by Talton to support his assertions of falsity has merit.  *See* SAC ¶ 330.  To start, Talton alleges that Carta had no policies or procedures in place prohibiting texting during work hours,

---

[9] Although New York, not Illinois, law applies to Talton's claims based on allegations in Carta's Complaint, *see supra* note 8, the result is the same.

limiting employees' ability to discuss certain topics, or limiting employees' ability to communicate with non-employees.  *Id.*  This both misreads Carta's SAC and is inaccurate.

Carta alleged that Talton "[c]ircumvented and abused Carta's policies, including to engage in unauthorized sexting and to send and receive sexually explicit communications, including during work hours on Carta-issued devices."  ECF 29 ¶ 75(c).  "These sexually explicit messages . . . were stored on the Carta-issued laptops in Talton's possession."  *Id.* ¶ 58.  Carta's Handbook states that "[c]omputer, email and voice records and files systems are also considered property of Carta and should not be used for non-business purposes," and that "[a]ll electronic and telephone communications and information transmitted by, received from, or stored in our systems are the property of Carta and as such are to be used solely for job-related purposes and your use of it should not include the expectation of privacy."  ECF No. 29-3 § VII.F.  Further, "[t]o ensure that the use of electronic and telephone communications systems and business equipment is consistent with Carta's legitimate business interests, authorized management of Carta may monitor for the use of such equipment from time to time."  *Id.*  Thus, Carta's policies *do* prohibit employees from using Carta-issued devices for non-business purposes (like sending and receiving highly graphic pornography).

Talton's argument that his sexting did not violate any law, statute, or ordinance is irrelevant because nowhere do the challenged statements accuse him of doing so.  SAC ¶ 330.  Moreover, Talton's self-serving contention that sexting on Carta devices during Carta work hours was not "sexually harassing behavior in violation of Carta's anti-discrimination and anti-harassment policies (*id.* ¶ 329(2) (quoting ECF No. 1 ¶ 43) does not give rise to an inference of falsity.

To the contrary, Carta's harassment and discrimination policies ensure that Carta "provid[es] a work environment that is free from all forms of discrimination and conduct that can

be considered harassing, coercive, or disruptive, including harassment based on sex or any other legally protected class." ECF No. 29-3, § II.C.ii. Talton's graphic sexts on their face are highly inappropriate and certainly could create an "intimidating, hostile or offensive work environment" within the meaning of Carta's policy – a far cry from a falsehood.

Because the four statements included in Carta's pleadings with which Talton takes exception are substantially true, Talton fails to state a defamation claim, and Count 13 should be dismissed.

### ii.     Talton Fails To State A Defamation Claim Based On Ward's Blog Post Because The Blog Post Reflects Ward's Constitutionally Protected Opinions

In Count 13, Talton also fails to state a defamation claim under Illinois law based on the personal opinions Ward expressed in a blog post. Specifically, Talton alleges that, in the Medium Post, "Ward claimed '[Talton] was inappropriate with women and abused his position as CTO,'" and "referred to Talton as 'a misogynist and racist' and included a hyperlink to Carta's Complaint[.]" SAC ¶ 332; *See also* Henry Ward, *What I Tell Employees About Negative Press*, MEDIUM (Oct. 20, 2023), https://bit.ly/48pEXgC. But these four characterizations—that Talton (i) was inappropriate with women; (ii) abused his position as CTO; (iii) was a misogynist; and (iv) was a racist—are opinions in a personal blog post that cannot support a defamation claim.

To start, statements (i), (iii), and (iv) are not defamatory *per se* because they do not fit any of the four enumerated categories under Illinois law.[10] And even if they were, all four statements are constitutionally protected opinions. *See Rose v. Hollinger Int'l, Inc.*, 889 N.E.2d 644, 647 (Ill.

---

[10] Those categories are: "(1) words that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business." *HASelect Med. Receivables Litig. Fin. Fund Int'l SP v. Clark*, 2024 WL 1328839, at *5 (N.D. Ill. Mar. 28, 2024) (cleaned up).

App. Ct. 2008) ("[S]tatements that are defamatory *per se* may enjoy constitutional protection as expressions of opinion.") (cleaned up).

"To determine whether a statement is a fact or an opinion, the [Court] examines (1) whether the statement has a precise and readily understood meaning; (2) whether the statement is verifiable; and (3) whether the statement's literary or social context signals that it has factual content." *Evanger's Cat and Dog Food Co., Inc. v. Thixton*, 412 F. Supp. 3d 889, 897 (N.D. Ill. 2019). "The vaguer and more generalized the opinion, the more likely the opinion is non-actionable as a matter of law." *Trahanas*, 64 F.4th at 859 (cleaned up). For example, in *Hopewell v. Vitullo*, an Illinois appellate court concluded that an employer's statement that an employee was "fired because of incompetence" was a "nonactionable opinion" because "its broad scope renders it lacking the necessary detail for it to have a precise and readily understood meaning." 701 N.E.2d 99, 104 (Ill. App. Ct. 1998); *see also Trahanas*, 64 F.4th at 859 ("Because Schwulst's letter does not contain a verifiable factual statement about Trahanas, her defamation claim against him fails.").

Each of the four specific statements Talton identifies are non-actionable opinion:

**Inappropriate With Women:** This statement is pure opinion. It is also precisely the sort of overbroad and vague assertion which Illinois courts have concluded is not defamatory. *See, e.g.*, *Hopewell*, 701 N.E.2d at 104; *Milazzo v. Connolly*, 2017 WL 2466293, at *5 (Ill. App. Ct. June 6, 2017). It does not have "a precise and readily understood meaning." *Hopewell*, 701 N.E.2d at 104. And it is exactly the sort of "vague[] and more generalized . . . opinion" that is "non-actionable as a matter of law." *Trahanas*, 64 F.4th at 859 (cleaned up).

**Abused His Position As CTO:** This phrase "does not contain a verifiable factual statement about" Talton. *Trahanas*, 64 F.4th at 859. It is also "too broad, conclusory, and subjective to be objectively verifiable." *Hopewell*, 701 N.E.2d at 104; *see also Milazzo*, 2017 WL 2466293, at *5.

12

*Racist*:  Ward's opinion that Talton is a racist is likewise constitutionally protected.  *See, e.g.*, *Stevens v. Tillman*, 855 F.2d 394, 402 (7th Cir. 1988), *cert. denied,* 489 U.S. 1065 (1989). The Seventh Circuit explained in *Stevens* that "[a]ccusations of 'racism' are no longer 'obviously and naturally harmful.'" *Id.*  "In daily life 'racist' is hurled about so indiscriminately that it is no more than a verbal slap in the face; the target can slap back . . . [and] [i]t is not actionable unless it implies the existence of undisclosed, defamatory facts[.]"  *Id.*; *see also Jones v. Heartland Healthcare Ctr.*, 2017 WL 4570306, at *5 (C.D. Ill. July 5, 2017), *aff'd on other grounds sub nom. Jones v. Heartland Emp. Servs., LLC*, 721 F. App'x 547 (7th Cir. 2018) (dismissing defamation claim based on allegations that plaintiff was racist).

*Misogynist*:  Courts have frequently concluded that calling someone "sexist" is not defamatory.  *See, e.g.*, *Ramler v. Birkenhauer*, 684 S.W.3d 708, 712, 715 (Ky. Ct. App. 2024); *Doe #1 v. Syracuse Univ.*, 468 F. Supp. 3d 489, 511–12 (N.D.N.Y. 2020); *see also Williams v. Lazer*, 495 P.3d 93, 97 (Nev. 2021) (agreeing that statements that a party "was racist, sexist, unprofessional, and unethical is a non-actionable opinion" for anti-SLAPP purposes).  The same logic should apply to the word "misogynist."

Finally, with respect to statements (i), (iii), and (iv), Talton fails to plead any "special damages in accordance with the heightened pleading standard of Rule 9(g), which requires that where statements are not defamatory *per se*, special damages must be specifically stated.  *Thixton*, 412 F. Supp. 3d at 897.  Talton merely alleges that he "has suffered and will continue to suffer irreparable injury including, but not limited to, pain and suffering, extreme mental distress, humiliation, mental anguish, and emotional and psychological injuries, as well as economic losses and reputational and professional harm in amounts to be proven at trial."  SAC ¶ 347.  This boilerplate harm is not enough to satisfy Federal Rule of Civil Procedure 9(g).  *Cf. MFB Fertility,*

*Inc. v. Action Care Mobile Veterinary Clinic, LLC*, 2024 WL 1719347, at *9 (N.D. Ill. Apr. 22, 2024) (defamation *per quod* requires pleading of a "concrete loss," like "specific business opportunities that had been available to [plaintiff] earlier but that, following the defendants' statements, were available no more.") (cleaned up).

