# EXHIBIT D



Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
+1 212 698 3500  Main
+1 212 698 3599  Fax
www.dechert.com

**NICOLLE JACOBY**

Nicolle.Jacoby@dechert.com
+1 212 698 3820  Direct
+1 212 698 0470  Fax

August 16, 2024

**BY CM/ECF**

The Honorable Jessica G. L. Clarke
United States District Judge
Southern District of New York
500 Pearl Street, Room 1040
New York, NY 10007

Re:  *eShares, Inc. d/b/a Carta, Inc. v. Jerry O. Talton, III,* No. 1:22-cv-10987 (JGLC)

Dear Judge Clarke:

We represent Plaintiff/Counterclaim Defendant eShares, Inc. d/b/a Carta, Inc. ("Carta") in the above-captioned action. Pursuant to Local Civil Rule 37.2 and Section 4.k of this Court's Individual Rules and Practices in Civil Cases, Carta seeks to compel Defendant Jerry O. Talton, III's substantive responses to Carta's discovery requests.

On January 5, 2024, Talton served Responses and Objections (*see* **Exs. D, E**, and **F**) to Carta's First Set of Interrogatories, First Set of Requests for Production, and First Set of Requests for Admission (*see* **Exs. A, B**, and **C**), which Carta served on December 6, 2023.  On January 20, 2024, Carta sent Talton a deficiency letter, *see* **Ex. G**. Talton responded by letter on February 16, 2024, *see* **Ex. H**.  Thereafter, Counsel for Talton and Carta met and conferred four times—on March 18, March 27, June 13, and June 25, 2024—in repeated attempts to resolve Talton's deficiencies.  As part of the meet-and-confer process, Carta served amended RFPs and RFAs on Talton on June 6, 2024, *see* **Exs. I** and **J,** to which Talton responded on July 5, 2024, *see* **Exs. K** and **L**.  Carta sent Talton a follow-up deficiency letter on July 23, 2024, in another attempt to resolve the parties' disputes without judicial intervention, *see* **Ex. M**.  Unable to do so, this letter follows.

**Carta's Position**

### I.  Talton Must Properly Respond To Carta's Amended RFP Nos. 7, 9, and 13

Consistent with Section 4.k of this Court's Rules, Carta sought complete responses to RFP Nos. 7, 9, and 13.  Talton refused to respond to Carta's Amended RFP Nos. 7 and 13 and only partially responded to Amended RFP No. 9. Accordingly, Carta finds Talton's position insufficient.

Talton admitted in his Second Amended Counterclaim ("SAC") that, on November 8, 2022, he sent a transcript of an attorney-client privileged conversation with Carta's General Counsel, April Lindauer ("Lindauer"), to Heidi Johnson ("Johnson"), a former Carta employee, in connection with her mediation against Carta.  SAC ¶ 114.  Talton mistakenly copied Lindauer on that email, in which he also stated that the "[a]udio is now in DropBox," in reference to a DropBox where Talton presumably shared surreptitious recordings—and other confidential Carta documents—with Johnson. Talton has since produced that recording in discovery, but, in reliance on a purported joint defense agreement with Johnson (the "JDA"), Talton has refused to produce *any* other documents or communications with Johnson, *see* **Ex. K** at RFP Nos. 7 and 9, *even though Talton has placed his communications with Johnson directly at issue as the basis for his retaliation claims in the SAC*.

Talton produced a heavily redacted copy of the JDA on August 12, 2024, four months after Carta first requested it, *see* **Ex. N**.[1]  The JDA reflects a limited engagement, in which defense counsel agreed to "examine [Talton and Johnson's] potential legal claims against Carta and . . . help [them] prepare a letter to [Carta's Board of Directors]."

---

[1] Talton provides no basis for the redactions in the JDA, and he must therefore produce an unredacted copy.



