# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X
eShares, Inc. d/b/a Carta, Inc.,                       :
                                                       :
                    *Plaintiff*,                       :        Civil Action No.: 1:22-cv-10987
                                                       :
            v.                                         :        Hon. Jessica G. L. Clarke
                                                       :
Jerry O. Talton, III                                   :
                                                       :
                    *Defendant*.                       :
                                                       :
------------------------------------------------------ X       **ORAL ARGUMENT REQUESTED**
                                                       :
------------------------------------------------------ X
Jerry O. Talton, III,                                  :
                                                       :
                    *Counterclaim Plaintiff*,          :
                                                       :
            v.                                         :
                                                       :
eShares, Inc. d/b/a/ Carta, Inc., and                  :
Henry Ward,                                            :
                    *Counterclaim Defendants*.         :
                                                       :
                                                       :
_____               X


**ESHARES, INC. D/B/A CARTA, INC. AND HENRY WARD'S ANSWERING BRIEF
IN OPPOSITION TO TALTON'S ASSERTION OF THE
<u>COMMON-INTEREST DOCTRINE</u>**

# TABLE OF CONTENTS

**Page**

**Factual & Procedural Background** ........................................................................................... 1

**Legal Standard** ........................................................................................................................ 5

**Argument** ................................................................................................................................ 6

    I.    Talton Failed To Establish The Common-Interest Doctrine Applies Because There Is No Common Enterprise Or Identical Legal Strategy ................................................. 7

    II.    Talton Has Waived Any Privilege By Placing Communications With Johnson At Issue In His Retaliation Counterclaim .......................................................................... 11

    III.    Any Privilege Between Talton And Johnson Must Yield To The Crime-Fraud Exception. ....................................................................................................................... 12

    IV.    The Work Product Doctrine Does Not Protect Talton's Documents ................................ 15

    V.    Numerous Communications Without Counsel Are Not Privileged And Others With Third Parties Waive Any Privilege. ............................................................................... 20

        A.    Communications Between Talton And Johnson With No Lawyers Present Must Be Produced ............................................................................................................. 20

        B.    Communications With Emily Kramer's Lawyers Must Be Produced ......................... 21

        C.    Communications With Third Parties Must Be Produced ............................................ 23

**Conclusion** ........................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*,
    57 N.E.3d 30 (N.Y. 2016) ........................................................................7, 8

*Beach v. Touradji Cap. Mgmt. LP*,
    142 A.D.3d 442 (1st Dep't 2016) ..........................................................13

*Bowne of N.Y.C., Inc. v. AmBase Corp.*,
    150 F.R.D. 465 (S.D.N.Y. 1993) .............................................................11

*In re Buspirone Antitrust Litig.*,
    208 F.R.D. 516 (S.D.N.Y. 2002) .............................................................11

*C.D.S. Inc. v. Zetler*,
    2016 WL 11651898 (S.D.N.Y. Dec. 14, 2016) .......................................13

*In re County of Erie*,
    473 F.3d 413 (2d Cir. 2007)......................................................................6

*E.E.O.C. v. Johnson & Higgins, Inc.*,
    1998 WL 778369 (S.D.N.Y. Nov. 6, 1998) ..............................................11

*Egiazaryn v. Zalmayev*,
    290 F.R.D. 421 (S.D.N.Y. 2013) .............................................................15

*Giuffre v. Dershowitz*,
    2022 WL 1471032 (S.D.N.Y. May 10, 2022) .........................................24

*GLD3, LLC v. Albra*,
    2024 WL 4471672 (S.D.N.Y. Oct. 11, 2024) ....................................16, 17

*Gray v. Deloitte LLP*,
    2019 WL 12520100 (N.D. Ga. Feb. 13, 2019),
    *aff'd*, 849 F. App'x 843 (11th Cir. 2021).........................................14, 19

*In re Grand Jury Subpoena Duces Tecum*,
    798 F.2d 32 (2d Cir. 1986)........................................................................13

*Hayden v. IBM Corp.*,
    2023 WL 4622914 (S.D.N.Y. July 14, 2023) .....................................7, 10

*Homeland Ins. Co. v. Indep. Health Ass'n, Inc.*,
    2024 WL 4308312 (W.D.N.Y. Sept. 26, 2024) ...................................7, 24

*Laughlin v. Metro. Wash. Airports Auth.*,
 149 F.3d 253 (4th Cir. 1998) ........................................................................14, 19

*In re Lifetrade Litig.*,
 2022 WL 3644357 (S.D.N.Y. Aug. 24, 2022) ................................................16, 17

*Lugosch v. Congel*,
 219 F.R.D. 220 (N.D.N.Y. 2003) ...................................................................7, 10

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
 180 F. Supp. 3d 273 (S.D.N.Y. 2016),
 *reconsideration denied*, 2016 WL 2605247 (S.D.N.Y. Apr. 29, 2016)...........13, 15

*Monterey Bay Military Hous., LLC v. Ambac Assurance Corp.*,
 2023 WL 315072 (S.D.N.Y. Jan. 19, 2023) ...........................................................6

*Nat'l Cong. for Puerto Rican Rights v. City of N.Y.*,
 194 F.R.D. 105 (S.D.N.Y. 2000) .........................................................................17

*Nesselrotte v. Allegheny Energy, Inc.*,
 615 F. Supp. 2d 397 (W.D. Pa. 2009)..............................................................14, 19

*In re N.Y.C. Asbestos Litig.*,
 109 A.D.3d 7 (1st Dep't 2013) .............................................................................13

*In re Richard Roe, Inc.*,
 68 F.3d 38 (2d Cir. 1995)......................................................................................12

*Riverkeeper, Inc. v. Coeymans Recycling Ctr. LLC*,
 2024 WL 1053507 (N.D.N.Y. Mar. 11, 2024) .....................................................10

*S.E.C. v. Alderson*,
 390 F. Supp. 3d 470 (S.D.N.Y. 2019)...................................................................18

*S.E.C. v. NIR Grp., LLC*,
 283 F.R.D. 127 (E.D.N.Y. 2012)..........................................................................16

*S.E.C. v. Rayat*,
 2023 WL 4706074 (S.D.N.Y. July 24, 2023) .......................................................23

*Schaeffler v. United States*,
 806 F.3d 34 (2d Cir. 2015)..................................................................................5, 6

*Spencer-Smith v. Ehrlich*,
 2024 WL 4416581 (S.D.N.Y. Oct. 4, 2024) .........................................................23

*Telx-N.Y., LLC v. 60 Hudson Owner LLC*,
 174 A.D.3d 435 (1st Dep't 2019) ...........................................................................8

*United States v. Ackert*,
   169 F.3d 136 (2d Cir. 1999)...........................................................................23