### C. Talton Fails To State An IIED Claim

Talton fails to state an IIED claim (Count 16) because the alleged conduct is neither extreme nor outrageous—essential elements of the claim. *Lynch Dev. Assocs., Inc. v. Johnson*, 219 A.D.3d 1328, 1330 (2d Dep't 2023) (setting forth IIED elements under New York law); *Trahanas*, 64 F.4th at 859 (setting forth IIED elements under Illinois law). The standard for extreme and outrageous conduct is extremely high. *Id.* ("Illinois sets a 'high bar' for intentional infliction of emotional distress claims.") (cleaned up). Talton's allegations fail to satisfy this exacting standard.

#### i. Talton Fails To State An IIED Claim Under New York Law Based On Carta's Allegations In Its Complaints[11]

Filing a meritorious lawsuit[12] is a far cry from allegations that *do* constitute extreme and outrageous conduct. *See, e.g.*, *Atherton v. 21 E. 92nd St. Corp.*, 149 A.D.2d 354 (1st Dep't 1989) (sustaining IIED claim where plaintiff's landlord allowed pipes to freeze and burst and ceiling to collapse, causing plaintiff to live without heat in the winter; cover the interior of apartment with soot; and carbon monoxide fumes to injure plaintiff and her newborn child); *Pavilon v. Kaferly*, 561 N.E.2d 1245, 1251–52 (Ill. App. Ct. 1990) (finding extreme and outrageous conduct where

---

[11] New York law governs Talton's IIED claim to the extent it is based on Carta's pleadings. *See supra* note 8.

[12] Talton did not move to dismiss Carta's breach of contract and breach of fiduciary duty claims, and the Court denied Talton's motion to dismiss Carta's DTSA claim. Carta's meritorious claims directly implicate many of the statements about which Talton now complains.

employer offered plaintiff money for sexual favors, fired her after she refused, and subsequently threatened to rape and kill her).[13]  Even filing *meritless* complaints is not sufficient to state an IIED claim.  *See, e.g.*, *O'Bradovich v. Village of Tuckahoe*, 325 F. Supp. 2d 413, 435 (S.D.N.Y. 2004) (explaining that "the mere commencement of a civil action, ***even if alleged to be for the purposes of harassment*** or intimidation, is insufficient to support" an IIED claim) (cleaned up—emphasis added); *Orrington v. Humana Dental Ins. Co.*, 2023 WL 2599929, at *9 (N.D. Ill. Mar. 22, 2023) ("Defendants' filing of a baseless complaint . . . would not, without more, be sufficiently extreme and outrageous conduct to state an IIED claim under Illinois law.") (cleaned up).  Notably, "[l]iability for emotional distress is even more constrained in the employment context." *Trahanas*, 64 F.4th at 860 (cleaned up).

For example, a New York appellate court dismissed an IIED claim where the defendants allegedly "made rude remarks to and about [the plaintiff], commenced two baseless lawsuits and filed a criminal complaint against her, and frightened her and her daughter by attempting to instigate her arrest." *Kaye v. Trump*, 58 A.D.3d 579, 579 (1st Dep't 2009).  Although the court did not condone the conduct, it concluded that it was "not so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (cleaned up).  Further, a recent Southern District of New York opinion surveyed IIED claims and noted that "[t]he New York Court of Appeals observed that, 'of the [IIED] claims considered by this Court, *every one* has failed because the alleged conduct was not sufficiently outrageous.'" *Flaherty v. Dixon*, 2023 WL 2051861, at *7 (S.D.N.Y. Feb. 16, 2023) (cleaned up).

---

[13] Although New York, not Illinois, law applies, the result is the same under Illinois law.  *See supra* note 8.

Notably, "in the rare instances where the New York courts have found the complaint sufficient to state a claim for [IIED] in the employment context, the claims have been accompanied by allegations of sex discrimination, and more significantly, battery." *Ahmed v. Gateway Grp. One*, 2012 WL 2061601, at *3 (E.D.N.Y. June 7, 2012) (cleaned up); *see also DiPietro v. GATX Corp.*, 167 N.E.3d 247, 260 (Ill. App. Ct. 2020) (explaining that "liability for a claim of intentional infliction of emotional distress in the employment context will only be found where the conduct is truly egregious."). Talton makes no such allegations.

Although he strategically avoids citing Carta's pleadings in Count 16, Talton alleges that Ward "publish[ed] private, personal out-of-context, distorted, and/or misquoted messages allegedly sent and received by Talton from consenting sexual and romantic partners[.]" SAC ¶ 396. A review of the Medium Post shows there is no publication of any of Talton's sexts. Logically, then, Talton refers to Ward's inclusion of a link to Carta's Complaint, the only place where Talton's sexts have been published. Thus, what Talton really alleges is that inclusion of a link to a 28-page, 107-paragraph complaint filed in this Court constitutes IIED. The Medium Post makes no mention of Talton's sexts at all. Providing readers a link to a publicly filed lawsuit is not extreme and outrageous conduct.

Because Talton's pleading falls well short of the high bar required for pleading outrageous conduct, Count 16 should be dismissed.

### ii. Talton Fails To State An IIED Claim Under Illinois Law Based On Ward's Blog Post

Talton also fails to state an IIED claim based on the rest of the Medium Post. Even if the post was "offensive" for including recitations of Ward's opinions about Talton and repeating factual allegations in Carta's pleadings, mere offense is insufficient. Talton delineates only two amorphous actions he contends constitute IIED: "(1) making false and defamatory statements

regarding Talton, his personal life, and his professional life through the publication and circulation of the Medium post with the intent to harass, humiliate, embarrass, blacklist, and retaliate against Talton for reporting a culture of discrimination, harassment, and retaliation at Carta; and (2) publishing private, personal out-of-context, distorted, and/or misquoted messages allegedly sent and received by Talton from consenting sexual and romantic partners from his personal iCloud account through Ward's publication and circulation of the Medium post in an effort to get ahead of another 'negative press' cycle." SAC ¶ 396. This is not enough under Illinois law.

In fact, "[i]n those cases where courts have found outrageous behavior, it is because defendants threatened to exercise their power to coerce plaintiffs into doing something they would not otherwise do." *Shamin v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 512 (N.D. Ill. 2012) (cleaned up). Talton does not allege that Ward threatened or coerced him. And even verbal abuse and insults are "not transformed into extreme and outrageous conduct simply by virtue of an employer-employee relationship." *Id.* at 512–13 (cleaned up). The Medium Post is precisely the "type of conduct [that] is not actionable." *Id.* at 513 (collecting cases where plaintiff was subjected to allegedly false accusations, threatened, and where defendants made public statements regarding plaintiffs); *see also Milazzo*, 2017 WL 2466293, at *7 (affirming dismissal of IIED claim where, although "defendants' negative rants [in a blog post] were certainly offensive, rude, annoying and, we assume, unwarranted, the nature of the criticisms against [plaintiff] was a far cry from being so unendurable to a reasonable person and so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.") (cleaned up). Accordingly, Count 16 should be dismissed for failure to state a claim.

### iii.     Talton's IIED Claim Impermissibly Duplicates His Defamation Claim

Talton's IIED claim should be dismissed for an independent reason: it impermissibly duplicates his defamation claim.  Under New York law, an IIED claim must be dismissed "where the conduct complained of falls well within the ambit of other traditional tort liability." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 159 (2d Cir. 2014) (cleaned up).  Similarly, "[a] number of Illinois courts have dismissed claims of [IIED] based upon defamation, on the ground that the conduct was not 'extreme and outrageous.'"  *Cook v. Winfrey*, 141 F.3d 322, 331–32 (7th Cir. 1998) (collecting cases); *see also McDowell v. J.B. Hunt Transport, Inc.*, 2004 WL 1878334, at *6 (N.D. Ill. Aug. 10, 2004) (explaining that "[a]llegations of defamation, however, do not rise to the level of extreme and outrageous conduct.").