The Honorable Jessica G. L. Clarke
August 16, 2024
Page 2

*Id.* at 2.  The JDA "does not include filing any case with the EEOC, California Department of Fair Employment and Housing, or litigation."  *Id.*  Moreover, as with any attorney-client relationship, the JDA does not protect communications between Talton and Johnson not involving an attorney and not "for the purpose of obtaining legal advice from the lawyer."  *United States v. Krug*, 868 F.3d 82, 87 (2d Cir. 2017) (cleaned up).  Talton alleges in the SAC that he communicated with Johnson not to obtain legal advice but to participate in Johnson's mediation with Carta by sending her a secret recording of a privileged conversation.  *See* SAC ¶ 117.  The joint defense privilege is therefore inapplicable.[2]  *See Riverkeeper, Inc. v. Coeymans Recycling Ctr. LLC*, 2024 WL 1053507, at *13 (N.D.N.Y. Mar. 11, 2024) (noting that the joint defense privilege "does not apply merely because two parties share the same attorney or because one party has an interest in a litigation involving another party") (cleaned up).  Accordingly, Talton's refusal to produce documents responsive to Amended RFP Nos. 7 and 9 is baseless.  Carta requires all responsive documents and communications—including the DropBox link referenced in Talton's November 8, 2022 email and all documents contained therein—both to probe Talton's alleged "protected" participation in Johnson's claims against Carta and to understand the extent of Talton's fiduciary and contractual breaches.

In Amended RFP No. 13, Carta seeks documents and communications between nine individuals regarding Talton's work at Carta because Carta reasonably believes that Talton communicated with those individuals concerning his misconduct as Carta's CTO.  For example, Talton admitted that he sent one of these individuals a message on July 12, 2022 stating, "yesterday I had to upgrade the OS on my laptops and it was a pain, so I just made [Carta] overnight me two brand new computers.  It's nice to be the CTO."  **Ex. F** at RFA No. 9.  Talton communicated with another such individual who cautioned him not to back up his phone to Carta's networks in order to shield his communications from discovery.  Notwithstanding the relevance of these communications to Carta's fiduciary and contractual claims against Talton, Talton has refused to produce any such documents or communications, claiming that the requests are made "to embarrass and humiliate [him] and [the] non-parties."  *See* **Ex. K** at RFP No. 13.  Talton cannot avoid production of relevant materials on that false basis.  Accordingly, Carta respectfully requests that the Court order Talton to produce documents responsive to Amended RFP Nos. 7, 9, and 13.

   **II.**     **Talton Must Properly Answer Carta's Interrogatory Nos. 2, 5, and 6**

Consistent with Section 4.k of this Court's Rules, Carta sought complete responses to Interrogatory Nos. 2, 5, and 6.  Talton offered only partial, qualified, and evasive responses to those interrogatories.  Accordingly, Carta finds Talton's position insufficient.

In Interrogatory No. 2, Carta asked Talton to identify "each and every electronic device owned and/or controlled and/or accessed by" him during the Relevant Time Period.  **Ex. D** at 4.  Talton identified several devices, *see id.* at 4–5, but qualified his response by stating that these "were the devices he accessed between July 13, 2022 and the present."  **Ex. H** at 1.  The Relevant Time Period is August 14, 2018 to present,[3] and Talton's refusal to identify additional devices he owned and/or controlled and/or accessed between August 14, 2018 and July 13, 2022 is therefore unjustified.  To determine the scope of Talton's theft of Carta's confidential and attorney-client privileged information, Carta must know the full universe of electronic devices Talton owned, controlled, and accessed during his employment with Carta.  Accordingly, Carta and Ward respectfully request that the Court order Talton to supplement his response to Interrogatory No. 2.

In Interrogatory No. 5, Carta asked Talton to identify, ***without qualification***, "each Person with whom [he] . . . shared Carta-related Documents and materials."  **Ex. D** at 9.  Rather than answering directly, Talton evasively qualified his answer: "As Talton interprets this Interrogatory, Talton did not share any . . . Carta-related document or material obtained during his tenure at Carta with any third-party [*sic*] ***that did not already have access to same during the***

---

[2] Even if the joint defense privilege was conceivably applicable, it would yield to the crime fraud exception, given Talton's blatant breach of his fiduciary duties.  *See In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 180 F. Supp. 3d 273, 282-83 (S.D.N.Y. 2016) (noting that the crime fraud exception "covers . . . an alleged breach of fiduciary duty") (cleaned up).

[3] The Parties agreed to narrow the Relevant Time Period for *document* discovery to November 2, 2020 to present, but made no corresponding stipulation for written discovery.