*United States v. Adlman*,
   134 F.3d 1194 (2d Cir. 1998)....................................................................16, 18

*United States v. Costanzo*,
   2024 WL 2046053 (S.D.N.Y. May 8, 2024) ..........................................6, 12, 13

*United States v. Schwimmer*,
   892 F.2d 237 (2d Cir. 1989), ..........................................................................5

*United States v. Zolin*,
   491 U.S. 554 (1989).......................................................................................12

*Varughese v. Mt. Sinai Med. Ctr.*,
   2014 WL 349698 (S.D.N.Y. Jan. 31, 2014) ....................................................21

*In re von Bulow*,
   828 F.2d 94 (2d Cir. 1987)..............................................................................11

*von Bulow by Auersperg v. von Bulow*,
   811 F.2d 136 (2d Cir. 1987)..............................................................................6

*Weil Ceramics & Glass, Inc. v. Work*,
   110 F.R.D. 500 (E.D.N.Y. 1986) .....................................................................21

## Statutes & Rules

CAL. PENAL CODE § 632 .........................................................................................6

FED. R. CIV. P. 26(b)(3) ........................................................................................19

eShares, Inc. d/b/a Carta, Inc. ("Carta") and Henry Ward ("Ward", and together with Carta, the "Company") respectfully submit this answering brief in opposition to Jerry O. Talton, III's ("Talton") assertion of the application of the common-interest doctrine to shield from discovery documents and communications between himself, Heidi Johnson, and lawyers at McAllister Olivarius ("McO"), ECF No. 132, (the "Motion").

## Factual & Procedural Background

While serving as its Chief Technology Officer, Talton breached his fiduciary and contractual duties to Carta by misappropriating its confidential information, secretly recording multiple executives, then using and disclosing the recordings and other highly confidential and attorney-client privileged information to third parties, including Heidi Johnson, a former Carta executive suing Carta.  In response, Talton asserts that he was engaged in "protected activity" in assisting Johnson, as well as another former Carta employee, Emily Kramer, in pursuing their paydays against Carta, and that Carta unlawfully retaliated against him for doing so.  Accordingly, Talton's communications with Johnson, and other third parties suing Carta (including Kramer), both with and without the involvement of his lawyers at McO, go to the heart of Carta's claims as well as Talton's counterclaims.

Astonishingly, while Talton proclaims that everything he did was protected activity vis-a-vis Johnson (and Kramer), he brandishes the so-called co-client/common interest privilege that he claims exists between himself and Johnson as both a sword and a shield, seeking to hide from discovery the very communications and conduct he claims evidences his protected activity.  He does this even with regard to communications *solely between himself and Johnson*, as well as with respect to communications that involve Kramer's lawyers and other third parties.  Because acceptance of Talton's position would flout the rules of discovery and deprive Carta of material

evidence that goes to the heart of its claims and defenses, this Court should reject Talton's abuse of the common interest or "co-client" privilege, and compel him to produce all of his communications with and concerning Johnson and Kramer (and Kramer's counsel), as well as all communications with McO made pursuant to any so-called joint or co-client privilege. Should the Court decline to do so based on this submission, the Company respectfully requests that the Court conduct an *in camera* inspection to determine which, if any of the thousands of documents Talton seeks to shield from discovery, are indeed privileged pursuant to any of the theories he articulates.

### Factual Background

Before his termination for Cause on December 23, 2022, Talton downloaded hundreds of highly sensitive Carta files. Compl. ¶¶ 50–53.[1] These files comprised Carta's trade secrets, attorney-client privileged information, sensitive personnel and financial information for every Carta employee, and other sensitive internal Carta files. *See id.*[2] Talton also produced in discovery 39 secret audio and/or video recordings, including 10 recordings he made of confidential workplace conversations with multiple Carta executives based in California, Jacoby Decl. ¶¶ 3–6[3], in violation of the California Invasion of Privacy Act ("CIPA").[4] Talton shared many of these documents and secret recordings with Johnson, a former Carta employee pursuing individual claims against Carta. He did so while he was employed by Carta and in breach of his contractual

---

[1] References to "Compl. ¶ __" refer to Carta's Second Amended Complaint, ECF No. 29.

[2] Although discovery is still underway, the documents Talton has produced to date include, without limitation, (i) an Excel spreadsheet tracking Carta employees' equity grants and the equity they held in Carta; (ii) attorney-client privileged meeting minutes; and (iii) a 98-page, five-year presentation reflecting Carta's growth, revenue projections, and business strategy.

[3] References to the "Jacoby Decl. ¶ __" refer to the declaration of Nicolle L. Jacoby dated November 11, 2024, and filed concurrently with this memorandum of law (the "Jacoby Declaration"). References to an "Ex." in connection with the Jacoby Declaration refer to the exhibit attached to the Jacoby Declaration.

[4] Carta has sought leave to amend its Complaint to assert CIPA claims against Talton in connection with Talton's production of these recordings. *See* ECF No. 123.

and fiduciary duties through a shared Dropbox folder, facilitated by his lawyers at McO.  *See* **Ex. A** at 21–31.  Indeed, the Dropbox folder was marked "Privileged," highlighting Talton's (and his counsel's) attempt to manufacture privilege over the dissemination of documents he stole from Carta.  *See id.* at 21.[5]

On November 8, 2022, Talton directly shared one of his surreptitious recordings of April Lindauer (Carta's General Counsel) with Johnson during a confidential mediation between Johnson and Carta at which Johnson was attempting to extract a substantial monetary settlement from Carta.  Compl. ¶ 37.  Talton was on administrative leave at the time, but still employed by Carta and owing Carta fiduciary duties.  *See id.* ¶¶ 38–39.  Talton did not sign a mediation confidentiality undertaking and did not inform the mediator (or Carta, which would never have consented to his participation) that he would be a shadow participant in the confidential mediation.  *See* **Ex. B** at Admission Nos. 17–18.  Carta only discovered Talton's involvement on behalf of, and support to, an adverse litigation party because Talton inadvertently copied Lindauer on his email to Johnson and her counsel, McO (who was also Talton's counsel).  Compl. ¶ 36.

On December 30, 2022, Carta sued Talton for, among other things, breach of contract and breach of fiduciary duty based, in part, on his illicit disclosure of highly confidential and, in some instances, attorney-client privileged Carta documents to Johnson and his clandestine assistance to Johnson (and others, including Kramer) in litigating against Carta while serving as Carta's CTO.  ECF No. 1.  Talton's counterclaim rests largely on his support of Johnson in her quest to extract money from Carta.  *See, e.g.*, ECF No. 88 at 29 ("Talton Helps Johnson with Her Discrimination

---

[5] Talton has since conceded that he does not "claim that the privilege applies to documents uploaded to the DropBox[.]"  ECF No. 113 at 4.

and Retaliation Claims Against Carta.").[6]  Most of Talton's retaliation claims hinge on his support of Johnson's claims against Carta or his complaints to the Company about its alleged treatment of Johnson.  *See id.* ¶¶ 171, 179, 189, 202, 219, 260, 275, 304.