Talton's IIED claim mirrors his defamation claim.  *See* SAC ¶¶ 329, 332, 396.  Talton tries to cast his IIED allegations more broadly—he does not quote paragraphs of Carta's pleadings like he does in his defamation counts—but the substance is identical.  Indeed, Talton himself concedes these IIED claims should be barred when he states that "Carta's outrageous, malicious, and reckless conduct includes, but is not limited to (1) ***making false and defamatory statements*** regarding Talton, his personal life, and his professional life[.]" *Id.* ¶ 396 (emphasis added). Moreover, Talton seeks damages for the same personal and economic injuries in both his defamation and IIED claims.  *See id.* ¶¶ 347, 399.  Accordingly, Count 16 should be dismissed as an impermissible attempt to state a defamation claim by another name.

### D.  Talton Fails To State A False Light Claim

"A claim for false light requires a plaintiff to plead and prove that (1) the plaintiff was placed in a false light before the public as a result of the defendants' actions; (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and (3) the

defendants acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for their truth or falsity." *Williams v. Stuckly*, 2023 WL 6213493, at *6 (Ill. App. Ct. Sept. 25, 2023). Talton fails to state a claim for at least two independent reasons.

*First*, Illinois law is clear that "where the plaintiff has failed to state a cause of action for defamation *per se*, the false light count must fail as well." *Otto v. Chi. Pub. Media, Inc.*, 2023 WL 5202903, at *4 (Ill. App. Ct. Aug. 11, 2023). Here, Talton's false light claim repeats his complaints about Carta's pleadings in this litigation and the Medium Post. *See* SAC ¶¶ 352, 356. Such pleadings fall far short of stating a false light claim. *See Orozco v. Orozco*, 2023 WL 2895750, at *4 (N.D. Ill. Apr. 11, 2023) ("The false light allegations are based on the same conduct as the defamation claim . . . . Because these allegations mirror those underlying the unsuccessful defamation claim, Joseph hasn't alleged that Daniel placed him in a false light, which means that this claim fails too.").

*Second*, the statements at issue are either substantially true or Ward's constitutionally protected opinion. As discussed above, *see* § I.B.i, the statements' substantial truth vitiates Talton's false light claim. Accordingly, Talton fails to state a false light claim, and Count 14 should be dismissed.

### E. Talton Fails to State A Publication Of Private Facts Claim

Talton also fails to state a claim for publication of private facts, which requires Talton to allege that (1) Carta and Ward gave publicity (2) to Talton's "private and not public life [] and that the matter made public was highly offensive" and (3) there was no legitimate public concern in the information disclosed. *People v. Austin*, 155 N.E.3d 439, 460 (Ill. 2019). Talton's publication of private facts claim relies solely on the Medium Post and dissemination thereof.

To start, Talton does not identify any specific private fact allegedly published in the Medium Post. Instead, Talton alleges that Ward included "a hyperlink to Carta's Complaint, republishing out-of-context, distorted, and/or misquoted portions of private, personal messages allegedly set and received by Talton from consenting sexual and romantic partners[.]" SAC ¶ 378. Because the Medium Post itself does not contain Talton's sexts, and because it does not point readers to any specific allegations in Carta's Complaint, Talton fails to identify a "private fact" that Ward published. All Talton alleges is that Ward republished Carta's publicly filed and widely available Complaint.

More fundamentally, the "private facts" at issue were first included in Carta's Complaint, filed on December 30, 2022, and included in Carta's FAC and SAC. These "private facts" regarding Talton's sending and receiving of highly graphic sexual messages were part of the public record in federal court filings for almost **ten months** by the time the Medium Post was published in October 2023. The public nature of these "private facts" fatally undermines Talton's claim, because "[t]here is no liability for disclosure of facts that are a matter of public record, and there is no liability for giving further publicity to what the plaintiff himself leaves open to the public eye." *Ameristar Casino E. Chi., LLC v. UNITE HERE Loc. 1*, 2016 WL 7339199, at *6 (N.D. Ill. Dec. 19, 2016) (cleaned up). Talton never sought to seal Carta's pleadings, and as Talton explained in the SAC, "national and industry-wide publications such as TechCrunch, Business Insider and Fortune" republished Carta's allegations. SAC ¶ 126. By the October 2023 publication of the Medium Post, the contents of an unsealed federal court filing were no longer "private facts."

Because Talton fails to allege that the Medium Post included private facts about Talton, he fails to state a claim for publication of private facts and Count 15 should be dismissed.

## II.    Talton's Contract Claims Should Be Dismissed

### A.  Talton Fails To State A Breach Of Contract Claim

Talton, an at-will employee, tries to transform a wrongful discharge claim (which New York law does not recognize) into a breach of contract claim.  Because he cannot plead that Carta breached any contractual obligation it owed him, Count 17 should be dismissed for failure to state a claim.

Under Delaware law, "[t]he elements of a claim for breach of contract are (i) a contractual obligation, (ii) a breach of that obligation by the defendant, and (iii) a causally related injury that warrants a remedy[.]"  *Sunder Energy, LLC v. Jackson*, 305 A.3d 723, 746 (Del. Ch. 2023) (cleaned up).  Talton identifies Carta's Amended and Restated Stock Plan (the "Stock Plan") as the contract at issue.  SAC ¶ 404.  The Stock Plan is attached to Carta's SAC as Exhibit F.  ECF No. 29-6.  Carta's Board administers the Stock Plan.  *Id.* § 2(a).  The Stock Plan grants Carta's Board 11 enumerated powers, including the power "[t]o construe and interpret the Plan and Stock Awards granted under it," and "[t]o settle all controversies regarding the Plan and Stock Awards granted under it."  *Id.* §§ 2(b)(ii), (iii).  The Stock Plan also provides that "[a]ll determinations, interpretations and constructions made by the Board in good faith will not be subject to review by any person and will be final, binding and conclusive on all persons."  *Id.* § 2(e).

Talton alleges that Carta breached Sections 2(b)(ii), 2(b)(iii), and 2(e) of the Stock Plan "by unreasonably, unjustly, unfairly and in bad faith" terminating him for Cause.  SAC ¶ 407.  He also alleges, in a conclusory manner, that "[p]ursuant to the express and unambiguous terms of the Stock Plan, Carta and its Board had an obligation to act in good faith in making all determinations, interpretations, and constructions of the terms of the Stock Plan."  *Id.* ¶ 406.  Finally, Talton contends that "[n]one of the grounds identified in Carta's termination letter to Talton rose to gross misconduct, as Carta's rationale is purely pretext for retaliation."  *Id.* ¶ 408.

But Count 17 is not really a contract claim.  Stripped of its contractual veneer, Count 17 is Talton's impermissible attempt to challenge his termination for Cause.  The Stock Plan states that if a Stock Plan Participant's "Continuous Service is terminated for Cause, the Option or SAR ***will terminate immediately upon such Participant's termination of Continuous Service***, and the Participant will be prohibited from exercising his or her Option or SAR from and after the date of such termination of Continuous Service."  ECF No. 29-6 § 5(k) (emphasis added).  When Carta terminated Talton for Cause on December 22, 2022, the Stock Plan automatically prohibited Talton from exercising his Option or SAR.  The Stock Plan operated precisely as intended.

Talton alleges that Carta breached Section 2(b)(ii) by failing to establish rules and regulations for the proper administration of the stock plan, and Section 2(b)(iii) by failing to settle all controversies regarding the Stock Plan and awards granted thereunder, SAC ¶ 407, but those assertions misread Section 2.  Section 2 grants Carta's Board the "power" to take certain actions, including those in Section 2(b)(ii).  ECF No. 29-6 § 2(b).  But it does not compel Carta's Board to take *any* affirmative action.  Thus, Talton cannot allege Carta breached Section 2(b).  Talton concedes as much, where he explains that Section 2(b) meant "Carta's Board of Directors and/or designated Committees[ ] had the ***power*** to determine how each Stock Award was granted and the provision of the award, to construe and interpret the Stock Plan, and to amend and revoke rules and regulations of the Stock Plan."  SAC ¶ 416 (emphasis added).  Recognizing Section 2(b) is a grant of power, and not an affirmative obligation, Talton fails to state a claim for breach of contract.