The Honorable Jessica G. L. Clarke
August 16, 2024
Page 3

*course and scope of their employment at Carta*." *Id.* (emphasis added). In his response to Carta's deficiency letter, Talton further hedged, stating that he "did not share" any Carta documents "with anyone outside the course and scope of his employment with Carta." *See* **Ex. H** at 2. And in his supplemental response to Interrogatory No. 5, Talton again evaded the question, stating that Johnson "had access to" certain Carta documents. *See* **Ex. O** at 14. By way of example only, it is beyond dispute that Talton shared a DropBox folder with Johnson containing at least one recording of an attorney-client privileged conversation with Lindauer. Talton must directly identify each and every other person with whom he shared Carta documents and materials via a DropBox folder or otherwise. This information is relevant and material to Carta's claims against Talton. Accordingly, Carta respectfully requests that the Court order Talton to answer Interrogatory No. 5 without qualification.

Interrogatory No. 6 asked Talton to identify which specific Carta-related documents and materials Talton shared with each Person identified in response to Interrogatory No. 5. *See* **Ex. D** at 9. Talton refused to do so. *See id.* at 10. As an initial matter, Talton should have identified the contents of the DropBox he shared with Johnson (and, presumably, others). His failure to do so, despite referencing that DropBox in an email to Lindauer, is ludicrous. Accordingly, Carta respectfully requests that the Court order Talton to answer Interrogatory No. 6.

### III. Talton Must Properly Respond To Carta's RFA Nos. 7, 8, 16, 17, 20, 23, and 24

Consistent with Section 4.k of this Court's Rules, Carta sought Talton's complete responses to RFA Nos. 7, 8, 16, 17, 20, 23, and 24. Talton offered only partial, qualified, and evasive responses to those RFAs. Accordingly, Carta finds Talton's position insufficient.

Talton improperly asserted lack of knowledge or information as a reason for failing to admit or deny RFA Nos. 7, 8, 16, 17, 23, and 24, *see* **Ex. L**, despite the fact that these RFAs relate to Talton's own conduct. *See, e.g.*, *Freydl v. Meringolo*, 2011 WL 2566079, at *3 (S.D.N.Y. June 16, 2011) ("All the plaintiff's requests for admission at issue here are directed to the defendant and within the defendant's knowledge, as it is apparent from their language: 'You discussed the fact,' 'you had actual knowledge,' 'You asked,' . . . ."). Specifically, RFA Nos. 7 and 8 ask Talton to admit that *he* deleted or caused to be deleted his Carta-assigned local user accounts on Carta-issued laptops; RFA No. 16 asks Talton to admit that *he* sent and/or received sexually explicit messages from and/or on his Carta-issued laptop; RFA No. 17 asks Talton to admit that, excluding October 11, 2022, *he* never downloaded 100 documents at a single time from Carta's Google Drive; and RFA Nos. 23 and 24 ask Talton to admit that *he* received and acknowledged that he read Carta's Employee Handbook and Carta's Device Policy. As is apparent from the requests, these RFAs are directed to Talton and within Talton's personal knowledge. In addition, with respect to RFA Nos. 7 and 8, Talton was the Chief *Technology* Officer of Carta; he, more than anyone else, must know "whether local user accounts on Carta-issued devices were Carta-assigned or user created" and he must be able to admit, without qualification, whether he deleted or caused to be deleted his Carta-assigned local user accounts.

In RFA No. 20, Carta asked Talton to admit that he "deleted or caused to be deleted information from Carta-issued devices while [he was] subject to document preservation obligations and litigation holds." **Ex. L** at 8. Talton's response was, essentially, that he does not know what a litigation hold is. *See id.* But Carta has produced at least two document preservation notices and litigation holds to which Talton was subject. *See* CARTA0000457; CARTA0000667. And Talton's own document production confirms that Talton understood his obligations under Carta's legal holds. *See* TALTO001258–59. And even if Talton was uncertain, Talton's counsel surely understands legal holds and Rule 36 requires that, before responding to an RFA, "a party has to ask [his] counsel, and if [his] counsel knows the answer, [he] need[s] to use that information to admit or deny the RFA." *New Mexico ex rel. Balderas v. Real Estate Law Ctr., P.C.*, 405 F. Supp. 3d 1233, 1262 (D.N.M. 2019) (cleaned up).

Carta thus respectfully requests that the Court order Talton to properly respond to RFA Nos. 7, 8, 16, 17, 20, 23, and 24.