Based on Carta's affirmative contract and fiduciary duty claims, and Talton's retaliation claims, the Company has requested documents and communications between Talton and Johnson to understand the scope of (1) the Carta documents and information that Talton, in violation of his contractual and fiduciary duties, stole and passed to Johnson, and other third parties including Kramer, to aid in their efforts to extract money from Carta, and (2) the purported support Talton provided to Johnson which forms the basis of his retaliation claims.  *See, e.g.*, **Ex. C** at Request Nos. 2, 4–7, 9, and 11; **Ex. D** at Request Nos. 1, 3, 34, and 38.  In response, Talton has asserted a "joint defense", "common interest", or "co-client/joint-client" privilege between himself and Johnson,[7] and refused to produce responsive documents and communications on that basis.  *See, e.g.*, **Ex. E** at General Objection 1, Response Nos. 2, 4–7, 9, and 11; **Ex. F** at General Objection 1, Response No. 3.

After months of back and forth, Talton produced an almost-completely redacted version of a joint engagement letter between Talton and Johnson.  *See* ECF No. 132-1 at 7–22.[8]  The unredacted portions of the letter state that Talton and Johnson "jointly asked [McO] to (1) examine your potential legal claims against Carta and (2) help you prepare a letter to the Board setting out your criticisms of Ward's behavior, including any legal claims that are relevant."  *Id.* at 9, ¶ 2.  The

---

[6] The Company has moved to dismiss Talton's Second Amended Counterclaim in its entirety and reincorporates by reference its arguments that Talton has failed to state retaliation claims as a matter of law.  *See* ECF Nos. 100, 110.

[7] Talton imprecisely and interchangeably asserts these privileges.  For the reasons in footnote 9, the Company refers to them collectively as the "common interest doctrine."

[8] The version of the joint engagement letter that Talton attached to his declaration has been selectively un-redacted as compared to the version Talton sent to Carta in August 2024.

letter further states that "this engagement does not include filing any case with the EEOC, California Department of Fair Employment and Housing, or litigation. Should you wish to engage us in a further capacity, we will be happy to discuss new terms at that stage." *Id.* at 9, ¶ 3. McO, Johnson, and Talton signed the letter between September 10 and 12, 2022. *Id.* at 20–22. Johnson terminated McO on or around February 20, 2023. *Id.* at 4, ¶ 11.

During the September 5, 2024 discovery conference, the Court explained that "[c]ommunications between Johnson and Talton alone seem clearly not to be privileged" and ordered Talton to produce a privilege log identifying documents and communications over which Talton was asserting the common-interest privilege. ECF No. 118 at 13:15-22. The Court made clear that "I would expect that that privilege log would not include communications just between Talton and Johnson or communications between Talton and Johnson where counsel just happens to be cc'd. You know, these need to be communications that were, that are, or would otherwise be either work product or attorney-client privileged communications." *Id.* at 13:22-14:5. After being ordered by this Court to do so, ECF No. 125, Talton belatedly served a document-by-document privilege log on October 3, 2024. ECF No. 132-3.

## **Legal Standard**[9]

"The joint defense privilege, more properly identified as the 'common interest rule,' has been described as 'an extension of the attorney client privilege.'" *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989). "Only those communications made in the course of an ongoing

---

[9] The Motion refers to the relationship between Talton and Johnson as a co-client relationship. *See generally* Motion at 9–12. The Company agrees that "[f]ederal courts often use inconsistent terminology to describe situations in which multiple clients are represented by the same attorney." *Id.* at 10 n.5. Although the co-client privilege and the common-interest doctrine are nominally different, *cf. id.* at 10 n.4, the substantive analysis regarding the common interest that co-clients and common interest participants must share is identical. *See id.* at 11–12 (citing common-interest privilege cases for legal standard). Accordingly, the Company analyzes Talton's privilege assertion under the common-interest doctrine, which is among the doctrines that Talton asserted in his discovery responses. *See* **Ex. E** at General Objection 1, Response Nos. 2, 4–7, 9, and 11; **Ex. F** at General Objection 1, Response No. 1.

common enterprise and intended to further the enterprise are protected." *Id.* "As in all claims of privilege arising out of the attorney-client relationship, a claim resting on the common interest rule requires a showing that the communication in question was given in confidence and that the client reasonably understood it to be so given." *Id.* at 244. "The dispositive issue is, therefore, whether [the parties' common interest] was of a sufficient legal character to prevent a waiver by the sharing of those communications." *Schaeffler v. United States*, 806 F.3d 34, 40–41 (2d Cir. 2015). "To be protected, the 'predominant purpose of the communication' must be 'to render or solicit legal advice.'" *United States v. Costanzo*, 2024 WL 2046053, at *1 (S.D.N.Y. May 8, 2024) (quoting *In re County of Erie*, 473 F.3d 413, 420 (2d Cir. 2007)).

"The party invoking the doctrine must make this showing based on competent evidence, usually through the admission of affidavits, deposition testimony or other admissible evidence." *Monterey Bay Military Hous., LLC v. Ambac Assurance Corp.*, 2023 WL 315072, at *8 (S.D.N.Y. Jan. 19, 2023) (cleaned up). "The party cannot meet its burden by 'mere conclusory or ipse dixit assertions' in its counsel's unsworn motion papers." *Id.* (quoting *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987).

## Argument

There are at least four bases on which the Court should order Talton to produce his communications with Johnson, lawyers for Kramer, and McO. ***First***, Talton fails to establish that the common-interest doctrine applies to his communications with Johnson (and Kramer's lawyers) and McO because he cannot identify any shared legal interest. ***Second***, by putting the contents of those communications – and his purported advocacy for Johnson and Kramer – at issue as a core part of his retaliation claims against the Company, Talton has waived the privilege. ***Third***, because both aiding Johnson in her quest to extract money from Carta and stealing and transferring Carta's

trade secrets and confidential and attorney-client privileged information constitutes a breach of fiduciary duty, and because Talton's recording of California-based Carta employees violated CAL. PENAL CODE § 632, the crime-fraud exception vitiates any remaining privilege.  **Fourth**, even if the common interest or co-client privilege applied (it does not), Talton waived the privilege with respect to dozens of documents on his privilege log by including third parties in those purportedly confidential communications.

For these reasons, any claim of joint client or common interest privilege does not apply, and Talton should be required to produce to the Company all documents and communications between (i) himself and Johnson, (ii) himself, Johnson and McO; (iii) himself, Johnson, Kramer's counsel and McO; (iv) himself, Johnson, McO, and third parties; and (v) himself, McO, and third parties.