Talton also fails to allege how Section 2(b)'s grant of authority to Carta's Board extended a duty to him as a Stock Plan Participant.  And he does not allege how Carta's purported failure to abide by Section 2(b) caused him harm.  To state a breach of contract claim, a plaintiff must allege that he suffered damages "as a result" of the breach.  *See Levy Fam. Invs., LLC v. Oars + Alps*

*LLC*, 2022 WL 245532, at \*9 (Del. Ch. Jan. 27, 2022).  Talton contends that "[a]s a direct and proximate result of Carta's breach, Talton suffered extreme emotional and economic damages, including the loss of about 392,272 stock options and 98,784 RSUs."  SAC ¶ 410.  But he does not allege how Carta's breach of Section 2(b)—a mere recitation of the Board's authority—caused that harm.  Absent any connection between the contractual provisions he identifies and the harm he alleges, Talton fails to state a claim for breach of contract.

All that remains is Talton's gripe about Carta's decision to terminate him for Cause, a decision that Carta may make in its sole discretion.  *See* ECF No. 29-6 § 13(d).  At most, Talton alleges his desired conclusion – that Carta terminated him for Cause in retaliation for his protected activities – and that none of the 15 grounds in the Termination Letter "rose to gross misconduct." SAC ¶ 408; *cf.* ECF No. 29-5.  But Talton does not allege any nonconclusory facts about Carta's decision to terminate him for Cause, why the 15 grounds in the Termination Letter are not gross misconduct, or how the decision does not fall within Carta's discretion.  And even if he had, nothing about the decision implicated a breach of the Stock Plan.

Talton's foundering claim is not rescued by his incantation of Section 2(e) of the Stock Plan, which merely confirms the effect of a decision of Carta's Board: "All determinations, interpretations and constructions made by the Board in good faith will not be subject to review by any person and will be final, binding and conclusive on all persons."  ECF No. 29-6 § 2(e).  But Section 2(e) does not impose any duty on Carta's Board.  Accordingly, Talton fails to identify any obligation that Carta breached and, therefore, fails to state a breach of contract claim.

### B. Talton Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing

Finally, Talton fails to allege that Carta breached any implied covenant of good faith and fair dealing.  Delaware law is clear that:

the implied covenant does not establish a free-floating requirement that a party act in some morally commendable sense. Instead, good faith in the implied covenant context entails faithfulness to the scope, purpose, and terms of the parties' contract. Similarly, fair dealing here does not imply equitable behavior. The term fair is something of a misnomer here; it simply means actions consonant with the terms of the parties' agreement and its purpose. Put differently, any implied obligation must be consistent with the terms of the agreement as a whole.

*Miller v. HCP & Co.*, 2018 WL 656378, at *9 (Del. Ch. Feb. 1, 2018), *aff'd*, 194 A.3d 908 (Del. 2018) (cleaned up).

Talton's claim for breach of the implied covenant of good faith and fair dealing runs afoul of these principles: he cannot use the claim to bootstrap an amorphous "free-floating requirement" that Carta "act in some morally commendable sense." *Id.* Indeed, he alleges that "[t]he covenant of good faith and fair dealing presumes that when parties enter a contract, they do not expect to be treated arbitrarily [and] unreasonably." SAC ¶ 418. Talton also alleges that he had a "reasonable expectation" that Carta "would act in good faith" and "would not act in an arbitrary or unreasonable manner" in "fulfilling its obligations under the Stock Plan" and in determining whether to terminate Talton's employment for Cause. *Id.* ¶¶ 420–21. Underscoring the impropriety of his implied covenant claim, Talton alleges that "Carta's conduct, including but not limited to, Carta's arbitrary and unreasonable termination of Talton for 'Cause' constitutes a breach of the implied covenant of good faith and fair dealing, which resulted in damages to Talton." *Id.* ¶ 423.

This is not a claim for breach of the implied covenant of good faith and fair dealing; instead, this is an attempt to assert a breach of contract claim, where no contractual obligation exists and in contravention of the contract's clear terms. "The implied covenant is 'not an equitable remedy for rebalancing economic interests after events that could have been anticipated, but were not, that later adversely affected one party to a contract.'" *Cygnus Opportunity Fund, LLC v. Wash. Prime Grp., LLC*, 302 A.3d 430, 457 (Del. Ch. 2023) (quoting *Nemec v. Shrader*, 991 A.2d, 1120 1128 (Del. 2010)). Thus, courts may not use an implied covenant to re-write the parties' agreement and

should avoid implying a contractual obligation "when the contract could easily have been drafted to expressly provide for it." *Id.* (cleaned up); *see also Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017) ("The implied covenant is inherent in all contracts and is used to infer contract terms to handle developments or contract[] gaps that the asserting party pleads neither party anticipated.") (cleaned up).

Talton has not alleged, nor could he, that there is a contractual term needed to handle developments or gaps in the Stock Plan that neither Carta nor Talton anticipated. The Stock Plan provides that "[t]he determination that a termination of the Participant's Continuous Service is either for Cause or without Cause will be made by the Company, *in its sole discretion*." ECF No. 29-6 § 13(d) (emphasis added). There is no gap to fill in the Stock Plan and Count 18 should be dismissed.

## III.    Talton's Retaliation Claims Should Be Dismissed

Talton's retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII") (Counts 1, 2, and 3), the California Fair Employment and Housing Act (the "FEHA") (Counts 4, 5, and 6), the New York State Human Rights Law (the "NYSHRL") (Counts 8, 9, and 10), and the New York City Human Rights Law (the "NYCHRL") (Counts 11 and 12) should all be dismissed with prejudice for several reasons.

*First*, Talton cannot assert a claim under California law for the same harm he alleges in his claims under New York state law and New York city law. *See, e.g.*, *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) ("[I]t goes without saying that the courts can and should preclude double recovery by an individual.") (cleaned up). Nor can Talton allege that Carta rendered adverse employment decisions against him in New York and California at the same time. Talton alleges that he worked *in New York*, out of Carta's *New York office*, and that he supposedly suffered

25

retaliation *in New York*. *See, e.g.*, SAC ¶ 265. These facts cannot support a claim under California law and Talton's FEHA claims should be dismissed for that reason alone.

*Second*, Talton cannot assert a claim under New York state or city law for an alleged instance of retaliation that occurred nearly ten months after his employment in New York ended and nearly eight months after Talton relocated to Illinois. Because Talton was neither a resident of, nor an employee in, New York when the Medium Post was published, Talton fails to state a claim for purported "post-termination retaliation" under the NYSHRL or the NYCHRL.

*Third*, and independently, Talton fails to plead a prima facie case of retaliation under Title VII, the NYSHRL, the NYCHRL, or the FEHA. Talton alleges that, as a result of his allegedly protected conduct during his employment, including (1) his recording and disclosure of an attorney-client privileged conversation with Carta's General Counsel (the "Wrongful Recording"), and (2) his participation in an internal investigation directed by Carta's Board of Directors (the "Paul, Weiss Investigation"), Carta and/or Ward supposedly retaliated against Talton by terminating his employment for Cause, misrepresenting the circumstances of his administrative leave and termination, and filing this lawsuit (Counts 1, 3, 4, 5, 8, 9, and 11). Talton also alleges that, as a result of his allegedly protected conduct *after* his employment, including his deposition testimony in Emily Kramer's discrimination lawsuit, Carta and/or Ward supposedly retaliated against Talton by circulating the Medium Post (Counts 2 and 6). These Counts fail to state a prima facie claim for relief and should be dismissed with prejudice.

### A. Talton's FEHA Claims Should Be Dismissed

While asserting claims under New York state and local law for alleged instances of retaliation related to his employment *in New York*, Talton simultaneously seeks to benefit from California employment laws by asserting FEHA retaliation claims (Counts 4, 5, and 6). These

attempts fail because the FEHA does not apply extraterritorially. The leading case on this issue, *Campbell v. Arco Marine, Inc.,* observed that "[t]he repeated statements that the [FEHA] was enacted for the benefit *of the citizenry* of [California,] is persuasive indication of the Legislature's intent concerning the applicability of the FEHA." 42 Cal. App. 4th 1850, 1860 (Cal. Ct. App. 1996) (emphasis added). The court held that, "absent clearer evidence of legislative intent to do so than is contained in the language of the FEHA," applying the FEHA extraterritorially to protect non-California residents injured outside of California "would raise serious constitutional concerns" under the federal Commerce Clause, the Due Process Clause, and the Full Faith and Credit Clause. *Id.* at 1858–59; *see also N. Alaska Salmon Co. v. Pillsbury,* 162 P. 93, 94 (Cal. 1916) ("Although a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries, the presumption is that it did not intend to give its statutes any extraterritorial effect.").