### Talton's Position

#### I. Carta Seeks the Production of Privileged, Irrelevant, and Harassing Materials



The Honorable Jessica G. L. Clarke
August 16, 2024
Page 4

After serving an egregiously overly broad, harassing, and unreasonable First Set of Production Requests to Talton, Carta amended RFP Nos. 7, 9, and 13 following various discussions between counsel. However, Carta's Amended RFP Nos. 7, 9, and 13 did not cure Carta's abuses of the discovery process. Amended RFP Nos. 7, 9, and 13 remain overly broad in scope, harassing, irrelevant and immaterial to the parties' claims, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, as currently phrased, Amended RFP Nos. 7 and 9 seek the production of documents protected by privilege.

Carta misrepresents Talton's position regarding the applicability of privilege to communications and documents sought in Amended RFP Nos. 7 and 9. Talton and Johnson were jointly represented by McAllister Olivarius from September 10, 2022 (*See* **Ex. N**) until Johnson formally terminated the relationship on February 20, 2023.[4] [5] Talton does not claim that the privilege applies to the November 8, 2022 correspondence between him, Johnson, and Lindauer, nor does he claim that the privilege applies to documents uploaded to the DropBox identified in that correspondence. Additionally, Talton does not claim that the privilege applies to communications before or after his and Johnson's joint representation by McAllister Olivarius (though these communications may not be discoverable on some other basis). Rather, as set forth below, the attorney-client/joint representation privilege applies to communications between Talton and Johnson that (1) include or copy counsel; (2) reference, discuss, assess, or evaluate communications or meetings they had with counsel including legal strategy relating to their joint claims against Carta; or (3) were exchanged at the request of counsel.

As set forth in the September 10, 2022 Engagement Letter (the "Agreement"), Talton and Johnson were jointly represented by McAllister Olivarius to address their potential legal claims stemming from their employment with Carta and to prepare a letter to Carta's Board setting out criticisms of Ward's behavior and potential legal claims. (**Ex. N**, ¶ 2).[6] Communications between joint clients and their counsel are privileged communications not subject to production as they were made in confidence and in furtherance of the joint attorney-client relationship. *See SEC v. Rayat*, 2023 U.S. Dist. LEXIS 127649, *5-6, 14-5 (S.D.N.Y. July 24, 2023). This privilege cannot be waived by one joint client. *See Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd.*, 2006 U.S. Dist. LEXIS 69127, at *3 (S.D.N.Y. Sep. 27, 2006) (citations omitted). All clients must join in the waiver of the attorney-client privilege. *Id.* As Talton and Johnson have not waived privilege as to these communications, the privilege remains in place and Talton cannot produce same. Additionally, this Court has recognized that communications made between joint clients can be protected by privilege if they were made at the direction of the attorney or in furtherance of the joint representation. *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 211 (S.D.N.Y. 2009) (citing *Jordan (Bermuda) Investment Co. v. Hunter Green Investments Ltd.*, 2005 U.S. Dist. LEXIS 3424, at *1 (S.D.N.Y. March 4, 2005).

Whether or not these communications are privileged cannot be adequately addressed in this letter motion. Talton respectfully requests that this Court permit the parties to brief this issue fully. Talton also requests that the Court permit Plaintiff to produce a privilege log and submit any privileged document for an *in-camera* inspection. *See Renner v. Chase Manhattan Bank*, 2001 U.S. Dist. LEXIS 9766, at *12 (S.D.N.Y. July 11, 2001) (citing cases) (recognizing that an *in-camera* review is appropriate to determine the application of privilege).

As to Amended RFP No. 13, Talton maintains that it is overly broad in scope, harassing, irrelevant, immaterial, unduly burdensome, and not reasonably calculated to the discovery of admissible evidence. Carta has not reasonably explained how correspondence between Talton and these nine individuals "regarding or relating to Carta and/or Henry Ward" are narrowly tailored and reasonably related to the issues currently before the Court. Talton reasonably

---

[4] Contrary to Carta's implication that Talton improperly withheld the Agreement for four months, Carta did not serve a formal request for same until June 28, 2024 in its Second Document Production Request. In his July 31, 2024 response, Talton formally advised that will provide the Agreement. The Agreement was provided to counsel on August 12, 2024.

[5] Unsurprisingly, Carta did not question the Agreement's redactions prior to drafting this correspondence. The other terms of Talton and Johnson's engagement with McAllister Olivarius are protected by the attorney-client privilege, attorney-work product, or not relevant to the issues before the Court.