### I.    Talton Failed To Establish The Common-Interest Doctrine Applies Because There Is No Common Enterprise Or Identical Legal Strategy.

Because Talton and Johnson do not share a common legal interest, Talton's assertion of the common-interest privilege fails.  The doctrine "does not apply 'because one party has an interest in litigation involving another party.'"  *Homeland Ins. Co. v. Indep. Health Ass'n, Inc.*, 2024 WL 4308312, at *9 (W.D.N.Y. Sept. 26, 2024) (quoting *Hayden v. IBM Corp.*, 2023 WL 4622914, at *8 (S.D.N.Y. July 14, 2023)).  "Rather, there must be a substantial showing by parties attempting to invoke the protections of the privilege of the need for a common defense as opposed to the mere existence of a common problem."  *Id.* (cleaned up) (quoting *Hayden*, 2023 WL 4622914, at *8); *see also id.* ("communications protected by the common interest doctrine must 'relate to litigation, either pending or anticipated, in order for the exception to apply.'"  (quoting *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 57 N.E.3d 30, 35 (N.Y. 2016)).  "Thus, merely expressing a concern about potential litigation is insufficient where there is no evidence

that the parties formulated a joint legal strategy to deal with the possibility." *Id.* (cleaned up). Put simply, Talton needed to assert, and adduce evidence supporting his assertion, that he and Johnson participated in a "cooperative and common enterprise towards an ***identical legal strategy***." *Lugosch v. Congel*, 219 F.R.D. 220, 237 (N.D.N.Y. 2003) (emphasis added). He failed to do so.

The Motion and Talton's declaration underscore the lack of a common, let alone identical, legal interest. Talton asserts that "[t]he purpose of the joint representation was clear: Talton and Johnson sought assistance in alerting Carta and its Board of Directors of the discrimination, retaliation, and harassment displayed by Ward." Motion at 1. Even if that were both (a) true, and (b) an identical legal interest sufficient to confer the benefits of the common-interest doctrine, that extremely narrow subset of communications pale in comparison to the rest of Talton and Johnson's discussions with McO. And even that assertion of a common legal interest in notifying Carta's Board about alleged corporate malfeasance is baseless – as the New York Court of Appeals has explained, the common-interest privilege must "relate to litigation, either pending or anticipated, in order for the exception to apply." *Ambac*, 57 N.E.3d at 35; *see also Telx-N.Y., LLC v. 60 Hudson Owner LLC*, 174 A.D.3d 435, 436 (1st Dep't 2019) (same).

Even if the Court accepts that preparing a letter to Carta's Board falls within the common-interest privilege (despite the New York Court of Appeals' guidance to the contrary) Talton sent his letter to Carta's Board of Directors on October 7, 2022. *See* ECF No. 55-1. At that point, Talton and Johnson had consummated their joint goal – Talton had notified Carta's Board about his perceptions of corporate wrongdoing. *See* Motion at 3 ("Talton, Johnson, and McO agreed that Talton would send a letter to Carta's Board . . . with Johnson's assistance[.]").

But the Motion baselessly asserts that after Talton sent his letter to the Board, "Talton and Johnson continued to work with McO to fulfill the goals of the joint representation." *Id.* at 4. This purportedly took the form of "Talton aid[ing] Johnson in the preparation of her mediation and assist[ing] her" in her "mediation with Carta" in November 2022, Talton and Johnson jointly responding to Talton's December 2022 termination and this lawsuit (to which Johnson is not a party), and Talton and Johnson's preparation *to be deposed as fact witnesses* in another former Carta employee (Kramer)'s lawsuit against the Company. *See id.* None of these activities – Talton litigating this lawsuit against Carta, Johnson seeking to extract money from Carta, and Talton and Johnson serving as fact witnesses in an unrelated litigation – conceivably relate to Talton and Johnson's stated purported interest in "alerting Carta and its Board of Directors of the discrimination, retaliation, and harassment displayed by Ward." *Id.* at 1.

Further, the timeline undermines Talton's assertion of the common-interest doctrine. Carta placed Talton on administrative leave on October 11, 2022. Compl. ¶ 28. Talton had no cognizable claim against Carta on October 11, 2022. Talton remained on paid administrative leave until his termination for Cause on December 23, 2022. *Id.* ¶¶ 15, 28–35; *see also* ECF No. 29-5. Although the Company disputes that it acted improperly by terminating an employee who had grossly breached his fiduciary and contractual obligations to the Company, the earliest possible date on which any cognizable legal claim may have accrued to Talton would have been December 23, 2022. Necessarily, Talton could not share a common legal interest with Johnson in the months preceding that date.

Even as of December 23, 2022, any conceivable claim Talton could allege (and he has none) was not similar, let alone identical, to Johnson's claims. And to the extent that Talton belatedly tries to sweep in Carta's December 2022 lawsuit against him and Carta's unrelated

August 2023 lawsuit against Johnson (which was filed six months **after** Johnson fired McO and long after any common-interest privilege had lapsed), *see* ECF No. 132-2, both the time between the two filings as well as the factual and legal distinctions in each lawsuit belie any argument that there was a reasonable anticipation in the fall of 2022 that both Talton and Johnson would be sued (or would sue) Carta.

Talton's "argument essentially suggests that the common interest rule should apply to anyone who shares with a party a strong desire for a particular outcome of a lawsuit and has been involved in the litigation. However, precedent is clear that is not the intent of the common interest or joint-defense privilege." *Riverkeeper, Inc. v. Coeymans Recycling Ctr. LLC*, 2024 WL 1053507, at *13 (N.D.N.Y. Mar. 11, 2024) (collecting cases). "Thus, the common-interest doctrine . . . does not . . . apply where one individual is not a party to this lawsuit or, to this Court's knowledge, any related lawsuits." *Id.* Talton's illicit assistance to Johnson in her mediation against Carta was a breach of his fiduciary duty, not a protected common legal interest in which he and Johnson shared an identical legal goal.

Talton's reliance on *Hayden v. IBM* is misplaced. *See* Motion at 12–14. The court in *Hayden* concluded that "Plaintiff's assertions of the common interest doctrine are overbroad and inapplicable in certain [circumstances]." *Hayden*, 2023 WL 4622914, at *8. To be sure, the court concluded that the parties' "communications with their attorneys evince a desire to formulate a common legal strategy with respect to" their SEC whistleblower, OSHA, and False Claims Act claims (that is, claims that the parties actually asserted), but importantly the court concluded that the plaintiff failed to establish a common interest where he did not explain what other unidentified and amorphous "legal claims entailed, or what the common legal interest was." *Id.* Like in *Hayden*, Talton "fails to explain, even generally, the common legal goal" that he shared with

Johnson with respect to Carta's lawsuit against him, Johnson's claims against Carta, and each of their respective roles as fact witnesses in the Kramer matter. *Id.* at *9.