Following *Campbell,* federal courts have repeatedly dismissed FEHA claims by non-California residents where the alleged injury occurred outside of California. *See, e.g., Owens v. Circassia Pharms., Inc.,* 2020 WL 10897905, at *2 (N.D. Tex. Apr. 16, 2020) ("[C]ourts have applied a presumption against applying FEHA and § 1102.5 of the California Labor Code extraterritorially."). For example, in *Ramos v. Molina Healthcare, Inc.,* 603 F. App'x 173, 177 (4th Cir. 2015), the United States Court of Appeals for the Fourth Circuit affirmed a district court's dismissal of plaintiff's claims under the FEHA because the plaintiff "did not indicate whether he lived or worked in California during his employment with [defendant] when the allegedly discriminatory, retaliatory, and otherwise wrongful conduct occurred" and the FEHA has "not been construed by California courts as applying extraterritorially." *Id.* at 177–78 (citing *Campbell,* 42 Cal. App. 4th at 1860). Talton cannot benefit from both California employment laws and New

27

York employment laws for the same alleged conduct, and Title VII clearly occupies the field—
and preempts—the application of a state's employment laws beyond its boundaries.

Talton alleges that he "was a citizen and resident of the State of New York during his
employment with Carta from August 14, 2018, to December 23, 2022." SAC ¶ 23. He further
alleges that, he "worked remotely from his New York residence and out of Carta's New York
office." *Id.* ¶ 119 n.13. Talton pleads only conclusory and inconsistent facts to assert that Carta
subjected him to an adverse employment action in California.

The FEHA provides that "employees located outside of California are not themselves
covered by the protections of the [FEHA] if the allegedly unlawful conduct did not occur in
California, or the allegedly unlawful conduct was not ratified by decision makers or participants
in unlawful conduct located in California." Cal. Code Regs. tit. 2, § 11008(d)(1)(C). Here, Talton
regurgitates the rule, alleging repeatedly—without more—that Carta rendered its supposedly
retaliatory employment decisions in California. *See, e.g.*, SAC ¶¶ 123, 141, 207. But "[a] pleading
that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'"
cannot survive a motion to dismiss. *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Indeed, in *Gonsalves v. Infosys Techs., LTD.*, the Northern District of California dismissed
a similarly conclusory FEHA claim. 2010 WL 1854146, at *6 (N.D. Cal. May 6, 2010). There,
the Ohio resident plaintiff alleged that he did some work in California and that the defendant "by
and through its executives, personnel and consultants in California instituted, ratified and affirmed
unlawful discriminatory, and retaliatory corporate policies" in California. *Id.* (cleaned up). The
court held those allegations insufficient to state an FEHA claim. So too here.

Talton also alleges that he had "a substantial, regular, and systematic connection to
California" because he supposedly worked there from February 2, 2019 to April 12, 2021 and for

an unspecified seven-week period in 2022, and that he allegedly supervised employees based in California. SAC ¶¶ 213–14. He further alleges that he "attended near-daily meetings with rank-and-file Carta employees and executives, including Ward, who lived and worked in California." *Id.* ¶ 214. Talton, however, does not allege that his FEHA retaliation claims arise out of any of these purported ties to California. Indeed, the alleged incidents of retaliation occurred no earlier than December 2022, after Talton's supposed seven-week stint in California. The key inquiry is whether the supposed injury occurred in California. *See Campbell,* 42 Cal. App. 4th 1858-59; *Gonsalves*, 2010 WL 1854146, at *6. Talton continually alleges that the purported "impact of Carta and Ward's retaliatory conduct was felt . . . by Talton in New York." SAC ¶ 295. Talton's conclusory allegations of a "systematic connection to California" are therefore irrelevant. SAC ¶ 213.

Finally, although Talton alleges that "[o]n December 23, 2022, Carta terminated Talton via correspondence . . . from Carta's San Francisco headquarters to Talton's New York residence," SAC ¶ 119 (citing ECF No. 29-5), a glance at the termination letter proves that it was, in fact, sent from a human resources officer in Salt Lake City, Utah.[14]  *See* ECF No. 29-5 at 1, 6. Thus, Talton fails to plead any nonconclusory facts to support a retaliation claim under the FEHA and the FEHA claims (Counts 4, 5, and 6) should be dismissed with prejudice.

**B. Talton's Post-Termination NYSHRL And NYCHRL Claims Should Be Dismissed**

In Counts 10 and 12, Talton asserts a claim of purported "post-termination retaliation," alleging that Carta and/or Ward supposedly retaliated against him under the NYSHRL and the NYCHRL by circulating the Medium Post on October 20, 2023, *after* Talton moved to Illinois on

---

[14] *See Amidax Trad. Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) ("[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true.").

March 5, 2023.  *See* SAC ¶¶ 292, 328.  "In order for a nonresident to invoke the protections of the NYSHRL and NYCHRL, [he] must show that the discriminatory act had an impact within the boundaries of the State and City, respectively."  *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 865 (S.D.N.Y. 2013).  "This is because these provisions invoke the State's police 'power to protect "inhabitants" and persons "within" the state' and 'those who work in the city.'"  *Kraiem v. JonesTrading Institutional Servs. LLC.*, 492 F. Supp. 3d 184, 198–99 (S.D.N.Y. 2020) (cleaned up).

Talton fails to allege plausibly that he suffered the impact of the Medium Post in New York because he concedes that he was an Illinois resident when it was published.  *See* SAC ¶ 328.  Talton alleges that prospective employers in New York had access to the Medium Post and that he "continues to seek employment in New York City, amongst other locations."  *Id.* ¶ 295.  But "[p]leading impact in New York City by unspecified future career prospects . . . represent[s]" an "impermissible broadening of the scope of" the NYSHRL and the NYCHRL.  *Kraiem*, 492 F. Supp. 3d at 199.  "Rather, to state a claim, 'the impact of the employment action must be felt *by the plaintiff in* NYC' or, with respect to the NYSHRL, New York State."  *Id.*  Any alleged harm to Talton in New York is at best "tangential" and not enough to satisfy the impact test.  *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021).  Further, Talton does not allege that Carta or Ward made any decision relating to the Medium Post in New York.  Because Talton does not allege that he resided in, worked in, or was present in New York when the Medium Post was published, Talton fails to state a claim for purported post-termination retaliation under the NYSHRL or the NYCHRL (Counts 10 and 12) and those claims should be dismissed with prejudice.

**C. The Retaliation Claims Should Be Dismissed For Failing To Allege A *Prima Facie* Case Of Retaliation**

Talton's retaliation claims should also be dismissed with prejudice for failure to state a claim on the merits. To state a prima facie Title VII retaliation claim, a plaintiff must show that: (1) "[he] was engaged in activity protected under anti-discrimination statutes"; (2) "Defendants were aware of Plaintiff's participation in the protected activity"; (3) "Defendants took adverse action against Plaintiff"; and (4) "there is a causal connection between Plaintiff's protected activity and the adverse action taken by Defendants." *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 101 (S.D.N.Y. 2023) (cleaned up).  The same pleading standard applies to NYSHRL, NYCHRL, and FEHA retaliation claims.  *See, e.g.*, *Dobryakov v. Brickhouse Food LLC*, 2024 WL 218441, at *4 (S.D.N.Y. Jan. 19, 2024) (NYSHRL); *Gruntz v. Cont'l Airlines, Inc.*, 2008 WL 11336169, at *3 (C.D. Cal. Apr. 7, 2008) (FEHA); *Mestecky v. N.Y.C. Dep't of Educ.*, 791 F. App'x 236, 239 (2d Cir. 2019) ("NYCHRL's retaliation provision is broader than Title VII's . . . . Nevertheless, we agree with the district court that [plaintiff's] NYCHRL claim fails for the same reasons as her Title VII and NYSHRL retaliation claims.").

Talton's quadruplicated retaliation claims (under Title VII, the FEHA, the NYSHRL, and the NYCHRL) fail to state a prima facie case for relief.  Counts 1, 3, 4, 5, 8, 9, and 11 fail to state a claim because Talton did not participate in a protected proceeding, and he did not suffer *any* retaliatory, adverse employment action.  Counts 2 and 6 fail to state a claim insofar as Talton fails to allege that his deposition testimony in Emily Kramer's lawsuit caused Carta and/or Ward to circulate the Medium Post.