[6] The terms and scope of a joint representation need not be set forth in writing and can be implied or modified verbally. *SEC v. Rayat*, No. 21-cv-4777 (LJL), 2023 U.S. Dist. LEXIS 127649, at *14-15 (S.D.N.Y. July 24, 2023).



The Honorable Jessica G. L. Clarke
August 16, 2024
Page 5

believes that Carta is targeting these nine individuals in an effort to further harass and intimidate Talton. Thus, Talton requests that the Court deny Carta's request for a supplemental response to Amended RFP No. 13.

## II.  Talton Sufficiently Responded to Interrogatory Nos. 2, 5, and 6

Talton sufficiently responded to Interrogatory Nos. 2, 5, and 6. In Interrogatory No. 2, Carta requested that Talton identify, without limitation, all electronic devices Talton owned, controlled, or accessed from August 14, 2018 to the present. As set forth in the SAC, the alleged misconduct that forms the basis of Carta's claims against Talton stem from conduct that began on July 13, 2022. *See* ECF No. 29, ¶ 48. Carta has not alleged, nor has it produced any documentation or obtained testimony evidencing wrongful conduct prior to this date. Therefore, Interrogatory No. 2 is overly broad in scope and time, harassing, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information that pre-dates July 13, 2022. Talton respectfully requests that the Court deny Carta's request for a supplemental answer to Interrogatory No. 2.

Interrogatory No. 5 seeks the identity of any person Talton "shared Carta-related Documents and materials." In both his initial and supplemental response to Interrogatory No. 5, Talton objected on the basis that the Interrogatory requires him to determine or define what constitutes "Carta Confidential Information." In his supplemental response, Talton identified what information he shared and to whom it was shared, asserting that such actions constituted protected activities under Title VII and state law. Finally, the supplemental response concludes "Talton *has not otherwise shared or distributed Carta-related documents or materials*." *See* **Ex. O** at 14 (emphasis added). Accordingly, Talton has sufficiently responded to Interrogatory No. 5 and requests that the Court deny Carta's motion to compel a more complete answer.

Interrogatory 6 asks Talton to identify "specific Carta-related Documents and materials" he shared with the individuals identified in Interrogatory No 5. Talton, in response, stated that "*all documents responsive to this interrogatory will be provided* with [his] Initial Disclosure and/or Response to Carta's Requests for Production." *See* **Ex. O** at 14 (emphasis added). *See Volt Elec. NYC Corp. v. A.M.E., Inc.*, 2020 U.S. Dist. LEXIS 202873, at *3 (S.D.N.Y. Oct. 30, 2020) (citing Fed. R. Civ. P. 33(d)). Carta's assertion that Talton has "refused" to identify or provide documents responsive to this interrogatory is false, as is Carta's baseless, harassing, and defamatory allegation that Talton distributed the contents of a DropBox to "others." Talton respectfully requests that the Court deny Carta's request for a better answer to Interrogatory 6.

## III.  Talton Sufficiently Responded to RFA Nos. 7, 8, 16, 17, 20, 23, and 24

Talton sufficiently responded to Carta's RFA Nos. 7, 8, 16, 17, 23, and 24. This Court has recognized that a party is permitted to assert an inability to admit or deny a request for admission so long as the party sets forth in detail the reasons why. *See Hamilton v. Kerik*, 2002 U.S. Dist. LEXIS 24194, *15 (S.D.N.Y. Dec. 10, 2002). Talton's responses do not contain boilerplate objections or non-responses. In response to each of the disputed RFAs, Talton identifies the specific basis for his inability to admit or deny. Talton must not be mandated to admit or deny a Request for Admission simply because Carta is displeased with Talton's rationale for his inability to admit or deny Carta's RFAs.

Regarding RFA No. 20, Talton objected to same on the basis that the phrase "document preservation obligations" and "litigation holds" were not defined by Carta in First or Amended First Set of Requests for Admissions. During the parties' subsequent discussions, Carta and its counsel failed to define these phrases to permit Talton to adequately respond to this Request despite repeated requests by Talton. Rather, Carta opted to waste time and resources litigating this issue. Talton maintains that these terms are vague and ambiguous and, therefore, cannot adequately respond to same.

*[Signature page follows]*



The Honorable Jessica G. L. Clarke
August 16, 2024
Page 6

Sincerely,

*/s/ Nicolle L. Jacoby*
Nicolle L Jacoby


CC: All Counsel of Record (by CM/ECF)