Talton and Johnson's mutual dislike of Carta and Ward falls far short of a "cooperative and common enterprise towards an ***identical legal strategy***." *Lugosch*, 219 F.R.D. at 237 (emphasis added). Absent a common legal enterprise, Talton fails to establish that the common-interest doctrine applies. Accordingly, the Court should conclude that the doctrine does not apply and order Talton to produce all documents and communications between him, Johnson, and McO.

## II. Talton Has Waived Any Privilege By Placing Communications With Johnson At Issue In His Retaliation Counterclaim.

Talton's communications with Johnson are the core of his retaliation counterclaim. Thus, even if some common interest privilege *did* apply (and it does not), Talton has placed the contents of his communications with Johnson squarely at issue. "Subject matter waiver applies where the privilege holder puts the privileged communications in issue by virtue of his claims or defenses and prejudices the opposing party, in other words, seeks to use the privilege as both a 'sword' and a 'shield' . . . ." *E.E.O.C. v. Johnson & Higgins, Inc.*, 1998 WL 778369, at *8 (S.D.N.Y. Nov. 6, 1998); *see also Bowne of N.Y.C., Inc. v. AmBase Corp.*, 150 F.R.D. 465, 484 (S.D.N.Y. 1993) (when "the privilege holder puts those communications in issue by virtue of his claims or defenses in the case, then a broader . . . 'subject matter' waiver should also be recognized.").

Here, Talton has alleged that he assisted Johnson in asserting claims against Carta, conduct he incorrectly asserts is protected by Title VII and state and local law. *See, e.g.*, ECF No. 88 ¶¶ 171, 179, 189, 202, 219, 260, 275, 304 (detailing Talton's alleged assistance to Heidi Johnson in pursuing her discrimination and retaliation claims against Carta, his participation in various proceedings relating to Johnson's claims, and his complaints to Carta about its treatment of Johnson).

Talton cannot affirmatively rely on assistance he provided to Johnson to assert retaliation claims and then block the Company from exploring those communications to understand what, exactly, he did. This is a quintessential example of a "party plac[ing] otherwise privileged communications 'at issue' in the litigation." *In re Buspirone Antitrust Litig.*, 208 F.R.D. 516, 520 (S.D.N.Y. 2002) (citing *In re von Bulow*, 828 F.2d 94, 102 (2d Cir. 1987)). "It would be unfair for" Talton "who has asserted a factual matter that places" his communications with Johnson and McO "at issue to deprive" the Company "of the means to test [the] factual matter through discovery of those communications." *Id.* at 520–21.

The subject-matter/at-issue exception to the attorney-client privilege applies. To understand the scope and nature of Talton's assistance to Johnson, the Company should be allowed to review all documents and communications between Talton and Johnson (including those involving McO).

### III. Any Privilege Between Talton And Johnson Must Yield To The Crime-Fraud Exception.

Even if Talton established that the common-interest privilege applies (he did not), and even if Talton did not put the contents of those communications squarely at issue in his retaliation claims (he did), the privilege must yield to the crime-fraud exception for at least two reasons. First, Talton's provision to Johnson of confidential and attorney-client privileged documents that he misappropriated from Carta to assist her in pursuing claims against Carta is a breach of fiduciary duty, a well-established basis for the crime-fraud exception to apply. Second, Talton's recordings of his California-based colleagues violated California criminal law, and McO's apparent facilitation of the sharing of those recordings with Johnson – many of which were made after the purported common-interest privilege took effect – is another basis for the crime-fraud exception to apply.

12

"One long-recognized exception is when legal advice furthers a client's crime or fraud." *Costanzo*, 2024 WL 2046053, at *2 (citing *United States v. Zolin*, 491 U.S. 554, 562 (1989)). "Although there is a societal interest in enabling clients to get sound legal advice, there is no such interest when the communications or advice are intended to further the commission of a crime or fraud." *Id.* (quoting *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995)). The crime-fraud exception applies to breaches of fiduciary duty, as alleged here. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 180 F. Supp. 3d 273, 282 (S.D.N.Y. 2016), *reconsideration denied*, 2016 WL 2605247 (S.D.N.Y. Apr. 29, 2016) (crime-fraud exception "covers a fraudulent scheme, an alleged breach of fiduciary duty or an accusation of some other wrongful conduct.") (quotation marks omitted) (quoting *In re N.Y.C. Asbestos Litig.*, 109 A.D.3d 7, 10 (1st Dep't 2013)); *C.D.S. Inc. v. Zetler*, 2016 WL 11651898, at *1 n.2 (S.D.N.Y. Dec. 14, 2016) ("contrary to defendants' threshold argument that a breach of fiduciary duty claim does not provide a predicate for the application of the crime-fraud exception, '[a] party may not invoke the attorney-client privilege where it involves client communications that may have been in furtherance of . . . an alleged breach of fiduciary duty.'") (quoting *Beach v. Touradji Cap. Mgmt., LP*, 142 A.D.3d 442, 445 (1st Dep't 2016)).

"To invoke the crime-fraud exception, a party must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed—or has been attempted—and that the communications in question were in furtherance of the fraud or crime." *Costanzo*, 2024 WL 2046053, at *2 (cleaned up). "[A]pplying the exception demands a preliminary finding—satisfying a probable-cause burden—that the particular communications were in furtherance of the relevant crime." *Id.* (citing *In re Grand Jury Subpoena Duces Tecum*,

798 F.2d 32, 34 (2d Cir. 1986)).  "The exception applies even if the attorney, at the time of the attorney-client communication, was unaware of the client's criminal purpose."  *Id.* at *3.

Here, Talton tries to use the veneer of the attorney-client privilege to cloak his wide-ranging breaches of fiduciary duty.  By way of example only, the file directory for the McO-hosted Dropbox file-sharing site demonstrates that Talton – with the assistance of McO – passed dozens of highly confidential Carta documents – including attorney-client privileged information and highly sensitive personnel and financial information for every Carta employee – to Johnson.  *See* **Ex. A** at 21–31.  Talton's purpose in passing these stolen documents to Johnson was to help Johnson secure a larger monetary settlement from Carta while Talton served as Carta's CTO and collected a Carta paycheck.  Like the Dropbox itself, all of Talton's communications with Johnson, including those involving lawyers at McO, were advancing Talton's breaches of his fiduciary duties to Carta – helping an adverse litigant extract money from Carta.