> ### i.    Counts 1, 3, 4, 5, 8, 9, And 11 Fail To State A Prima Facie Case
>
> #### a)    Talton Did Not Participate In A Protected Proceeding

Talton fails to state a prima facie case of retaliation insofar as he alleges that he participated in a protected proceeding under Title VII, the FEHA, the NYSHRL, or the NYCHRL by (1) sending Heidi Johnson the Wrongful Recording (Counts 1, 5, and 9), and (2) participating in the Paul, Weiss Investigation (Counts 3, 4, 8, and 11).  SAC ¶¶ 108, 114, 189.  Neither allegation constitutes participation in a protected proceeding.

"Every Court of Appeals to have considered this issue squarely has held that participation in an internal employer investigation not connected with a formal EEOC proceeding does not qualify as protected activity under the [Title VII] participation clause."  *See Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 49 (2d Cir. 2012) (collecting cases).  This reasoning also applies to FEHA, NYSHRL, and NYCHRL retaliation claims.  *See, e.g.*, *McGrory v. Applied Signal Tech., Inc.*, 152 Cal. Rptr. 3d 154, 167 (Cal. Ct. App. 2013) (noting that the FEHA does not protect participation in a "private internal investigations by employers"); *Rumsey v. Ne. Health, Inc.*, 89 F. Supp. 3d 316, 333 (N.D.N.Y. 2015), *aff'd*, 634 F. App'x 318 (2d Cir 2016) (discussing Title VII and NYSHRL claims and noting that participation in an internal investigation is only a protected activity when it occurs "in conjunction with or in response to an EEOC charge"); *Hagan v. City of N.Y.*, 39 F. Supp. 3d 481, 501 (S.D.N.Y. 2014) (plaintiff's participation in "internal investigations does not fall under the 'participation' clause") (cleaned up).

Talton does not (and cannot) allege that either the Wrongful Recording or the Paul, Weiss Investigation constitute participation in an "official administrative proceeding by the [EEOC]" or a comparable state or local agency.[15]  *McGrory*, 152 Cal. Rptr. 3d at 167; *see Sanders v. Madison*

---

[15] Talton couches his participation in the Paul, Weiss Investigation as "opposition to [an] unlawful employment practice," but Talton's categorization of his claims cannot control their substance.

*Square Garden, L.P.*, 2007 WL 2254698, at *18–19 (S.D.N.Y. Aug. 6, 2007), *withdrawn in part on reconsideration on other grounds,* 525 F. Supp. 2d 364, 367 (S.D.N.Y. 2007) (holding that "plaintiff's personal investigation into her sexual harassment charge does not constitute 'participation' under [Title VII]"); *see also Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 747 (7th Cir. 2010) ("A purely internal investigation does not involve a 'charge,' or testimony, and neither is it a 'proceeding' or a 'hearing.'  To bring an internal investigation within the scope of [Title VII] we would have to rewrite the statute.").  Accordingly, neither the Wrongful Recording nor the Paul, Weiss Investigation fall within the scope of a protected employment activity.

Further, even if the Court finds that the Wrongful Recording or the Paul, Weiss Investigation constitute participation in a proceeding under Title VII (they do not), Talton fails to allege that he participated in any FEHA, NYSHRL, or NYCHRL proceeding for purposes of his state-law retaliation claims (Counts 4, 5, 8, 9, and 11).  The FEHA, the NYSHRL, and the NYCHRL only protect participation in proceedings that arise *under those respective statutes*.  *See* CAL. GOV'T CODE § 12940; N.Y. EXEC. LAW § 296(7); N.Y.C. ADMIN. CODE § 8-107(7).  Neither Johnson's employment action against Carta—which she commenced well after Talton provided her with the Wrongful Recording—nor the internal Paul, Weiss Investigation are NYSHRL, NYCHRL, or FEHA proceedings.  Indeed, Talton alleges that Johnson ultimately asserted employment claims under ***Montana*** law and Title VII, not the FEHA, the NYSHRL, or the NYCHRL.  SAC ¶ 149.  Accordingly, the plain language of the FEHA, the NYSHRL, and the NYCHRL defeats Talton's claims.

For these reasons, Counts 1, 3, 4, 5, 8, 9, and 11 should be dismissed with prejudice insofar as they allege that Talton participated in a protected proceeding through the Wrongful Recording or the Paul, Weiss Investigation under Title VII, the FEHA, the NYSHRL, and the NYCHRL.

33

### b)  Talton Fails To Plead Any Retaliatory, Adverse Employment Action

Talton avers that, because of his participation in allegedly protected employment activities, Carta terminated Talton for Cause, supposedly misrepresented the circumstances of his administrative leave and termination, and filed this lawsuit.  Talton fails to plead facts to establish that any of these actions were motivated by retaliatory animus and/or constitute adverse employment actions.

### c)  Talton's Termination For Cause Was Not Retaliatory

Talton fails to state a prima facie case of retaliation insofar as he alleges that his termination was caused by retaliatory animus.  Under Title VII and corresponding state and local laws, a plaintiff must show "that there was a causal connection between the protected activity and the employer's subsequent action."  *Kraiem v. JonesTrading Institutional Servs. LLC*, 571 F. Supp. 3d 53, 60 (S.D.N.Y. 2021) (cleaned up).  "In the retaliation context, the allegations must support the conclusion that the adverse action 'would not have occurred in the absence of the retaliatory motive.'"  *Thomson v. Odyssey House*, 2015 WL 5561209, at *20 (E.D.N.Y. Sept. 21, 2015), *aff'd*, 652 F. App'x 44 (2d Cir. 2016); *see also Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 289 (S.D.N.Y. 2020) ("[T]o state a claim, a plaintiff must allege that 'retaliation was a "but-for" cause of the employer's adverse action[s].'") (cleaned up).

Talton fails to plead facts supporting an inference of causation between his alleged participation in protected activities and his termination.  Talton alleges that he began opposing incidents of discrimination at Carta as early as November 19, 2020, when he messaged an HR employee to express concerns about a male colleague.  SAC ¶ 77.  Less than a month later, on December 30, 2020, Carta awarded him "218,157 'promotion stock options'" and "87,254 'tenure' stock options."  *Id.* ¶ 43; ECF No. 87-4.  He further alleges that on October 26 or 27, 2021, he

reported another male colleague to human resources. *Id.* ¶ 81. Less than two months after that, on December 13, 2021, Carta increased Talton's base salary by over $200,000 and allowed him to receive $3,981,000 in Restricted Stock Units each year. *Id.* ¶ 44; ECF No. 87-5. These facts do not support an inference of retaliation; rather, they show that Carta took no adverse action based on Talton's statements. *See Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 686 (S.D.N.Y. 2012) ("[T]he fact that she was promoted *after* she first engaged in protected activity fatally undermines her arguments.").

Indeed, Talton alleges that he complained to HR and other employees about Carta's culture at least 15 times in a two-year span with no adverse action. *See, e.g.*, SAC ¶¶ 77, 81, 83–88, 90–92, 94–96, 98. Although Talton's last alleged protected activity occurred on October 7, 2022— when Talton sent a letter to Carta's Board—there is no reasonable inference that Talton's letter *caused* Carta to terminate him where Carta had allegedly received multiple complaints from Talton over the years and granted him nearly $4 million in stock. *Id.* ¶¶ 43–44. These intervening acts "defeat the inference of causation where temporal proximity might otherwise suffice to raise the inference." *Joseph v. Marco Polo Network, Inc.*, 2010 WL 4513298, at *18 (S.D.N.Y. Nov. 10, 2010); *see also Lampros v. Banco do Brasil, S.A.*, 2012 WL 6021091, at *11 (S.D.N.Y. Dec. 4, 2012), *aff'd,* 538 F. App'x 113 (2d Cir. 2013) (noting that "the undisputed existence of a material intervening event" may "severely diminish[ ] any inference that may be suggested by this temporal proximity").

Further, Talton himself identifies one (of many) non-retaliatory reasons for his termination: he improperly recorded and sent an attorney-client privileged conversation with Carta's General

Counsel on September 27, 2022, in violation of his fiduciary duties. *Id.* ¶ 114.[16]  Carta learned of this recording on November 8, 2022.  *Id.*  Thereafter, Carta terminated Talton for his wrongful conduct.  *Id.* ¶ 119.  These allegations cannot support a reasonable inference that "retaliation was the 'but-for' cause of [Carta's] adverse action."  *Torre*, 493 F. Supp. 3d at 289 (cleaned up).