And Talton's assertion that his passing of these stolen Carta documents to Johnson is somehow protected conduct under Title VII and state and local laws is baseless.  "It is black letter law that illegal actions are not protected activity under Title VII."  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 n.3 (4th Cir. 1998) (collecting cases).   The caselaw is clear that an employee cannot engage in illegal self-help to allege discrimination or to oppose allegedly unlawful conduct.  *See, e.g.*, *Nesselrotte v. Allegheny Energy, Inc.*, 615 F. Supp. 2d 397, 405 (W.D. Pa. 2009) (granting summary judgment against plaintiff on her ADEA claim and in favor of defendants on their counterclaims for breach of contract and breach of fiduciary duty where plaintiff stole attorney-client privileged documents from the employers "to prove she was 'competent' in [her] discrimination claim against [defendants]"); *Gray v. Deloitte LLP*, 2019 WL 12520100, at *3 (N.D. Ga. Feb. 13, 2019), *aff'd*, 849 F. App'x 843 (11th Cir. 2021) (explaining

that "courts have consistently held that actions by an employee to surreptitiously gather evidence to support a discrimination claim in violation of workplace rules and policies are not protected activities.").  Thus, Talton's theft of Carta documents, and ongoing assistance to Johnson in her litigation against Carta is an egregious breach of Talton's fiduciary duties to Carta and a common-sense basis for the crime-fraud exception to apply to communications between Talton, Johnson, and McO that were in furtherance of that ongoing campaign of misconduct.

Second, Talton illegally recorded Carta executives in September 2022, including numerous conversations made at or around the time Talton signed the McO engagement letter on September 12, 2022.  Jacoby Decl. ¶¶ 3–6.  Those recordings appear to be included in the McO Dropbox.  *See* **Ex. A** at 21–31.  At the very least, McO facilitated Talton's distribution of the illegally recorded conversations to Johnson.[10]

Talton's use of McO to facilitate his breaches of fiduciary duty and distribute his illegal recordings of Carta executives to a party litigating against Carta meets the Company's probable-cause burden "to believe that a fraud or crime has been committed and that" Talton's communications with Johnson and McAllister Olivarius "were in furtherance of the fraud or crime."  *In re MTBE*, 180 F. Supp. 3d at 281–82.  Accordingly, the crime-fraud exception applies to Talton's communications with Johnson and McO.

## IV.    The Work Product Doctrine Does Not Protect Talton's Documents.

Talton broadly asserts that the work product doctrine prevents disclosure of documents that McO prepared for him or for Johnson, despite the fact that he and Johnson share no common interest.  *See supra* § 1.  But this case is not like *Egiazaryn v. Zalmayev*, 290 F.R.D. 421 (S.D.N.Y.

---

[10] It is also possible that McO provided legal advice regarding Talton's illegal recording of Carta executives.  To the extent such advice was rendered, those communications also fall within the crime-fraud exception, and the Company is entitled to discovery of those communications.

2013), on which Talton relies. *See* Motion at 20–21. In *Zalmayev*, the moving party sought production of emails that were sent or received by a public relations firm the other party hired. 290 F.R.D. at 425. There the court ordered production of most of the documents involving the public relations firm because they "contain[ed] no discussion of legal strategy or ***attorney*** opinions or impressions . . . ." *Id.* at 436 (emphasis added). Here, not only are many of the documents without legal content, but, as discussed at length above, Talton and Johnson did not share a common interest – indeed to the extent Johnson was asserting her own claims against Carta, her interest was in securing as large a monetary payment as possible. That divergent interest undermines Talton's argument that "[t]here was no likelihood of disclosure of these communications to Carta or any adversary of Talton as [*sic*] Johnson." Motion at 21.

Talton also improperly attempts to invoke the work product doctrine to shield communications between Talton and Johnson including "their own impressions, thoughts, opinions, and strategies" as well as "factual material relevant to their potential claims against Carta." Motion at 18–19. But neither Talton nor Johnson are attorneys, and neither Talton and Johnson's musings nor previously existing documents shared between them are protected work product.

The purpose of the work product doctrine is to "preserve a zone of privacy in which a ***lawyer*** can prepare and develop legal theories and strategy with an eye toward litigation . . . ." *S.E.C. v. NIR Grp., LLC*, 283 F.R.D. 127, 131 (E.D.N.Y. 2012) (emphasis added) (quoting *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998)). But "the mere possibility of litigation is insufficient to obtain work-product protection." *GLD3, LLC v. Albra*, 2024 WL 4471672, at *3 (S.D.N.Y. Oct. 11, 2024) (cleaned up). Instead, the "document[s] at issue must have been prepared with an eye to ***some specific litigation***." *Id.* (emphasis added). And opinion work product refers

to the "mental impressions, conclusions, opinions and legal theories *of an attorney or other representative of a party*[,]" and not to the litigant's opinions and musings, much less opinions and musings with an unrelated third party. *In re Lifetrade Litig.*, 2022 WL 3644357, at *3 (S.D.N.Y. Aug. 24, 2022) (emphasis added).

To start, neither the Motion nor Talton's declaration identify any specific litigation for which the documents over which Talton asserts work product were prepared. Carta terminated Talton for Cause on December 23, 2022, and sued him on December 30. Before December 23, Talton could not have prepared materials "with an eye to some specific litigation," *GLD3*, 2024 WL 4471672, at *3, because no specific litigation existed (and there was no conduct by Carta toward Talton that could have potentially given rise to any specific litigation at that time). And to the extent Talton is asserting that the work product relates to Johnson's nascent claims against Carta in the fall of 2022, there is no factual support for, or description of, which documents and communications purportedly constitute the work product related to Johnson's discrete claims against Carta. Moreover, Talton and Johnson's thoughts and reactions are not protected work product.

Talton's reliance on *In re Lifetrade Litig.*, 2022 WL 3644357 (S.D.N.Y. Aug. 24, 2022) to support his assertion that his communications with Johnson are protected work product is misplaced. *See* Motion at 19. As the Motion concedes, in *Lifetrade,* the court reasoned that "to the extent . . . investors were contemplating litigation as well, work product created by or for them would be protected because it was done in anticipation of litigation." *Id.* (quoting *Lifetrade*, 2022 WL 3644357, at *4). Importantly, in *Lifetrade*, there were already five lawsuits that had been consolidated "for purposes of discovery and resolving common issues of fact and law." 2022 WL 3644357, at *1. Thus, the litigation in anticipation of which investors were sharing work product

was a set of claims related to a common nucleus of facts – the failure of three mutual funds and Wells Fargo's acquisition of the failed funds' assets, resulting in plaintiffs' losing their entire investments. *See id.*[11]

Groups of similarly situated potential litigants exchanging information regarding the same losses suffered by the common conduct of a set of defendants is drastically different from Talton and Johnson's mutual dislike for Carta. As discussed above, Talton did not have claims against Carta until, at the earliest, December 23, 2022, when he was terminated for Cause. Nothing Johnson shared with Talton or Talton shared with Johnson before December 23, 2022, could have been protected "in anticipation of litigation."