### d) Talton Has Not Plausibly Alleged That Carta Misrepresented The Terms of Talton's Administrative Leave Or Termination

Talton fails to state a prima face case of retaliation insofar as he alleges—without more—that Carta retaliated against him by supposedly "misrepresenting the circumstances surrounding [his] placement on administrative leave and [his] termination."  SAC ¶ 191.  Talton fails to allege any facts to suggest that the circumstances of his administrative leave or his termination were "internally misrepresent[ed]."  *Id.*  Indeed, Talton fails to identify any alleged misrepresentation that Carta supposedly made.  Allegations so "lacking in any supporting factual detail . . . are insufficient to satisfy [Talton's] pleading burden."  *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 229 (E.D.N.Y. 2016) (collecting cases).  Accordingly, Talton's "[v]ague" and "conclusory" allegation of an internal misrepresentation is insufficient to plead an adverse employment action.  *Henry v. NYC Health & Hosp. Corp.*, 18 F.Supp.3d 396, 405–06 (S.D.N.Y.2014).

### e) This Meritorious Lawsuit Is Not Retaliatory

Talton fails to plead a prima facie retaliation claim insofar as he alleges that Carta retaliated against him by suing him and including relevant factual allegations in its pleadings.  This Court rejected the argument that a meritorious lawsuit constitutes retaliation in *Schanfield v. Sojitz Corporation of America*, 663 F. Supp. 2d 305 (S.D.N.Y. 2009).  In *Schanfield*, the plaintiff alleged

---

[16] For a full recitation of Talton's gross misconduct that led to his termination for Cause, *see* ECF No. 29-5.

that the defendants retaliated against him by filing counterclaims against him in a lawsuit. *Id.* at

342. The court disagreed, writing:

> While I can conceive of cases in which being sued would qualify as an adverse
> employment action, in this case the counterclaims have merit; I can see nothing in
> Title VII or any other anti-discrimination statute that should prevent an employer
> from bringing a legitimate claim against a current or former employee simply
> because that employee has complained about what the employee believes to be
> discriminatory behavior.

*Id.* "In other words, only if a counterclaim is baseless can it constitute retaliation under

employment law." *Pawlowski v. Kitchen Expressions Inc.*, 2017 WL 10259773, at *5 (E.D.N.Y.

Dec. 15, 2017) (citation omitted).

Here, Carta's claims have substantial merit, as this Court confirmed in its March 29, 2024

Opinion and Order. ECF No. 82. Carta pled sufficient facts to support its well-founded claims of

breach of contract, breach of fiduciary duty, and misappropriation of trade secrets under the DTSA.

Indeed, Talton concedes in the SAC that he retains proprietary Carta materials in his possession

and that he secretly recorded at least one conversation with Carta's General Counsel. SAC ¶¶ 11–

12, 114. Employment discrimination laws cannot prohibit an employer from bringing a

meritorious lawsuit against its former employee, let alone an employee who has admitted to

surreptitiously recording his employer's General Counsel and purloining and wrongfully retaining

Company documents. *See id.*

Further, in alleging that factual statements in Carta's meritorious complaint constitute

actionable retaliation, Talton tries (and fails) to state a defamation claim by another name.

Statements in pleadings are protected by the absolute litigation privilege and cannot be defamatory

as a matter of law. *See supra* § I.A. The same principle counsels against finding actionable

retaliation here.

Accordingly, Counts 1, 3, 4, 5, 8, 9, and 11 should be dismissed with prejudice because (1) Talton fails to allege that he participated or assisted in a protected proceeding under Title VII, the FEHA, the NYSHRL, or the NYCHRL; and, most importantly, (2) Talton fails to allege that Carta retaliated against him by terminating him for Cause, supposedly misrepresenting the circumstances of Talton's administrative leave and termination, or filing this meritorious suit.

### ii.    *Counts 2 And 6 Fail To State A Prima Facie Case*

Talton fails to state a prima face case of "post-employment" retaliation in Counts 2 and 6 insofar as he alleges that his deposition testimony in Emily Kramer's lawsuit against Carta on January 23, 2023 (the "January Testimony") *caused* the Medium Post nearly nine months later, on October 20, 2023.  *See* SAC ¶¶ 147, 180–81.  "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close[.]'"  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (cleaned up).  Although the Second Circuit has "no firm outer limit to the temporal proximity required" to establish a causal relationship, courts routinely hold that a gap of more than three months is too long.  *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 2023 WL 2691622, at *25 (S.D.N.Y. Mar. 29, 2023) (cleaned up); *Kraiem*, 571 F. Supp. 3d at 60 (discussing NYSHRL, NYCHRL, and Title VII retaliation claims together and observing that "courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference") (cleaned up); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731–32 (9th Cir. 1986) (finding sufficient evidence of causation in a Title VII and FEHA case where adverse employment action occurred less than two months after the protected activity).  The nearly nine-month lapse between the January Testimony and the Medium Post defeats an inference of causation.  Accordingly,

Counts 2 and 6 should be dismissed with prejudice insofar as they rest on that purported causal connection.[17]

## IV.    Talton's Wrongful Discharge Claim Is Not Recognized Under New York Law And Should Be Dismissed

In Count 7, Talton "asserts a claim for termination in violation of public policy, sometimes referred to as a *Tameny* claim." *Thomas v. U.S. Foods, Inc.*, 2012 WL 5634847, at *2 (C.D. Cal. Nov. 14, 2012) (citing *Tameny v. Atl. Richfield Co.,* 610 P.2d 1330 (Cal. 1980)). "In *Tameny* [], the California Supreme Court carved out an exception to the at-will [employment] rule by recognizing a tort cause of action for wrongful terminations that violate public policy." *Duarte v. Stryker Sales Corp.*, 2016 WL 11743209, at *4 (C.D. Cal. May 9, 2016) (cleaned up). "To state a valid *Tameny* claim, the plaintiff must prove: (1) an employer-employee relationship; (2) plaintiff was terminated; (3) that plaintiff's termination was substantially motivated by a violation of public policy; and (4) the termination caused plaintiff harm." *Tipton v. Airport Terminal Servs., Inc.*, 2019 WL 3035095, at *5 (C.D. Cal. Apr. 16, 2019) (cleaned up).

New York law bars Talton's *Tameny* claim under a conflict of laws analysis. California courts recognize a tort claim for wrongful discharge in violation of public policy (a *Tameny* claim); New York courts do not. *Compare Duarte*, 2016 WL 11743209, at *4, *with Chimarev v. TD Waterhouse Inv. Servs., Inc.*, 280 F. Supp. 2d 208, 226 (S.D.N.Y. 2003), *aff'd,* 99 F. App'x 259 (2d Cir. 2004) ("New York does not recognize the tort of wrongful discharge . . . [and] there is no exception for firings that violate public policy."). Accordingly, there is an actual conflict between the laws of New York and the laws of California.

---

[17] The SAC periodically misstates the date the Medium Post was published. *Compare* SAC ¶ 181 (erroneously referencing "Ward's October 20, 2022, Medium post"), *with* ¶ 295 (correctly referencing "Ward's October 20, 2023, Medium post").

Where a conflict of laws exists, "[a] federal court exercising diversity jurisdiction must apply the choice of law analysis of the forum state." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006) (cleaned up). Under New York's choice of law rules, "the law of the jurisdiction where the tort occurred will generally apply," and the tort occurs at the place of injury. *Id.* (cleaned up); *see also United Mag. Co. v. Murdoch Mags. Distrib., Inc.*, 146 F. Supp. 2d 385, 413 (S.D.N.Y. 2001), *aff'd,* 279 F. App'x 14 (2d Cir. 2008) ("Where the defendants' conduct occurred in one place and the plaintiffs' injuries were suffered in another, the tort is considered to have occurred where the plaintiffs suffered injury.").

It is undisputed that Talton suffered the impact of his termination in New York, where he lived and worked. *See* SAC ¶ 119. New York law therefore governs Talton's employment-related tort claim. *See GlobalNet Financial.Com, Inc.,* 449 F.3d at 382. Because New York law does not recognize a common law cause of action for wrongful discharge, Talton fails to state a *Tameny* claim, and it should be dismissed. The *Tameny* claim should also be dismissed because, for the reasons set forth above, the SAC fails to allege that Talton's participation in any protected activity *caused* his termination, *i.e.*, that his termination was substantially motivated by a violation of public policy. Accordingly, the *Tameny* claim (Count 7) should be dismissed with prejudice.