Talton also fundamentally misunderstands the work product doctrine's application to factual materials. "Documents are entitled to work-product protection if they were prepared 'because of' the prospect of litigation." *S.E.C. v. Alderson*, 390 F. Supp. 3d 470, 481 (S.D.N.Y. 2019) (quoting *Adlman*, 134 F.3d at 1202). "Conversely, protection will be withheld from documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *Id.* (cleaned up).

Presumably, many of the documents and "factual material" that Talton and Johnson "exchanged" that were "relevant to their potential claims against Carta[,]" are ***Carta documents***. Motion at 19. Talton stole hundreds of Carta documents and the McO-created and facilitated DropBox link shows that Talton was passing Carta documents to Johnson to assist her in trying to extract money from Carta. *See generally* **Ex. A** at 21–31. To the extent Carta-created documents

---

[11] It bears noting that the court in *Lifetrade* examined the exemplar documents over which the producing party asserted the privilege. *See Lifetrade*, 2022 WL 3644357, at *1 (Explaining that "[a]t the Court's request, Defendants selected exemplar documents from Plaintiffs' privilege log that Plaintiffs have submitted to the Court for in camera review."). There, unlike here, the court had the benefit of reviewing the underlying documents to make work product determinations.

comprise the "factual material" Talton was sending to Johnson, those documents are not protected work product because they were prepared, by Carta, "in the ordinary course of business." *See Alderson*, 390 F. Supp. 3d at 481.

Finally, even if the documents at issue could be considered work product, to the extent they consist of purely factual information, they merit only the "most minimal protection." *Nat'l Cong. for Puerto Rican Rights v. City of N.Y.*, 194 F.R.D. 105, 109–110 (S.D.N.Y. 2000). "This minimal protection may be overcome if plaintiffs have a 'substantial need' for the material and cannot otherwise obtain it 'without undue hardship.'" *Id.* at 110 (quoting FED. R. CIV. P. 26(b)(3)). "A substantial need for work product materials exists where the information sought is 'essential' to the party's defense, is 'crucial' to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues." *Id.* (cleaned up).

Unquestionably, the Company has a substantial need for these documents exchanged between Talton and Johnson. First, the documents are "'crucial' to the determination of whether" Talton may "be held liable for" breach of contract and breach of fiduciary duty. *See id.* Second, the information is "essential" to the Company's defense against Talton's retaliation claims. As noted above, "[i]t is black letter law that illegal actions are not protected activity under Title VII." *Laughlin*, 149 F.3d at 259 n.3. The Company is entitled to discover whether Talton's alleged protected assistance to Johnson and alleged opposition to unlawful conduct was based on his provision of stolen documents, which would defeat his claims. *See, e.g.*, *Nesselrotte*, 615 F. Supp. 2d at 405; *Gray*, 2019 WL 12520100, at *3. Finally, the documents carry great probative value as to the contested facts in this action.

Accordingly, the Court should order Talton to produce the documents and communications over which Talton improperly asserts work product protection.

V.    **Numerous Communications Without Counsel Are Not Privileged And Others With Third Parties Waive Any Privilege.**

A review of Talton's privilege log reveals that dozens of communications have been improperly withheld.  These improperly withheld documents fall into three categories: ***first***, communications between Talton and Johnson on which no attorney is present; ***second***, communications that include third parties, which break any purported privilege that may apply; and ***third*** communications between Talton (and McO) and lawyers for Kramer.  Each category of documents must be produced.

A.  ***Communications Between Talton And Johnson With No Lawyers Present Must Be Produced***

Ignoring the Court's clear instruction that the privilege log was not to include communications just between Talton and Johnson or communications between Talton and Johnson where counsel just happens to be copied, ECF No. 118 at 13:22-14:5, the privilege log includes dozens of such communications.  For example, TALTO011763-12257 is a text chain between Talton and Johnson spanning September 3, 2022 (nine days before the joint engagement letter was dated) to March 15, 2023 (nearly a month after Johnson fired McO on February 20, 2023).  Based on the Bates range, this file appears to be nearly 500 pages of messages.  But it's unclear which of those messages are privileged (if any) and which are not.[12]  Dozens of other communications are between Talton and Johnson with no McO attorneys included.[13]

---

[12] Nor does Talton's description of the basis for withholding these text messages, *i.e.*, that they purportedly contain Talton and Johnson's "own thoughts, impressions, opinions, and strategies regarding their claims against Carta," Motion at 16, support a claim of privilege.

[13] *See, e.g.*, TALTO013192, TALTO013197-203; TALTO013370; TALTO013562; TALTO013826-27; TALTO013936-38; TALTO013944; TALTO013945-46; TALTO013947-50; TALTO013951; TALTO013956; TALTO014055; TALTO014139-42; TALTO014839; TALT0014840; TALTO015769; TALTO0015867; TALTO015960; TALTO016818-21; TALTO017284; TALTO018270-73; TALTO018274-75; TALTO018276-77; TALTO018293-94; TALTO018405-11; TALTO018412-15; TALTO018667-70; TALT0018677; TALTO018698-701; TALTO018962; TALTO018973-74; TALT018975-76; TALTO019002; TALTO019366; TALTO019376-77; TALTO019386; TALTO019397; TALTO020120-21.

Talton himself concedes that "copying an attorney on communications does not automatically shield it from disclosure[s]." Motion at 8 (citing *Varughese v. Mt. Sinai Med. Ctr.*, 2014 WL 349698 (S.D.N.Y. Jan. 31, 2014)). Accordingly, Talton's argument rests entirely on his assertion that the attorney-client privilege applies "to communications between co-clients in which they relay otherwise privileged communication ***received directly from counsel***." *Id.* at 15 (emphasis added). But there is no evidence that the above communications are relaying some privileged communication received directly from McO, including no supporting factual assertion in Talton's declaration. *See generally* ECF No. 132-1. Tellingly, Talton cites no authority for the proposition that conversations between two parties without attorneys present and with no indication that the communications reflect or repeat attorney-provided legal advice are privileged. *See* Motion at 15–16. That omission makes sense, because the attorney-client privilege does not protect such communications; the "general purpose of the privilege" is "to protect the confidentiality of the attorney-client relationship" and to "promote[] complete disclosure between attorney and client . . . ." *Weil Ceramics & Glass, Inc. v. Work*, 110 F.R.D. 500, 503–04 (E.D.N.Y. 1986).