## V.  The Court Should Strike Many Of Talton's "Factual" Allegations

Talton's SAC is replete with "characterizations, lectures, dissertations, unnecessary evidence and flights of literary fancy[.]" *Metro. Theatre Corp. v. Warner Bros. Pictures*, 12 F.R.D. 516, 517–18 (S.D.N.Y. 1952) (striking paragraphs in complaint that are "prolix, verbose and redundant" and that "contain[ ] many conclusory allegations."). The Court need not look further than paragraph 17, where Talton alleges that "unusual is standard for Henry Ward, who combines the ego and volatility of an Elon Musk, the effortless dissembling of a George Santos, and the vindictiveness of Don Corleone." SAC ¶ 17. This paragraph, and dozens more, are wholly

unrelated to Talton's tort, contract, and retaliation claims against Carta and Ward and are precisely the sorts of "allegations" courts apply Rule 12(f) to remedy. Moreover, Talton includes numerous highly confidential facts reflecting Carta's attorney-client privileged information. Carta has *not* waived its privilege, and Talton is *not* permitted to disclose that information in his SAC. Consistent with Rule 12(f), the Court should strike the paragraphs containing Carta's attorney-client privileged information identified below.

Courts also routinely strike factual allegations that are unrelated to the claims asserted in the pleading. *See, e.g.*, *Gatto v. Lackawanna Cnty.*, 2021 WL 4502261, at *11 (M.D. Pa. Sept. 30, 2021) (striking allegations where the plaintiff did not "allege how these [facts] may be related to any of the . . . claims contained in the complaint."); *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1259 (M.D. Fla. 2020) (striking allegations because they were irrelevant to claims asserted); *Tidwell v. Cnty. of Kern*, 2017 WL 68146, at *2–3 (E.D. Cal. Jan. 5, 2017) (striking inflammatory paragraphs of complaint where there was "no indication" they would "bear on any issue raised in this case."). Talton's factual allegations in paragraphs 17, 21, 53–62, 92, 105, 107, and 145–58 should be stricken because they are wholly unrelated to his tort, contract, and retaliation claims.

➢ **Paragraph 17**. Paragraph 17 – a work of "literary fancy" – compares Ward to Elon Musk, George Santos, and Don Corleone, and asserts that Ward "shows contempt for tiresome restraints like law and regulation." The entirety of Paragraph 17 is irrelevant to Talton's claims against Carta and Ward.

➢ **Paragraph 21**. In paragraph 21 Talton alleges that he "was thus turned from high-flyer to roadkill, a path well-known to whistleblowers, sadly proving Emerson's adage that 'if you strike the king you must kill him.'" Talton does not attempt to hide his literary fancy here. Paragraph 21 has no bearing on his claims and should be stricken.

➢ **Paragraphs 53–62**. Paragraphs 53 to 62 comprise Talton's gripes with Ward. But those gripes do not form the basis of Talton's claims against Ward. Thus, Talton's assertion that Carta's "politics were akin to a royal court, with everything flowing from the king's favor that was given and withdrawn unpredictably" and that "[d]ouble standards – one for Ward, another for everyone else – were rampant" are simply unconnected to the claims Talton asserts. SAC ¶¶ 55, 59.

➢ **Paragraph 93**.  Paragraph 93, which is currently entirely redacted, should be stricken both because it has no relation to any of Talton's claims and because it gratuitously attempts to embarrass Ward.

➢ **Paragraph 106**.  Paragraph 106 is entirely unrelated to Talton's claims against Carta or Ward.

➢ **Paragraphs 152–57.**  Paragraphs 145 to 157 purport to reflect Emily Kramer's dissatisfaction with Carta.  Yet again, Talton attempts to co-opt an unrelated party's grievances to buttress his vengeance campaign against Carta and Ward.  Worse still, Talton simply infuses his subjective feelings about Kramer.  *See, e.g.*, *id.* ¶ 153 (describing Kramer, in Talton's view, as "a straight shooter, creative and energetic, not prone to flattering."); *id.* ¶ 155 (describing Kramer as "not pliant, spoke her mind when she had something to say, and Ward disliked her presumption of equality.").  These "facts" are wholly unrelated to any of Talton's claims against Carta or Ward.

➢ **Paragraphs 158–60.**  Paragraphs 158 to 160 involve Suzanne Elovic's investigation regarding alleged complaints of harassment.  But Talton does not allege he was involved in the investigation or that Elovic's investigation in any way relates to his claims against Carta and Ward.

➢ **Paragraphs 161–66.**  Paragraphs 161 to 166 must be stricken because, as Talton concedes, these are alleged "other examples of discrimination and retaliation."  *Id.* at 43.  Put another way, these are rumors of other alleged misconduct at Carta about which Talton has no first-hand knowledge and which do not form the basis of any of his claims against Carta or ward.

The above paragraphs all comfortably satisfy the rigorous test for motions to strike under Rule 12(f).  ***First***, "no evidence in support of the allegations would be admissible." *Bryce Corp.*, 2023 WL 9004039, at *7.  Any evidence Talton may offer to support the allegations in these grousings would be excluded under Federal Rule of Evidence 401 (because the evidence has zero "tendency to make a fact more or less probable" and "the fact[s are] of [no] consequence in determining" Talton's claims against Carta and Ward) or Federal Rule of Evidence 403 (because even if the facts are relevant, their "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, [or] wasting time").

***Second***, as explained above, none of Talton's subjective feelings about Ward or Carta, or discussions of unrelated allegations of purported wrongdoing, have any "bearing on the issues in the case." *Bryce Corp.*, 2023 WL 9004039, at *7.  Talton alleges tort claims, contract claims, and

retaliation claims, none of which include elements relating to Ward's personality or management style or other, unrelated allegations of purported wrongdoing.

**Finally**, both Carta and Ward would suffer prejudice if these allegations were allowed to remain in Talton's SAC. Talton's exhaustive *ad hominem* attacks on Ward and second- and third-hand complaints about alleged Carta issues with which he was not personally involved are solely intended to embarrass, harass, or otherwise harm Carta and Ward's reputation.

Additionally, Paragraphs 5, 6, 17, 47, 56, 83, 92, 93, 95, 96, 110, 114, 147, 158, 162, 163, and 165 should be stricken because they contain highly confidential information protected by Carta's attorney-client privilege. As discussed more thoroughly in Carta's briefing in support of its motion to seal the SAC, *see* ECF No. 90 at 4–6; ECF No. 95 at 2–4, and in the attached Lindauer declaration, the information in these paragraphs is attorney-client privileged. And courts in the Second Circuit have often stricken such attorney-client privileged information from pleadings under Rule 12(f). *See, e.g.*, *Gordon*, 2015 WL 5774171, at *12; *see also Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*, 1997 WL 525482, at *6 (S.D.N.Y. Aug. 22, 1997) (striking portions of testimony because it reflected attorney-client privileged information); *Shakima O. v. Westchester Cnty.*, 2014 WL 521608, at *5–6 (S.D.N.Y. Feb. 10, 2014) (striking portions of complaint relying on attorney-client privileged correspondence).

For these reasons, Paragraphs 5, 6, 17, 47, 56, 83, 92, 93, 95, 96, 110, 114, 147, 158, 162, 163, and 165 should be stricken from Talton's SAC.

## CONCLUSION

Talton's convoluted, kitchen-sink approach to pleading his SAC has created a behemoth of overlapping, duplicative, and ill-conceived claims which fail to state a claim as a matter of law. In addition, his effort to publicly name and shame non-parties and to lob incendiary allegations at

Carta and Ward should be rejected, and this Court should strike the offensive, irrelevant,

scandalous and/or attorney-client privilege laden paragraphs identified above

Dated: New York, New York
       May 17, 2024

DECHERT LLP

By: */s/ Nicolle L. Jacoby*

Andrew J. Levander
Nicolle L. Jacoby
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
andrew.levander@dechert.com
nicolle.jacoby@dechert.com
Telephone:     (212) 698-3500
Facsimile:     (212) 698-3599

Christopher J. Merken
Julia M. Curley (admitted *Pro Hac Vice*)
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
christopher.merken@dechert.com
julia.curley@dechert.com
Telephone:     (215) 994-4000
Facsimile:     (215) 994-2222

***Attorneys for eShares, Inc. d/b/a Carta, Inc. and Henry Ward***

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on May 17, 2024, I had the foregoing document electronically filed using the CM/ECF system, and that the same was served on all counsel of record via CM/ECF.


*<u>/s/ Nicolle L. Jacoby</u>*
Nicolle L. Jacoby