### B. Communications With Emily Kramer's Lawyers Must Be Produced

Talton's privilege log also contains approximately 100 references to a "Joint Prosecution and Confidentiality Agreement between McAllister Olivarius (on behalf of J. Talton and H. Johnson) and Levy Vinick Burrell Hyams LLP (on behalf of E. Kramer) relating to J. Talton and H Johnson's joint representation by McAllister Olivarius for purpose of further common legal interests related to their participation as witnesses in Kramer v. eShares, Inc. San Francisco Superior Court, Civil Action No. CGC-20-58548." ECF No. 132-3 at TALTO016176-78. Talton's Motion vaguely asserts that Talton and Johnson had a "joint representation . . . for the purposes of producing responsive documents and sitting for deposition[s]" in the *Kramer* case.

Motion at 4.  And the privilege log includes communications involving Sharon Vinick, Emily Kramer's lawyer (and a non-party to this action).  *See, e.g.*, TALTO019472-74; TALTO019475-78; TALTO019529-32.  Just as Talton and Johnson had no cognizable common legal interest sufficient to invoke the privilege, *see supra* § I, they also shared no identical, or even related, interest in preparing to be deposed as fact witnesses in the *Kramer* matter.

The purported agreement facially fails to assert any cognizable common interest.  *See* **Ex. G**.  Indeed, the agreement had numerous glaring deficiencies.  ***First***, the agreement simply states, in a conclusory manner and with no further explanation, that "Kramer, Johnson and Talton . . . have common and shared interests in resolving their disputes with Carta and have concluded that entering into this agreement and sharing information will further their legal efforts made on behalf of all parties."  *Id.* at 1.  For the reasons discussed in Section I, this statement (the only evidence in the record) fails to meet the burden of identifying an identical legal strategy.

***Second***, the agreement states that it is effective November 10, 2022.  *See id.* at 2.  But in the third WHEREAS clause, the agreement states that "Jerry Talton, an employee of Carta, is currently involved in a dispute with Carta[.]"  *Id.* at 1.  This is facially false.  Talton sent his letter to Carta's Board on October 7.  He was placed on paid administrative leave on October 11.  *See* ECF No. 29 at 10, ¶ 28.  He was terminated for Cause on December 23, *see* ECF No. 29-5, and Carta filed its suit on December 30.  ECF No. 1.  So, on November 10, Talton was not "currently involved in a dispute with Carta."

***Finally***, the agreement was retroactively entered into, vitiating any claim of privilege.  Although the agreement states that supposedly it was "effective" November 10, 2022, the document's metadata apparently indicates that it was created on January 17, 2023, and modified on January 18, 2023.  Jacoby Decl. ¶ 8.  The post-hoc attempt to manufacture privilege smacks of

bad faith and an attempt to shield documents and communications that Talton and his lawyers know are not privileged.

### C. *Communications With Third Parties Must Be Produced*

Finally, Talton's privilege log demonstrates that at least seven non-parties were included on communications purporting to relate to this litigation. These documents must be produced as "disclosure of a privileged communication to a party outside the privileged relationship destroys the attorney-client privilege because it destroys the confidential nature of the communication." *S.E.C. v. Rayat*, 2023 WL 4706074, at *2 (S.D.N.Y. July 24, 2023). The Second Circuit has been clear that "a communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999) (cleaned up). Talton's log reflects communications with the following third parties, each of which breaks any purported attorney-client privilege:

| __Third Party__ | __Bates Range(s)__ |
|---|---|
| Gurpreet Kauer | TALTO014580; TALTO14581-82; TALTO014837-38; TALTO014907-09; TALTO016488-90; TALTO016515-18 |
| Suzanne Elovic | TALTO012717; TALTO012726-27 |
| ███████ | TALTO012940; TALTO012941-42; TALTO012946-48 |
| ███████ | TALTO015866 |
| ███████ | TALTO016346; TALTO016350-51; TALTO016396-98; TALTO016399-401. |
| ███████ | TALTO018376-77; TALTO018378-80; TALTO018381-83. |

And this is not a circumstance where "the third party's presence is necessary to enable the attorney-client communication—for example, when the third party is an interpreter or agent of the attorney or when the third party shares a common legal interest." *Spencer-Smith v. Ehrlich*, 2024 WL 4416581, at *3 (S.D.N.Y. Oct. 4, 2024). Indeed, neither the Motion nor Talton's declaration identify or describe any of these non-parties. *See generally* ECF Nos. 132, 132-1. Accordingly,

Talton has failed to meet his burden to demonstrate that any of the above communications are privileged, and the Court should order Talton to produce these documents as well.

**Conclusion**

For the reasons set forth above, the Company respectfully requests that the Court deny Talton's assertion of the common-interest privilege and order Talton to produce each and every document contained on the amended privilege log.[14]

---

[14] If the court disagrees with respect to any document or category of documents, Carta respectfully requests that the Court conduct an *in camera* review of all documents over which Talton asserts the common interest privilege as an "*in camera* review is commonly employed by courts evaluating whether documents are covered by the common interest doctrine." *Homeland Ins. Co.*, 2024 WL 4308312, at *9 (collecting cases); *see also Giuffre v. Dershowitz*, 2022 WL 1471032, at *1 (S.D.N.Y. May 10, 2022) (ruling on common-interest doctrine after *in camera* document review); Motion at 25 (Talton demanding that "the Court must conduct an *in-camera* review of the documents and communications withheld by Talton.").

Finally, Talton has stymied the Company's ability to review his amended privilege log by partially redacting dozens file names. *See, e.g.*, ECF No. 132-3 at TALTO017620-28 (file name "RE debrief of call with **REDACTED [file name contains privileged or protected communication]**."); TALTO015907-08 (file name "Reaching out to **REDACTED [file name contains privileged or protected communication]**."); TALTO015909-11 (same). The Company respectfully requests that the Court either (a) order Talton to amend his privilege log to identify these improperly redacted file names or (b) conduct an *in camera* review of each to determine whether the assertion of privilege is proper.

Dated:  New York, New York
          November 11, 2024

Respectfully submitted,

**DECHERT LLP**

By: *_/s/ Nicolle L. Jacoby_*
Andrew J. Levander
Nicolle L. Jacoby
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
andrew.levander@dechert.com
nicolle.jacoby@dechert.com
Telephone:      (212) 698-3500
Facsimile:      (212) 698-3599

Christopher J. Merken
Julia M. Curley (admitted *Pro Hac Vice*)
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
christopher.merken@dechert.com
julia.curley@dechert.com
Telephone:      (215) 994-4000
Facsimile:      (215) 994-2222

***Attorneys for eShares, Inc. d/b/a Carta, Inc. and Henry Ward***

## CERTIFICATE OF SERVICE

I certify that on November 11, 2024, I had the foregoing document electronically filed using the CM/ECF system, and that the same was served on all counsel of record via CM/ECF.


*/s/ Nicolle L. Jacoby*
Nicolle L. Jacoby